C. D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Tiffany D. Cheuvront – SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Facsimile: 562-216-4445
cmichel@michellawyers.com

*Attorneys for Plaintiffs*
*National Rifle Association and John Doe*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA; JOHN DOE,<br><br>                                  Plaintiffs,<br><br>                    vs.<br><br>CITY OF LOS ANGELES, ERIC GARCETTI, in his official capacity as Mayor of City of Los Angeles; HOLLY L. WOLCOTT, in her official capacity as City Clerk of City of Los Angeles; and DOES 1-10,<br><br>                                  Defendants. | Case No:<br><br>**COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF:**<br><br>**(1) VIOLATION OF 42 U.S.C. § 1983 [FREE SPEECH];**<br><br>**(2) VIOLATION OF 42 U.S.C. § 1983 [COMPELLED SPEECH];**<br><br>**(3) VIOLATION OF 42 U.S.C. § 1983 [FREEDOM OF ASSOCIATION];**<br><br>**(4) VIOLATION OF 42 U.S.C. § 1983 [FIRST AMENDMENT RETALIATION]**<br><br>**(5) VIOLATION OF 42 U.S.C. § 1983 [EQUAL PROTECTION].** |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**JURISDICTION AND VENUE**

1.      This action arises under 42 U.S.C. § 1983 to redress the deprivation of rights secured by the United States Constitution. This Court has original jurisdiction over these federal claims under 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343 because this action is brought to redress the deprivation, under color of state law, of federally secured rights, privileges, and immunities. The Court has authority to render declaratory judgments and to issue permanent injunctive relief under 28 U.S.C. §§ 2201 and 2202.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because the City of Los Angeles is located within the Central District of California, and all incidents, events, and occurrences giving rise to this action occurred in Los Angeles County, California.

**PARTIES**

**I.    PLAINTIFF**

3.      Plaintiff NATIONAL RIFLE ASSOCIATION OF AMERICA ("NRA") is a national membership organization, incorporated under the laws of the state of New York, and designated as a 501(c)4 non-profit corporation by the Internal Revenue Service. NRA was founded in 1871 on the principle that individual rights are best safeguarded by the guarantee of the Second Amendment. NRA a rich history of providing instruction on firearm safety, as well as engaging in civil rights advocacy that benefits millions across the country.  Every year, NRA provides firearm safety trainings, competitive shooting events, hunting programs, youth and women's programs, and informative membership updates. NRA trains tens of thousands of certified gun safety trainers in all types of disciplines and works with many law enforcement organizations across the country. NRA is a voice for those that choose to lawfully own and possess a firearm and diligently works to protect that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  right. And, on behalf of its millions of members and supporters, NRA advocates for

2  the preservation of the right to keep and bear arms by supporting or opposing

3  legislation with the potential to impact its members' civil rights.

4      4.    NRA's members are comprised of individuals and businesses, including

5  Plaintiff Doe, that presently have or seek to obtain contracts with the City of Los

6  Angeles to provide goods or services. Under Ordinance No. 186000, the local

7  ordinance challenged in this lawsuit, these members are required to disclose any

8  sponsorship of or contract with Plaintiff NRA. NRA brings this suit on behalf of its

9  members.

10      5.    NRA also brings this suit on its own behalf—as the entity targeted by

11  Ordinance No. 186000 and by Defendants who view NRA with disdain. Should

12  Defendants succeed in cutting off revenue streams necessary for NRA to continue

13  engaging in protected speech and association, NRA will have been drained of its

14  financial resources and been harmed in its ability to fulfill its mission to protect and

15  preserve the right to keep and bear arms.

16      6.    Plaintiff JOHN DOE operates a business with multiple contracts with the

17  City of Los Angeles. He also seeks to continue bidding for and obtaining such

18  contracts in the future. Doe is a member and supporter of the NRA and its mission to

19  protect against infringement of Second Amendment rights. Doe supports advocacy

20  efforts against gun control through his business and efforts to promote membership

21  within the NRA.

22      7.    Many NRA supporters, who are or seek to be contractors with the City

23  of Los Angeles, are afraid to come forward to participate in this action for fear of

24  retribution from the City. Indeed, Plaintiff Doe participates in this action as a Doe

25  participant because he reasonably fears retribution from the City and the potential

26  loss of lucrative contracts should Doe's identity be known.

27  **II.**   **DEFENDANTS**

28      8.    Defendant CITY OF LOS ANGELES is a municipal corporation within

3

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the state of California that enacted and enforces Ordinance No. 186000 (Los Angeles Administrative Code art. 26, ch 1, div. 10). The City has a population of over four million people and is one of the largest metropolitan areas in the country.

9.    Defendant ERIC GARCETTI is the Mayor of the City of Los Angeles. He was first elected mayor in 2013 and was re-elected to a second term in 2017. Defendant Garcetti signed Ordinance No. 186000 into law and is responsible for ensuring its enforcement. He is sued in his official capacity.

10.    Defendant HOLLY L. WOLCOTT is the City Clerk and responsible for the posting of all ordinances and the keeper of all recorded action on behalf of the City. She is sued in her official capacity.[1]

11.    The true names or capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as Does 1-10, are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs pray for leave to amend this Complaint to show the true names or capacities of these Defendants s if and when the same have been determined.

## GENERAL ALLEGATIONS

## I.    THE FIRST AMENDMENT RIGHTS OF FREE SPEECH AND ASSOCIATION

12.    The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const., amend. I. The Freedom of Speech Clause is incorporated and made applicable to the states and their political subdivisions by the Fourteenth Amendment to the United States Constitution.

13.    The First Amendment does not tolerate the suppression of speech based on what some may label an unpopular viewpoint of the speaker. *John J. Hurley and S. Boston Allied War Vets. Council v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995). ("While the law is free to promote all sorts of conduct

---

[1]  Unless otherwise noted, Defendants the City of Los Angeles, Eric Garcetti, and Holly L. Wolcott are referred to hereafter as "the City."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    in place of harmful behavior, it is not free to interfere with speech for no better reason

2    than promoting an approved message or discouraging a disfavored one, however

3    enlightened either purpose may strike the government.")

4          14.     As the Supreme Court recognized in *West Virginia State Board of*

5    *Education v. Barnette*, 319 U.S. 624, 642 (1943), "no official, high or petty, can

6    prescribe what shall be orthodox in politics, nationalism, religion, or other matters of

7    opinion or force citizens to confess by word or act their faith therein." Indeed, the

8    right to hold one's personal "beliefs and to associate with others of [like-minded]

9    political persuasion" lies at the heart of the First Amendment. *Elrod v. Burns*, 427

10    U.S. 347, 356 (1976).

11          15.     Thus, when the government makes inquiries about citizens' beliefs or

12    associations, those inquiries are limited by the First Amendment. *Baird v. State Bar*

13    *of Ariz.*, 401 U.S. 1, 6-7 (1971) (holding that "a heavy burden lies upon [the

14    government] to show that the inquiry is necessary to protect a legitimate state

15    interest"). But no matter what, the government "may not inquire about a man's views

16    or associations solely for the purpose of withholding a right or benefit because of

17    what he believes." *Id.* at 7.

18          16.     The same principle applies to conditions on government contracts. *See,*

19    *e.g.*, *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 217 (2013)

20    (holding that the government cannot require organizations to adopt a policy opposing

21    prostitution as a condition of receiving government funds). Indeed, any attempt to

22    penalize a government employee or contractor for their beliefs or associations

23    violates the First Amendment, unless the nature of the goods or services provided

24    "requires political allegiance." *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir.

25    1999) (applying this test to employees); *see also O'Hare Truck Serv., Inc. v. City of*

26    *Northlake*, 518 U.S. 712, 726 (1996) (applying same test to government contractors).

27          17.     The First Amendment also protects against government compulsion of

28    speech, for the right to speak and the right to refrain from speaking "are

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    complementary components of the broader concept of individual freedom of mind."
2    *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

3          18.    Government compelled speech is presumptively unconstitutional when
4    it burdens speech by demanding that speakers disclose that which they might be
5    reluctant to disclose, thus deterring them from engaging in speech. *McIntyre v. Ohio*
6    *Elecs. Comm'n*, 514 U.S. 334, 341-42 (1995). Indeed, "the First Amendment requires
7    that the State not dictate the content of speech absent necessity, and then, only by
8    means precisely tailored." *Tex. State Troopers Ass'n v. Morales*, 10 F. Supp. 2d 628
9    (N.D. Tex. 1998).

10         19.    The First Amendment also protects the right to freely associate with
11   others to advance one's beliefs without fear of government reprisal. *NAACP v. State*
12   *of Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *see also Nat'l Rifle Ass'n of Am.,*
13   *Inc. v. City of S. Miami*, 774 So. 2d 815 (Fla. Dist. Ct. App. 2000). Indeed, the
14   Supreme Court has recognized that "[e]ffective advocacy of both public and private
15   points of view, particularly controversial ones, is undeniably enhanced by group
16   association." *Id.* at 462.

17         20.    No matter the beliefs advanced, be they "political, economic, religious or
18   cultural," "state action which may have the effect of curtailing the freedom to
19   associate is subject to the closest scrutiny." *Id.* at 460-61. Thus, to require disclosure
20   of an association's membership lists, the government must have a compelling
21   justification for such an infringement on the right of free association. *Id.*

22         21.    The First Amendment prohibits government retaliation for exercising
23   one's right to engage in protected speech or association. "To bring a First
24   Amendment retaliation claim, the plaintiff must allege that (1) it engaged in
25   constitutionally protected activity; (2) the defendant's actions would "chill a person
26   of ordinary firmness" from continuing to engage in the protected activity; and (3) the
27   protected activity was a substantial motivating factor in the defendant's conduct—
28   i.e., that there was a nexus between the defendant's actions and an intent to chill

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  speech." *Ariz.  Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858 (9th Cir. 2016).

2       22.    To prevail on a First Amendment Retaliation claim, "a plaintiff need

3  only show that the defendant "intended to interfere" with the plaintiff's First

4  Amendment rights and that it suffered some injury as a result; the plaintiff is not

5  required to demonstrate that its speech was actually suppressed or inhibited."

6  *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (1999).

7  **II.    THE FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION**

8       23.    The Fourteenth Amendment to the United States Constitution provides

9  that no state shall deny to any person within its jurisdiction the equal protection of the

10  laws. U.S. Const. amend. XIV.

11       24.    Generally, equal protection is based on protected classes of persons who

12  are similarly situated; however, individuals who suffer irrational and intentional

13  discrimination or animus can bring claims of equal protection where the government

14  is subjecting only the plaintiff to differing and unique treatment compared to others

15  who are similarly situated, *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591 (2008),

16  even if not based upon group characteristics, *Village of Willowbrook v. Olech*, 528

17  U.S. 562 (2000).

18       25.    Further, disparate treatment under the law, when one is engaged in

19  activities that are fundamental rights, is actionable under the Equal Protection Clause,

20  *Police Dep't of Chic. v. Mosley*, 408 U.S. 92 (1972); *Carey v. Brown*, 447 U.S. 455

21  (1980).

22       26.    "Because the right to engage in political expression is fundamental to

23  our constitutional system, statutory classifications impinging upon that right must be

24  narrowly tailored to serve a compelling governmental interest." *Austin v. Mich.*

25  *Chamber of Commerce*, 494 U.S. 652, 666 (1990), *rev'd on other grounds*, *Citzs.*

26  *United v. Fed. Elec. Comm'n*, __ U.S. __, 130 S. Ct. 876 (2010).

27  **III.    FACTUAL ALLEGATIONS**

28       27.    NRA, like many membership organizations, provides incentives to its

7

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    members through corporate partners. It has a diverse pool of sponsors, ranging from

2    large, national corporations that offer affinity discount programs to smaller, local

3    retailers and firearm trainers who donate their employees' time to build the NRA's

4    membership base and share information about NRA's programs and advocacy work.

5          28.    NRA raises funds from its individual members and community partners

6    to keep its programs viable and to continue speaking out on issues concerning its

7    constituents. It relies on membership dues and donations to compete with well-funded

8    groups that advocate opposing messages.

9          29.    The state of California has one of the most rigorous regulatory schemes

10   for gun policy and the commerce of firearms of any state in the nation. Many of

11   California's larger cities nonetheless compete to be "leaders" in gun control, passing

12   ever-expanding restrictions on the lawful acquisition, ownership, and possession of

13   firearms and ammunition. Los Angeles is among these cities. Indeed, it is frequently

14   the target of gun control groups whose goal is to limit the rights of gun owners. And

15   City officials regularly oblige, championing a broad gun-control agenda and

16   supporting the work of anti-gun groups.

17         30.    Many NRA supporters and members disagree with the sweeping gun-

18   control policies the City seeks to implement. NRA thus stands in the gap for its

19   members and supporters who see no other group with comparable ability to promote

20   their pro-Second Amendment beliefs, including belief in the right to self-defense.

21         31.    Intending to silence NRA's voice, as well as the voices of all those who

22   dare oppose the City's broad gun-control agenda, the City adopted Ordinance No.

23   186000 ("the Ordinance"), requiring all current and prospective City contractors to

24   disclose any "sponsorship" of or "contract" with NRA.

25         32.    Through the Ordinance, the City hopes to pressure NRA supporters and

26   members to end their relationships with NRA, reducing NRA's funding and support.

27   Indeed, the City's goal is to diminish NRA's political contributions, its membership

28   numbers, and ultimately its pro-Second Amendment speech.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

33.     Some City councilmembers have claimed that the Ordinance is not meant to deny anyone a contract with the City, but to expose those that support NRA because residents "deserve to know."[2] Even if that were a legitimate goal, it is clearly not the Ordinance's true intent. As one councilmember put it, the City "should have the ability to make decisions about whether we want to do business with companies that feel that they can profit from what the NRA is doing throughout our country." Krekorian Remarks, *supra*, at 1:37:33.

34.     City councilmembers have made disparaging, false, and hyperbolic statements about NRA and its supporters, suggesting that the organization is doing something unlawful or immoral. Indeed, Councilmember Mitchell O'Farrell, the Ordinance's sponsor, has repeatedly called on the City to "rid itself" of those associated with NRA and labelled the NRA an "extremist" and "white supreme [sic] peddling" group. Los Angeles City Council, Budget & Finance Committee, Motion (Mar. 28, 2018), *available at* http://clkrep.lacity.org/onlinedocs/2018/18-0262_mot_03-28-2018.pdf (a true and correct copy is attached hereto as Exhibit 2); O'Farrell Remarks, *supra*, at 1:33:39—1:35:24.

35.     The City has a history of pressuring businesses that seek to do business with the City to end relationships with NRA. For example, Councilmember O'Farrell and the City held up a contract with FedEx because of its ties to NRA. When FedEx announced that it had ended its affinity program for NRA members, O'Farrell took a victory lap, announcing that he had "told @FedEx executives earlier this year, 'there is no high road in doing business with the @NRA." He thanked FedEx for "realizing

---

[2] Los Angeles City Council, Budget & Finance Committee, Motion (Sept. 21, 2018), *available at* http://clkrep.lacity.org/onlinedocs/ 2018/18-0896_mot_09-21-2018.pdf (a true and correct copy is attached hereto as Exhibit 1); *see also* Councilmember Mitchell O'Farrell, Remarks at Meeting of Los Angeles City Council at 1:34:22 (Feb. 12, 2019), *available at* http://lacity.granicus.com/MediaPlayer. php?view_id=129&clip_id=18753 (hereafter referred to as "O'Farrell Remarks"); Councilmember Paul Krekorian, Remarks at Meeting of Los Angeles City Council at 1:37:30 (Feb. 12, 2019), *available at* http://lacity.granicus.com/MediaPlayer. php?view_id=129&clip_id=18753 (hereafter referred to as "Krekorian Remarks"); *see also* Mayor Eric Garcetti, Official Twitter Account (@MayorOfLA), *available at* https://twitter.com/MayorOfLA?lang=en&lang=en

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  their role in promoting violence & terror on American soil." Councilmember Mitch

2  O'Farrell, Official Twitter Account (@MitchOFarrell) (tweet from October 31,

3  2018), *available at* https://twitter.com/MitchOFarrell?lang=en (a true and correct

4  copy of relevant excerpts is attached hereto as Exhibit 3).

5       36.    In March 2018, Councilmember O'Farrell introduced before the Budget

6  & Finance Committee, a particularly egregious motion ("the March Motion")

7  expressing the urgent need to take action against the NRA and its supporters. Ex. 3

8       37.    The March Motion targeted City contractors who also support and have

9  a relationship with NRA, declaring that the "City should rid itself of its relationships

10  with any organization that supports the NRA." Ex. 3. The March Memo went on to

11  suggest the action was necessary because of the "opposing stances of the NRA and

12  the City." Ex. 3.

13       38.    The March Motion called for city staff to draft a report listing all

14  organizations with formal ties to NRA. Ex. 3. It also asked the Chief Legislative

15  Analyst to "report back with options for the City to immediately boycott those

16  businesses and organizations until their formal relationship with the NRA ceases to

17  exist." Ex. 3.

18       39.    On or about September 21, 2018, Councilmember O'Farrell, through a

19  Motion to the Budget & Finance Committee, once again moved to force companies

20  doing business with the City to disclose any formal relationships with NRA. The

21  motion would direct "the City Attorney, with the assistance of the Bureau of Contract

22  Administration, to prepare and present an ordinance directing any prospective

23  contractor with the City of Los Angeles to disclose, under affidavit: (1) any contracts

24  it or any of its subsidiaries has with the National Rifle Association; and (2) any

25  sponsorship it or any of its subsidiaries provides to the National Rifle Association."

26  Ex. 1.

27       40.    The motion spoke of the perceived advantage the NRA has in promoting

28  its beliefs because of the financial support of businesses, members, and donors. Ex. 1.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    The motion did not address any public safety issues or concerns about the ability of
2    the contractors to complete the contracts. Ex. 1.

3         41.    At its regular meeting, held October 1, 2018, the Budget & Finance
4    Committee considered O'Farrell's motion and opened the floor to public comment.
5    The committee adopted the motion and recommended City action. Attached hereto as
6    Exhibit 4 is a true and correct copy of the Report from Budget & Finance Committee
7    re: File No. 18-0896.

8         42.    On or about October 10, 2018, the full City Council considered the
9    Budget & Finance Committee's report and motion. The City Council voted to adopt
10   the report and instructed the Los Angeles City Attorney to draft an ordinance that
11   would require all City contractors to disclose any formal ties to NRA. Attached
12   hereto as Exhibit 5 is a true and correct copy of the October 10, 2018 Official Action
13   of the Los Angeles City Council.

14        43.    On January 18, 2019, the Los Angeles City Attorney presented draft
15   Ordinance No. 186000 to the City Council. Attached hereto as Exhibit 6 is a true and
16   correct copy of the January 18, 2018 letter from Chief Assistant City Attorney David
17   Michaelson with the draft ordinance attached.

18        44.    On or about February 4, 2019, the Budget & Finance Committee
19   considered the City Attorney's letter and draft ordinance "relative to amending the
20   [Los Angeles Administrative Code] to require City contractors and potential City
21   contractors to disclose all contracts with or sponsorship of the NRA." The committee
22   approved the City Attorney's recommendation and forwarded the matter to the City
23   Council. Attached hereto as Exhibit 7 is a true and correct copy of the February 4,
24   2019 Budget & Finance Committee Report.

25        45.    On or about February 12, 2019, the City Attorney presented the City
26   Council with a slightly revised draft ordinance (correcting a misspelling of
27   Pittsburgh). As drafted, the Ordinance would require all prospective City contractors
28   to disclose in an affidavit any "sponsorship" of or contract with NRA. The Ordinance

11

1    would also require City contractors to update their disclosures whenever they enter
2    into a formal relationship with NRA.

3        46.    The Ordinance passed unanimously on February 12, 2019. Attached
4    hereto as Exhibit 8 is a true and correct copy of the February 13, 2019 Official Action
5    of the Los Angeles City Council.

6        47.    The City passed the Ordinance with little discussion. Though
7    Councilmember O'Farrell took the time to declare his hatred for NRA and its efforts
8    to oppose a broad gun-control agenda. During the council meeting, for instance,
9    O'Farrell called the NRA an "extremist, white supreme-peddling" group that
10   "peddle[s] in . . . violence and extremism." O'Farrell Remarks, *supra*, at 1:32:39—
11   1:34:38.

12       48.    Los Angeles City Mayor Eric Garcetti signed the Ordinance into law on
13   February 18, 2019. Ex. 8.

14       49.    The Ordinance took effect on April 1, 2019. Attached hereto as Exhibit 9
15   is Ordinance No. 186000 as adopted by the Los Angeles City Council on February
16   12, 2019.

17       50.    The Ordinance itself explicitly calls out NRA's advocacy efforts on
18   behalf of its members as an impediment to the City's anti-Second Amendment
19   agenda. Ex. 9.

20       51.    The Ordinance claims that "the benefits and discounts the NRA arranges
21   for its membership entices new members to join and existing members to renew their
22   NRA membership," generating millions of dollars in revenue for the "NRA agenda of
23   opposing legislative efforts throughout the country." Ex. 9.

24       52.    The Ordinance also claims that "the NRA leadership, with the financial
25   support of its dues paying members, continues to lobby against gun safety
26   regulations." Ex. 9.

27       53.    The City generally adheres to specific criteria for awarding projects to
28   contractors. These include the lowest and best bid, responsiveness to deadlines, and

ability to meet defining, project-specific qualifications. The City further looks at a prospective contractor's experience, qualifications, record of performance, financial capabilities, understanding of the scope of work, and best overall value. None of these criteria are related to a contractor's political beliefs or associations.

54.    The Ordinance has nothing to do with awarding contracts to the best candidates, fiduciary stewardship of public resources, or providing equal and open opportunities. Instead, it is about discriminating against a lawful organization and its members and supporters because the City does not approve of their political speech.

55.    The City's political pressure mirrors that of anti-NRA and anti-gun activists who demand that companies stop their support of NRA. The difference is that those are private people and organizations, and this is one of the largest cities in the country using its power to bully lawful businesses and individual members based on their political viewpoint.

56.    Plaintiffs and others similarly situated are currently being harmed by the City's unconstitutional conduct. Their rights of free speech and association are being chilled, as the Ordinance forces them to choose between their political beliefs and placating the City to secure work with the City.

57.    Defendants' conduct further attempts to compel speech of Plaintiffs and any potential contractors that support the NRA by mandating a written disclosure of their political affiliations with the intent to use that information against them.

58.    Defendants' actions seek to single out individuals and a particular group with disfavored speech and treat them differently from those contractors who are similarly situated, but which have political views the City finds palatable.

/ / /

/ / /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**FIRST CAUSE OF ACTION**

**Violation of Right to Freedom of Association Under U.S. Const., amend. I**

**42 U.S.C. § 1983**

(By All Plaintiffs Against All Defendants)

59.     Plaintiff incorporates by reference paragraphs 1 through 58 of this Complaint as though fully set forth herein in their entirety.

60.     By requiring Plaintiffs to disclose any sponsorship of or contract with Plaintiff NRA as a precondition for being awarded a City contract for goods or service, the Ordinance violates Plaintiffs' right to association under the First Amendment, as incorporated through the Fourteenth Amendment.

61.     The Ordinance violates Plaintiffs' freedom of association by forcing them to publicly disclose affiliations that are disfavored by some, and which have no relation to the ability of a contractor to perform requested services or provide requested goods under a City contract.

62.     The Ordinance, on its face and as applied or threatened to be applied, does not serve a compelling, significant, or legitimate governmental interest.

63.     Even if the Ordinance served some sufficient government interest, it is neither narrowly tailored nor the least restrictive means to serve that purpose.

64.     Defendants adopted and have enforced the unconstitutional Ordinance challenged here while acting under color of state law.

65.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable injury for which there is not adequate remedy at law. Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

/ / /

/ / /

14

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**SECOND CAUSE OF ACTION**

**Violation of Right to Free Speech Under U.S. Const., Amend. I**

**42 U.S.C. § 1983**

(By All Plaintiffs Against All Defendants)

66.     Plaintiffs incorporate by reference paragraphs 1 through 65 of this Complaint as if fully set forth herein in their entirety.

67.     Plaintiff NRA, on behalf of its millions of members and supporters, advocates for the preservation of the right to keep and bear arms by supporting or opposing legislation with the potential to impact its members' civil rights. Plaintiff NRA thus engages in political speech and expression protected by the First Amendment.

68.     Plaintiff Doe, through his association with and support of Plaintiff NRA, also engages in protected political speech and expressive conduct related to the preservation of the right to keep and bear arms.

69.     Among Plaintiff NRA's members are individuals and businesses, including Plaintiff Doe, that presently have or seek to obtain contracts with the City of Los Angeles to provide goods or services. Under the Ordinance, these members are required to disclose any sponsorship of or contract with Plaintiff NRA.

70.     On its face, the Ordinance makes clear that its intention is to harm Plaintiff NRA by diminishing access to funding from members, sponsors, and supporters that fuels Plaintiff NRA's political agenda.

71.     The legislative history of the Ordinance is clear that the City intends to boycott businesses that sponsor or contract with Plaintiff NRA.

72.     Defendants, through social media, committee reports, and on-the-record comments, have disparaged Plaintiff NRA and its supporters and have expressed their disdain for the organization simply because they disagree with Plaintiffs' pro-Second Amendment viewpoint.

73.     The Ordinance is an unconstitutional abridgment on its face, and as

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1 | applied or threatened to be applied, of Plaintiffs' affirmative rights to freedom of
2 | speech under the First Amendment, as incorporated through the Fourteenth
3 | Amendment.

4 |     74.    The Ordinance, on its face and as applied or threatened to be applied,
5 | imposes an unconstitutional ideological litmus test for independent contractors,
6 | requiring that they disclose information about their political beliefs and associations.

7 |     75.    The Ordinance, on its face and as applied or threatened to be applied, is
8 | a content-based and viewpoint-based restriction on speech.

9 |     76.    The Ordinance, on its face and as applied or threatened to be applied,
10 | does not serve a compelling, significant, or legitimate governmental interest.

11 |     77.    Even if the Ordinance served some sufficient government interest, it is
12 | neither narrowly tailored nor the least restrictive means to serve that purpose.

13 |     78.    The Ordinance, on its face and as applied or threatened to be applied, is
14 | an overbroad restriction on expressive activity.

15 |     79.    The Ordinance, on its face and as applied or threatened to be applied, is
16 | unconstitutional because it seeks disclosure of Plaintiffs' political beliefs and
17 | associations solely for the purpose of withholding government contracts.

18 |     80.    Defendants have not only the authority to order investigations of
19 | businesses, but also to reject contracts with businesses, like Plaintiff Doe, that have
20 | ties to Plaintiff NRA. This constitutes a true threat of retaliation against Plaintiffs for
21 | exercising their First Amendment right to free speech.

22 |     81.    The Ordinance does, in fact, chill the speech of current and prospective
23 | City contractors with ties to Plaintiff NRA. In fact, several contractors with ties to
24 | Plaintiff NRA refused to be named or to participate in this lawsuit, fearing that the
25 | City will retaliate against them and revoke or reject City contracts based on their
26 | relationship to NRA.

27 |     82.    Defendants adopted and have enforced the unconstitutional Ordinance
28 | challenged here while acting under color of state law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

83.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable injury for which there is not adequate remedy at law. Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

### THIRD CAUSE OF ACTION

### Government Compelled Speech Under U.S. Const., amend. I

### 42 U.S.C. § 1983

(By All Plaintiffs Against All Defendants)

84.     Plaintiff incorporates by reference paragraphs 1 through 83 of this Complaint as though fully set forth herein in their entirety.

85.     By requiring Plaintiffs to disclose any sponsorship of or contract with Plaintiff NRA as a precondition for being awarded a City contract for goods or service, the Ordinance violates Plaintiffs' right to free speech under the First Amendment, as incorporated through the Fourteenth Amendment.

86.     The Ordinance compels Plaintiffs to engage in speech they wish not to engage in. Specifically, the Ordinance compels the disclosure of their affiliation with Plaintiff NRA, an organization that engages in speech and other expressive activity relating to controversial political and social issues.

87.     The Ordinance compels this speech of Plaintiffs even though the required disclosure has no connection to the goods to provided or the services to be rendered under the City's contracts.

88.     Defendants intend, through compelled disclosure of Plaintiffs' political affiliation with NRA, to place undue social pressure on Plaintiffs and to diminish open discussion regarding the Second Amendment.

89.     The Ordinance, on its face and as applied or threatened to be applied, does not serve a compelling, significant, or legitimate governmental interest.

90.     Even if the Ordinance served some sufficient government interest, it is neither narrowly tailored nor the least restrictive means to serve that purpose.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

91.    Defendants adopted and have enforced the unconstitutional Ordinance challenged here while acting under color of state law.

92.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable injury for which there is not adequate remedy at law. Absent intervention by this Court, through declaratory and injunctive relief, Plaintiffs will continue to suffer this irreparable harm.

**FOURTH CAUSE OF ACTION**

**Retaliation for Protected Speech and Association Under U.S. Const., amend. I**

**42 U.S.C. § 1983**

(By All Plaintiffs Against All Defendants)

93.    Plaintiff incorporates by reference paragraphs 1 through 92 of this Complaint as though fully set forth herein in their entirety.

94.    Defendants have no only the authority to order investigations of individuals or businesses that associate with or speak on behalf of Plaintiff NRA, they also have the authority to disqualify those individuals or businesses from City contracts, invoking a true threat of retaliation against those individuals or businesses.

95.    By requiring Plaintiffs to disclose any sponsorship of or contract with Plaintiff NRA as a precondition for being awarded a City contract for goods or service, the Ordinance would "chill a person of ordinary firmness" from continuing to associate with Plaintiff NRA through sponsorships or contracts, including paid membership in the organization.

96.    On its face, the Ordinance makes clear that its intention is to harm Plaintiff NRA by diminishing access to funding from members, sponsors, and supporters that fuels Plaintiff NRA's political agenda.

97.    The legislative history of the Ordinance is clear that the City intends to boycott businesses that sponsor or contract with Plaintiff NRA.

98.    Defendants, through social media, committee reports, and on-the-record comments, have disparaged Plaintiff NRA and its supporters and have expressed their

18

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    disdain for the organization simply because they disagree with Plaintiffs' pro-Second
2    Amendment viewpoint.

3        99.    There is a clear nexus between the Ordinance and Defendants' intent to
4    chill Plaintiffs' speech.

5        100.   Defendants adopted and have enforced the unconstitutional Ordinance
6    challenged here while acting under color of state law.

7        101.   As a direct and proximate result of Defendants' actions, Plaintiffs have
8    suffered and continue to suffer irreparable injury for which there is not adequate
9    remedy at law. Absent intervention by this Court, through declaratory and injunctive
10   relief, Plaintiffs will continue to suffer this irreparable harm.

11                          **FIFTH CAUSE OF ACTION**

12       **Violation of Equal Protection Under U.S. Const., amend. XIV**

13                              **42 U.S.C. § 1983**

14                    (By All Plaintiffs Against All Defendants)

15       102.   Plaintiff incorporates by reference paragraphs 1 through 101 of this
16   Complaint as though fully set forth herein in their entirety.

17       103.   Although Plaintiff operates a legal advocacy and political organization,
18   just like the other groups that operate within the City of Los Angeles, Defendants are
19   treating Plaintiffs unequally by requiring them to disclose political affiliations that
20   have nothing to do with their ability to complete a given contract.

21       104.   Defendants' requirement that political contractors disclose this affiliation
22   or risk not being eligible for City contracts does not further any compelling
23   government interest. Defendants' claim that "residents and stakeholders deserve to
24   know" is not a compelling government interest.

25       105.   The Ordinance's mandate that contractors affiliated with Plaintiff NRA
26   follow a separate set of disclosure rules than other contractors who are competing for
27   the same contracts is a violation of Plaintiffs' right to equal protection under the law
28   because it is based on a "bare desire to harm a politically unpopular group." *U.S.*

1  *Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973).

2       106.   Plaintiffs are being singled out for their political beliefs and speech.

3  Indeed, other contractors not affiliated with Plaintiff NRA are not required to disclose

4  their political beliefs or affiliations as part of the contractor bid process.

5       107.   The Ordinance, on its face and as applied or threatened to be applied,

6  does not serve a compelling, significant, or legitimate governmental interest.

7       108.   Even if the Ordinance served some sufficient government interest, it is

8  neither narrowly tailored nor the least restrictive means to serve that purpose.

9       109.   Defendants adopted and have enforced the unconstitutional Ordinance

10  challenged here while acting under color of state law.

11       110.   As a direct and proximate result of Defendants' actions, Plaintiffs have

12  suffered and continue to suffer irreparable injury for which there is not adequate

13  remedy at law. Absent intervention by this Court, through declaratory and injunctive

14  relief, Plaintiffs will continue to suffer this irreparable harm.

15                                **PRAYER FOR RELIEF**

16       Plaintiffs pray that the Court:

17       1.    Enter a declaration that Ordinance No. 186000 violates the free speech

18  rights of Plaintiffs under the First Amendment to the United States Constitution;

19       2.    Enter a declaration that Ordinance No. 186000 violates the free speech

20  rights of Plaintiff under the First Amendment of the United States Constitution

21  because it constitutes compelled speech by the government;

22       3.    Enter a declaration that Ordinance No. 186000 violates Plaintiffs' right

23  of free association under the First Amendment of the United States Constitution;

24       4.    Enter a declaration that Ordinance No. 186000 violates Plaintiffs' rights

25  of free speech and association under the First Amendment of the United States

26  Constitution because it constitutes government retaliation for engaging in protected

27  conduct;

28       5.    Enter a declaration that Ordinance No. 186000 violates Plaintiffs' right

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    to equal protection under the Fourteenth Amendment to the United States

2    Constitution;

3        6.    Issue preliminary and permanent injunctive relief prohibiting

4    Defendants, their employees, agents, successor, and assigns from enforcing or

5    publishing Ordinance No. 186000;

6        7.    Award damages according to proof;

7        8.    Award reasonable costs and expenses, including attorney's fees,

8    pursuant to 42 U.S.C. § 1988 or other appropriate state or federal law; and

9        9.    Any such relief the Court deems just and equitable.

10

11    Dated: April 24, 2019              **MICHEL & ASSOCIATES, P.C.**

12

13                                s/ *Anna M. Barvir*

                                      Anna M. Barvir

14                                       Counsel for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF