MICHAEL N. FEUER, City Attorney (SBN 111529x)
JAMES P. CLARK, Chief Deputy City Attorney (SBN 64780)
james.p.clark@lacity.org
GABRIEL S. DERMER, Supervising City Attorney (SBN 229424)
gabriel.dermer@lacity.org
BENJAMIN CHAPMAN, Deputy City Attorney (SBN 234436)
benjamin.chapman@lacity.org
200 North Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Telephone Number:  213.978.7556
Facsimile Number: 213.978.8214

Attorneys for Defendants,
CITY OF LOS ANGELES, ERIC GARCETTI, and HOLLY WOLCOTT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA; JOHN DOE,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES; ERIC GARCETTI, in his official capacity as Mayor of the City of Los Angeles; HOLLY L. WOLCOTT, in her official capacity as City Clerk of the City of Los Angeles, and DOES 1-10,<br><br>                    Defendants. | Case No.: 19-cv-03212-SVW-GJS<br><br>**DEFENDANTS CITY OF LOS ANGELES, ERIC GARCETTI, AND HOLLY WOLCOTT'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      July 8, 2019<br>Time:      1:30 p.m.<br>Ctrm:      10A-First Street Courthouse<br>Judge:     Hon. Stephen V. Wilson<br><br>Action Filed: 04/24/2019 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 8, 2019, at 1:30 p.m., or as soon thereafter as this motion may be heard in Courtroom 10A, 10th Floor of the above-titled Court, located at 350 W. 1st Street, Los Angeles, California 90012, defendants City of Los Angeles, Los Angeles Mayor Eric Garcetti, and Los Angeles City Clerk Holly Wolcott will and hereby do move this Court for an order dismissing Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, all records and papers on file in this action, and any evidence or oral argument offered at any hearing on this motion.  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 17, 2019.

Dated:  May 24, 2019

OFFICE OF THE CITY ATTORNEY OF LOS ANGELES

By:
    */s/ Benjamin Chapman*
    Benjamin Chapman

Attorneys for Defendants
CITY OF LOS ANGELES, ERIC GARCETTI,  and HOLLY WOLCOTT

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.  INTRODUCTION ...............................................................................................1

II.  FACTUAL BACKGROUND ................................................................................2

III.  Legal Standard...............................................................................................3

    A.  Rule 12(b)(6) Motion to Dismiss. ........................................................3

IV.  PLAINTIFFS' FIRST AMENDMENT CLAIMS (CAUSES OF ACTION 1-4) FAIL AS A MATTER OF LAW. ..........................................................................................4

    A.  Plaintiffs Assert Facial First Amendment Challenges to the Ordinance. ......5

    B.  Plaintiffs' Facial First Amendment Claims Fail as a Matter of Law. ............6

        1.  Plaintiffs' facial First Amendment claims fail as a matter of law because the Ordinance addresses conduct—entering into contracts and providing business discounts—that is not commonly associated with expression……………………………………………………………8

        2.  Plaintiffs' First Amendment claims fail as a matter of law because the Ordinance does not implicate speech protected by the First Amendment……………………………………………………………9

           a.  Plaintiffs' first cause of action for right to freedom of association fails as a matter of law because courts have specifically held that the right to contract and the right to associate for business purposes is not "expressive activity" protected by the First Amendment. .................................................10

           b.  Plaintiffs' second cause of action for right to free speech fails as a matter of law because the Ordinance does not restrict speech that is protected by the First Amendment. ........................12

           c.  Plaintiffs' third cause of action for government compelled speech fails as a matter of law because the Ordinance does not require the disclosure of activity protected by the First Amendment. ......13

           d.  Plaintiffs' fourth cause of action for First Amendment retaliation fails as a matter of law because the Ordinance does not retaliate against Plaintiffs for engaging in constitutionally protected expression. ...................................................................................15

i

V.      PLAINTIFFS' FIFTH CAUSE OF ACTION FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT FAILS AS A MATTER OF LAW BECAUSE IT IS ENTIRELY DUPLICATIVE OF PLAINTIFFS' FIRST AMENDMENT CLAIMS ............................................................. 16

VI.    MAYOR GARCETTI AND CITY CLERK WOLCOTT SHOULD BE DISMISSED AS DEFENDANTS. ................................................................. 20

VII.   CONCLUSION ......................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIDS Healthcare Found. v. Los Angeles County*,
  CV 12-10400(AGRx), 2013 U.S. Dist. LEXIS 202573 (C.D. Cal. Mar. 18,
  2013)……………………………………………………………….........................20

*Albright v. Oliver*,
  510 U.S. 266 (1994)....................................................................................................4

*Animal Legal Def. Fund v. Wasden*,
  878 F.3d 1184 (9th Cir. 2018) ...................................................................................6

*Archuleta v. County of Los Angeles*,
  No. CV 15-4695 DMG (SS), 2015 U.S. Dist. LEXIS 97761 (C.D. Cal. July 27,
  2015) .........................................................................................................................21

*Ashcroft v. Iqbal*,
  566 U.S. 662 (2009)....................................................................................................4

*Aydelotte v. Town of Skykomish*,
  No. C14-307RSL, 2015 U.S. Dist. LEXIS 139364 (W.D. Wash. Oct. 13, 2015), *rev'd
  on other grounds by* 2018 U.S. Dist. LEXIS 36244 (9th Cir. Dec. 24, 2018)……….19

*Bingue v. Prunchak*,
  512 F.3d 1169 (9th Cir. 2008) ...................................................................................7

*Boyd v. Illinois State Police*,
  384 F.3d 888 (7th Cir. 2004) ...................................................................................19

*Branson v. Piper*,
  No. 16-1790, 2017 U.S. Dist. LEXIS 99592 (D. Minn. May 3, 2017) .....................12

*Canatella v. Stovitz*,
  365 F. Supp. 2d 1064 (N.D. Cal. 2005) .....................................................................9

*Chula Vista Citizens for Jobs & Fair Competition v. Norris*,
  782 F.3d 520 (9th Cir. 2015) (en banc) ...................................................................13

*Clark v. Cmty. for Creative Non-Violence*,
  468 U.S. 288 (1984)....................................................................................................7

*Colorado Right to Life Comm. v. Buckley*,
  Nos. 96-S-2844, 96-N-2973, 97-N-221, 1998 U.S. Dist. LEXIS 17247 (D. Colo. Apr.
  17, 1998) ...................................................................................................................15

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
    473 U.S. 788 (1985) ..................................................................................6

*County of Sacramento v. Lewis*,
    532 U.S. 833 (1998) ..................................................................................7

*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles County Sherriff Dep't*,
    533 F.3d 780 (9th Cir. 2008) ..................................................................21

*Doe v. Reed*,
    561 U.S. 186 (2010) .......................................................................5, 13, 14

*Doe v. Reed*,
    586 F.3d 671 (9th Cir. 2009), *aff'd by*, 561 U.S. 186 (2010) ..................15

*Flanagan v. Harris*,
    No. LA CV 16-06164 JAK, 2017 U.S. Dist. LEXIS 28503 (C.D. Cal. Feb. 23,
    2017) ........................................................................................................18

*Foti v. City of Menlo Park*,
    146 F.3d 629 (9th Cir. 1998) ............................................................4, 5, 6

*Ft. Wayne Patrolmen's Benevolent Ass'n v. Ft. Wayne*,
    625 F. Supp. 722 (N.D. Ind. 1986) ........................................................11

*Helman v. Alcoa Global Fasteners, Inc.*,
    843 F. Supp. 2d 1038 (C.D. Cal. 2011) ..................................................21

*Hightower v. City and County of San Francisco*,
    No. C-12-5841 EMC, 2013 U.S. Dist. LEXIS 12039 (N.D. Cal. Jan. 29, 2013) ..........9

*Houston v. Medtronic, Inc.*,
    957 F. Supp. 2d 1166 (C.D. Cal. 2013) ................................................3, 4

*Karmanos v. Baker*,
    617 F. Supp. 809 (E.D. Mich. 1985) ......................................................11

*Las Vegas Nightlife v. Clark County*,
    38 F.3d 1100 (9th Cir. 1994) ....................................................................7

*Lone Star Sec. & Video v. City of Los Angeles*,
    989 F. Supp. 2d 981 (C.D. Cal. 2013) ......................................................6

*Nestor Colon Medina & Sucesores, Inc. v. Custodio*,
    964 F.2d 32 (1st Cir. 1992) ....................................................................19

*New York State Rifle and Pistol Ass'n v. City of New York*,
    883 F.3d 45 (2d Cir. 2018) ................................................................2, 11

iv

*Nordyke v. King*,
  319 F.3d 1185 (9th Cir. 2003) ...................................................................8

*Orin v. Barclay*,
  272 F.3d 1207 (9th Cir. 2001) .................................................................17

*Quiles-Santiago v. Rodriguez-Diaz*,
  851 F. Supp. 2d 411 (D.P.R. 2012) .........................................................19

*Ratliff v. Dekalb County*,
  62 F.3d 338 (11th Cir. 1995) ...................................................................19

*Rivers v. Campbell*,
  791 F.2d 837 (11th Cir. 1986) .................................................................11

*Roberts v. United States Jaycees*,
  468 U.S. 609 (1984)...........................................................................10, 11

*Roulette v. City of Seattle*,
  97 F.3d 300 (9th Cir. 1996) .............................................................*passim*

*Sousa v. Roque*,
  578 F.3d 164 (2d Cir. 2009) ....................................................................16

*Teixeira v. County of Alameda*,
  822 F.3d 1047 (9th Cir. 2016), *vacated in part by*, 854 F.3d 1046 (9th Cir.
  2016)…………………………………………………………………….17, 18

*URI Student Senate v. Town of Narragansett*,
  631 F.3d 1 (1st Cir. 2011)....................................................................2, 12

*Vote Choice v. Distefano*,
  4 F.3d 26 (1st Cir. 1993).........................................................................14

*Vukadinovich v. Bartels*,
  853 F.2d 1387 (7th Cir. 1988) ................................................................19

*Wasson v. Sonoma County Junior Coll.*,
  203 F.3d 659 (9th Cir. 2000) ..................................................................16

*Wine & Spirits Retails, Inc. v. Rhode Island*,
  418 F.3d 36 (1st Cir. 2005).....................................................................10

**Statutes**

42 U.S.C. § 1983 .........................................................................................4

City Ordinance No. 186000 ...................................................................2, 18

Washington Public Records Act .............................................................5, 14

**Other Authorities**

Second Amendment ........................................................................17, 18

Fourteenth Amendment ...................................................................3, 16

Federal Rules of Civil Procedure Rule 12(b)(6) .............................2, 3

L.R. 7-3 .................................................................................................2

U.S. Const. amend. XIV, § 1 ..............................................................16

United States Constitution First Amendment ............................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants City of Los Angeles (the "City"), Los Angeles Mayor Eric Garcetti, and Los Angeles City Clerk Holly Wolcott file this motion to dismiss Plaintiffs National Rifle Association (the "NRA") and John Doe's Complaint.

## I.   INTRODUCTION

Although the Complaint contains five causes of action, this lawsuit boils down to a single legal question:  Does the City's enactment of an ordinance that requires a potential City contractor to disclose "all of its and its Subsidiaries' contracts with or Sponsorships of the NRA" (the "Ordinance")[1] violate the First Amendment to the United States Constitution?  The answer is no.

As a threshold matter, the Ordinance does not criminalize speech, prevent anyone from engaging in free speech, or condition the right to obtain a City contract on the potential contractor's refusal to support the NRA or to engage in pro-gun speech.  The Ordinance also does not require a potential City contractor to disclose whether they are a member of the NRA, or to give up their membership in the NRA.  Rather, the Ordinance merely requires the disclosure of certain conduct—whether a potential City contractor has entered into a contract with the NRA and whether it provides business discounts to the NRA or its members.  Thus, the alleged First Amendment right underlying this lawsuit is the alleged right to ***enter into a contract with the NRA or to provide business discounts to the NRA or its members***.  This is fatal to Plaintiffs' Complaint for two reasons.

***First***, this is conduct, not speech.  It is well established that where an ordinance merely addresses conduct, "a facial freedom of speech attack must fail unless, at a minimum, the challenged statute is directed narrowly and specifically at expression or conduct commonly associated with expression." *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996) (quotation marks omitted).  Here, the Ordinance only requires the

---

[1] The Ordinance is attached to the Complaint as Exhibit 9.  The term "Sponsorships" is defined as "an agreement [with] the NRA to provide a discount to the NRA or an NRA member of the customary costs, fees or service charges for goods of services provided by the Person to the NRA or an NRA member."  (Exh. 9 p.3.)

disclosure of contracts and business discounts—conduct that is simply not "integral to, or commonly associated with expression." *Id.* at 304-05 (affirming dismissal of facial First Amendment challenge to ordinance prohibiting sitting or lying down on a public sidewalk). Thus, Plaintiffs' facial First Amendment challenge to the Ordinance fails as a matter of law.

**Second**, Plaintiffs' First Amendment-related claims all require this Court to find that the Ordinance burdens activity protected by the First Amendment. However, the right to contract and to provide business discounts is not "expressive activity" or speech protected by the First Amendment. *See*, *e.g.*, *New York State Rifle and Pistol Ass'n v. City of New York*, 883 F.3d 45, 67 (2d Cir. 2018) (holding First Amendment right of association "generally will not apply, for example, to business relationships"); *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 12 n.9 (1st Cir. 2011) ("The appellants … have authored no authority to suggest that the right to contract is a recognized First Amendment interest. Manifestly, it is not.").

Plaintiffs repeatedly mischaracterize the scope of the Ordinance. But it is actually quite narrow, and it simply does not address First Amendment protected speech or conduct. Accordingly, the Complaint should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

Plaintiff NRA is "a national membership organization" that "provid[es] instruction on firearm safety," and "engag[es] in civil rights advocacy." (Compl. ¶ 3.) The NRA purports to have associational standing, as well as standing in its own right. (*Id*. ¶¶ 4-5.) Plaintiff John Doe allegedly "operates a business with multiple contracts with the City of Los Angeles." (*Id*. ¶ 6.) "Doe is a member and supporter of the NRA." (*Id*.)

Defendant City is a Charter city. (*Id*. ¶ 8.) Defendant Garcetti is the Mayor of the City. (*Id*. ¶ 9.) Defendant Wolcott is the City Clerk. (*Id*. ¶ 10.) Both individual defendants are "sued in [their] official capacity." (*Id*. ¶¶ 9-10.)

This lawsuit concerns the constitutionality of City Ordinance No. 186000, which was passed by the City Council on February 12, 2019, and which took effect on April 1,

2019.  (*Id.* ¶¶ 46, 49.)  The Ordinance requires a potential City contractor to disclose "all of its and its Subsidiaries' contracts with or Sponsorships of the NRA."  (*Id.* Exh. 9, p.3.) The term "Sponsorships" is defined as "an agreement [with] the NRA to provide a discount to the NRA or an NRA member of the customary costs, fees or service charges for goods of services provided by the Person to the NRA or an NRA member."  (*Id.*)[2]

Notably, the disclosure has no effect on whether a potential contractor obtains the contract.  Under the City Charter, which the City and its Council are bound to follow, the City must accept the lowest bid for a contract, subject to a few exceptions that are not relevant here.  (City Charter § 371(a).)[3]

The gravamen of the Complaint is that the City's enactment of the Ordinance violates the First Amendment to the United States Constitution.  (Compl. ¶¶ 59-101.) Plaintiffs allege four different First Amendment-related claims:  (1) violation of the right to freedom of association; (2) violation of the right to free speech; (3) compelled speech; and (4) retaliation.  Plaintiffs also allege a duplicative fifth cause of action for violation of the Equal Protection Clause of the Fourteenth Amendment, claiming that the City has "singled out [Plaintiffs] for their political beliefs and speech" by enacting the Ordinance. (*Id.* ¶ 106.)

On all causes of action, Plaintiffs seek a declaration that the Ordinance violates the Constitution, and "injunctive relief prohibiting Defendants … from enforcing or publishing [the] Ordinance."  (Prayer for Relief ¶¶ 1-6.)

## III.  LEGAL STANDARD

### A.     Rule 12(b)(6) Motion to Dismiss.

District courts must engage in a two-step process when considering a motion to dismiss.  *Houston v. Medtronic, Inc.*, 957 F. Supp. 2d 1166, 1172 (C.D. Cal. 2013) (citing

---

[2] The Complaint alleges that a "diverse pool" of companies provide "incentives to [the NRA]'s members," including "large, national corporations that offer affinity discount programs to smaller, local retailers and firearm trainers."  (Compl. ¶ 27.)

[3] This provision is attached to the Declaration of Benjamin Chapman as Exhibit A.

*Ashcroft v. Iqbal*, 566 U.S. 662 (2009)).

First, the court must "'begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 566 U.S. at 679). Those conclusory allegations are to be ignored when evaluating the sufficiency of a pleading. *See*, *e.g.*, *id.* ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (quotation marks omitted)). Second, the court must determine whether the remaining "well-pleaded facts, and reasonable inferences therefrom, give rise to a plausible claim for relief." *Id.*; *see also Iqbal*, 566 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face…. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quotation marks and citation omitted)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Iqbal*, 566 U.S. at 679 (quotation marks omitted).

## IV.   PLAINTIFFS' FIRST AMENDMENT CLAIMS (CAUSES OF ACTION 1-4) FAIL AS A MATTER OF LAW.

Plaintiffs' first, second, third, and fourth causes of action (Compl. ¶¶ 59-101) are asserted under 42 U.S.C. § 1983, which provides that every person who, under color of law, deprives another of rights protected by the Constitution shall be liable to that party. 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* Here, Plaintiffs' first four causes of action are premised on alleged violations of the First Amendment. (Compl. ¶¶ 59-101.)

### A.    Plaintiffs Assert Facial First Amendment Challenges to the Ordinance.

There are two types of constitutional challenges—facial and as-applied.  *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).  "An ordinance may be facially unconstitutional in one of two ways:  either it is unconstitutional in every conceivable application, or it seeks to prohibit such a broad range of protected conduct that is unconstitutionally overbroad."  *Id.* (quotation marks omitted).  The Complaint only implicates the first type of facial challenge.[4]  "In the first type of facial challenge, the plaintiff argues that the ordinance could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity."  *Id.*  "A successful challenge to the facial constitutionality of a law invalidates the law itself."  *Id.*

On the other hand, "[a]n as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others."  *Id.*  "A successful as-applied challenge does not render the law itself invalid but only the particular application of the law."  *Id.*

Here, despite occasional references to the Ordinance being invalid "as applied,"[5] Plaintiffs assert a facial challenge to the Ordinance.  *Doe v. Reed*, 561 U.S. 186 (2010) is instructive.  There, the Supreme Court determined that a complaint asserting that the Washington Public Records Act was unconstitutional as to referendum petitions generally was a facial challenge, not an as-applied challenge, because "plaintiffs' claim and the relief that would follow—an injunction barring the secretary of state from making referendum petitions available to the public … reach beyond the particular circumstances of these plaintiffs.  They must therefore satisfy our standards for a facial challenge to the

---

[4] Under the second type of facial challenge—overbreadth—"the plaintiff argues that the statute is written so broadly that it may inhibit the constitutionally protected speech of third parties, even if his own speech may be prohibited."  *Foti*, 146 F.3d at 635.  Plaintiffs certainly do not argue that their own speech may be prohibited.  So they are not making an overbreadth challenge.

[5] *See, e.g.*, Compl. ¶ 62 ("The Ordinance, on its face and as applied or threatened to be applied does not serve a compelling, significant, or legitimate government interest."); *see also id.* ¶¶ 73, 89, 107 (same).

extent of that reach." *Id*. at 194 (quotation marks omitted).  Similarly, here, the relief sought by Plaintiffs—declarations that the Ordinance violates the First Amendment, as well as "preliminary and injunctive relief prohibiting Defendants … from enforcing or publishing [the] Ordinance" (Prayer for Relief ¶¶ 1-6)—reaches beyond these plaintiffs. Thus, Plaintiffs' Complaint is a facial First Amendment challenge to the Ordinance.[6]

"[F]acial challenges are disfavored…. Facial challenges … 'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.'" *Lone Star Sec. & Video v. City of Los Angeles*, 989 F. Supp. 2d 981, 988 (C.D. Cal. 2013) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2009)).  "It's true that our ordinary reluctance to entertain facial challenges is somewhat diminished in the First Amendment context…. However, this is because of our concern that those who desire to engage in legally protected expression may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid…. Consistent with this speech-protective purpose, *the Supreme Court has entertained facial freedom-of-expression challenges only against statutes that, by their terms, sought to regulate spoken words, or patently expressive or communicative conduct such as picketing or handbilling*." *Roulette*, 97 F.3d at 303 (emphasis added) (citations omitted) (quotation marks omitted).

**B.     Plaintiffs' Facial First Amendment Claims Fail as a Matter of Law.**

Where a plaintiff challenges the constitutionality of a law under the First Amendment, the Court must first determine whether a First Amendment right exists, "for, if it is not, [it] need go no further." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985); *see also Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1193-94 (9th Cir. 2018) ("Our first task is to determine whether the misrepresentations

---

[6] Plaintiffs do not allege—as they must to assert an as-applied challenge—that the Ordinance "may be capable of valid application to others." *Foti*, 146 F.3d at 635.  To the contrary, Plaintiffs claim that the Ordinance cannot be validly applied to anyone.

prohibited in the … statute constitute speech protected by the First Amendment…. If the government's actions do not implicate speech protected by the First Amendment, we 'need go no further.'" (quoting *Cornelius*, 473 U.S. at 797)). Plaintiffs bear the burden of establishing that they are engaged in conduct protected by the First Amendment. *See*, *e.g.*, *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984) ("[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate the First Amendment even applies. To hold otherwise would be to create a rule that all conduct is presumptively expressive."); *Las Vegas Nightlife v. Clark County*, 38 F.3d 1100, 1102 (9th Cir. 1994) (same). Plaintiffs cannot meet this burden as a matter of law.

The Ordinance requires a potential City contractor to disclose "all of its and its Subsidiaries' contracts with or Sponsorships of the NRA." (Compl. Exh. 9, p.3.) The term "Sponsorships" is defined as "an agreement [with] the NRA to provide a discount to the NRA or an NRA member of the customary costs, fees or service charges for goods of services provided by the Person to the NRA or an NRA member." (*Id*.) The Ordinance does not require a potential City contractor to disclose whether they are a member of the NRA, a supporter of the NRA, or a supporter of gun rights generally. Thus, the alleged First Amendment right underlying this lawsuit is not the right to associate with the NRA, or the right to speak in favor of the NRA or gun rights. Rather, the alleged First Amendment right underlying this lawsuit is the alleged right to ***enter into a contract with the NRA or to provide business discounts to the NRA or its members***.

With this understanding of "the exact contours of the underlying right said to have been violated,"[7] Plaintiffs' First Amendment claims fail as a matter of law for two reasons.

---

[7] "As in any action under 1983, the first step is to identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 532 U.S. 833, 841 n.5 (1998); *see also Bingue v. Prunchak*, 512 F.3d 1169, 1173 (9th Cir. 2008) (same).

**1.   Plaintiffs' facial First Amendment claims fail as a matter of law because the Ordinance addresses conduct—entering into contracts and providing business discounts—that is not commonly associated with expression.**

The Ordinance requires the disclosure of whether a potential City contractor has entered into contracts with the NRA or provides business discounts to the NRA or its members.  (Compl. Exh. 9 p.3.)  This is conduct, not speech.  It is well established that where an ordinance merely addresses conduct, "a facial freedom of speech attack must fail unless, at a minimum, the challenged statute is directed narrowly and specifically at expression or conduct commonly associated with expression." *Roulette*, 97 F.3d at 305 (quotation marks omitted).

*Roulette* is fatal to Plaintiffs' facial First Amendment claims.  There, the Ninth Circuit Court of Appeals considered a facial First Amendment challenge to a Seattle ordinance prohibiting sitting or lying on the public sidewalk at specific places and times. *Id*. at 302.  The plaintiffs argued that the ordinance infringed their free speech rights because sitting and lying down can sometimes communicate a message. *Id*. at 303.  The Ninth Circuit rejected this argument and affirmed the dismissal of Plaintiffs' facial First Amendment challenge to the ordinance, holding "[t]he fact that sitting can possibly be expressive, however, isn't enough to sustain plaintiffs' facial challenge to the Seattle ordinance…. By its terms, [the ordinance] prohibits only sitting or lying on the sidewalk, neither of which is integral to, or commonly associated with, expression." *Id*. at 303-04 (citations omitted) (quotation marks omitted).

Similarly, in *Nordyke v. King*, 319 F.3d 1185 (9th Cir. 2003), the Ninth Circuit Court of Appeals rejected a facial First Amendment challenge to an ordinance prohibiting the possession of firearms on county property, holding that since "possession of a gun is not 'commonly associated with expression,'" the plaintiff's "'facial freedom of speech attack'" failed as a matter of law. *Id*. at 1190 (quoting *Roulette*, 97 F.3d at 305).

Here, Plaintiffs' facial challenge to the Ordinance necessarily fails as a matter of law because the Ordinance only requires the disclosure of contracts and business

discounts—conduct that is simply not "integral to, or commonly associated with expression." *Roulette*, 97 F.3d at 304-05; *see also Canatella v. Stovitz*, 365 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005) (dismissing with prejudice a facial First Amendment challenge to statutes disciplining attorneys for violating court orders and committing acts of dishonesty because the statutes "simply do not directly regulate speech or expressive conduct…. While acts that would fall within the reach of these statutes might come in the form of speech or other expressive conduct, that is not enough to support a facial challenge." (citing *Roulette*, 97 F.3d at 303, 305)); *Hightower v. City and County of San Francisco*, No. C-12-5841 EMC, 2013 U.S. Dist. LEXIS 12039 (N.D. Cal. Jan. 29, 2013) (dismissing facial First Amendment challenge to law banning nudity on public streets and sidewalks because "nudity, in and of itself, is not inherently expressive" (citing *Roulette*, 97 F.3d at 303-04)).[8]

In sum, Plaintiffs' facial First Amendment challenge to the Ordinance must be rejected because contracting and providing business discounts are not integral to or commonly associated with expression. Accordingly, the motion should be granted without leave to amend as to Plaintiffs' First Amendment claims.

> ## 2. Plaintiffs' First Amendment claims fail as a matter of law because the Ordinance does not implicate speech protected by the First Amendment.

Assuming arguendo that the court finds Plaintiffs may pursue a facial First Amendment challenge to the Ordinance, each claim fails as a matter of law for the same reason: the right to contract and to provide business discounts is not "expressive activity" or speech protected by the First Amendment.

---

[8] Finding that the act of contracting is inherently an expressive activity would imbue First Amendment rights to all contracts and business relationships. This would invalidate on First Amendment grounds countless laws regulating business.

### a. Plaintiffs' first cause of action for right to freedom of association fails as a matter of law because courts have specifically held that the right to contract and the right to associate for business purposes are not "expressive activity" protected by the First Amendment.

The First Amendment right to freedom of association encompasses two categories: (1) the freedom of intimate association; and (2) the freedom of expressive association. *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). Plaintiffs only invoke the latter—the right to expressive association. (*See*, *e.g.*, Compl. ¶ 19 ("The First Amendment also protects the right to freely associate with others to advance one's beliefs without fear of government reprisal.").)

The Supreme Court has held that the right to expressive association is the "right to associate ***for the purpose of*** engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts*, 468 U.S. at 618 (emphasis added). Stated differently, "the [Supreme] Court has tended to view the right of association as dependent on underlying individual rights of expression; there is no right of association in the abstract." *Wine & Spirits Retails, Inc. v. Rhode Island*, 418 F.3d 36, 50 (1st Cir. 2005) (quotation marks omitted).

Plaintiffs disingenuously claim "[t]he Ordinance violates Plaintiffs' freedom of association by forcing them to publicly disclose affiliations that are disfavored by some." (Compl. ¶ 61.) This is intentionally misleading and glosses over what the Ordinance actually requires—the disclosure of whether a potential City contractor has a contract with the NRA or provides discounts to the NRA or its members. (Compl. Exh. 9 p.3.)[9]  Thus,

---

[9] Plaintiffs allege that "to require disclosure of an association's membership lists, the government must have a compelling justification for such an infringement on the right of free association." (Compl. ¶ 20.)  However, the Ordinance does not require a potential City contractor to disclose their membership in the NRA, nor does it require disclosure of the NRA's membership list! (Exh. 9 p.3.) Plaintiffs' repeated misstatements of what the Ordinance actually requires invokes Shakespeare's *Hamlet*—Plaintiffs doth protest too much.

to succeed on their freedom of association claim, Plaintiffs first must establish that they have a First Amendment right to contract or to provide business discounts, because the right to expressive association only protects the "right to associate ***for the purpose of engaging in those activities protected by the First Amendment***." *Roberts*, 468 U.S. at 618 (emphasis added).

However, it is well-established that the right to contract and the right to provide discounts are simply not expressive activity protected by the First Amendment. *See*, *e.g*., *New York State Rifle and Pistol Ass'n*, 883 F.3d at 67 (holding First Amendment right of association "generally will not apply, for example, to business relationships"); *Rivers v. Campbell*, 791 F.2d 837, 840 (11th Cir. 1986) (no First Amendment right to association where a person desires to associate with a group for "commercial gain"); *Ft. Wayne Patrolmen's Benevolent Ass'n v. Ft. Wayne*, 625 F. Supp. 722, 728 (N.D. Ind. 1986) ("The court seriously doubts that the first amendment right to freedom of association is designed to protect employer-employee relationships; if it did, every firing of an at will employee, every breach or tortious interference with an employment contract, and every aspect of employer-employee relations would have constitutional dimensions, and no court has adopted such a proposition…. [C]ase law concerning the freedom of association has involved association for the purpose of expression and belief…. The employer-employee relationship in this context is simply a contractual arrangement whereby employer and employee exchange mutually beneficial resources. To imbue that relationship with constitutional dimensions is to go far beyond the limits of constitutional construction."); *Karmanos v. Baker*, 617 F. Supp. 809, 816 (E.D. Mich. 1985) ("It is clear that plaintiff has a liberty interest in his right to associate guaranteed by the first amendment of the Constitution, but I hold that defendants have not deprived plaintiff of this right. The mere fact that defendants consider plaintiff ineligible for participation in intercollegiate hockey cannot be said to deprive plaintiff of his right of association…. Plaintiff has been and is free to associate with whomever he chooses; defendants have not and do not regulate such association. The only deprivation that plaintiff faces is of his claimed 'right'

1  to contract and play hockey with a professional hockey team…. I hold that plaintiff has
2  no such constitutional right.").

3      Simply put, the activity described in the Ordinance—entering into contracts and
4  providing business discounts—is not expressive activity protected by the First
5  Amendment. Accordingly, Plaintiffs' first cause of action fails as a matter of law.

6          **b.    Plaintiffs' second cause of action for right to free speech fails
7                  as a matter of law because the Ordinance does not restrict
8                  speech that is protected by the First Amendment.**

9      Plaintiffs allege "[t]he Ordinance is an unconstitutional abridgment on its face …
10 of Plaintiffs' affirmative rights to freedom of speech under the First Amendment."
11 (Compl. ¶ 73.) Plaintiffs allege they are "engage[d] in political speech and expression
12 protected by the First Amendment." (*Id*. ¶ 67 (NRA); *id*. ¶ 68 (Doe).) But the Ordinance
13 does not prevent a potential City contractor from speaking in favor of the NRA or gun
14 rights. Rather, the Ordinance merely requires the disclosure of whether a potential City
15 contractor has a contract with the NRA or provides business discounts to the NRA or its
16 members. (Compl. Exh. 9 p.3.) Thus, the alleged "speech" at issue is the right to contract,
17 and the right to provide discounts—not the right to engage in pro-NRA or pro-gun speech.

18     However, the right to contract and the right to provide business discounts are simply
19 not "speech" protected by the First Amendment. *See, e.g.*, *URI Student Senate*, 631 F.3d
20 at 12 n.9 ("The appellants … have authored no authority to suggest that the right to
21 contract is a recognized First Amendment interest. Manifestly, it is not."); *Branson v.*
22 *Piper*, No. 16-1790 (WMW/FLN), 2017 U.S. Dist. LEXIS 99592, at *5 (D. Minn. May 3,
23 2017) ("Plaintiff offers no support for his contention that an option to choose a vendor
24 from which to purchase hair clippers is a recognized right of choice secured by the First
25 Amendment. In addition, Plaintiff offers no support that either the right to contract or for
26 humane treatment are secured by the First Amendment.").

27
28

Simply put, the activity described in the Ordinance—entering into contracts and providing discounts—is not speech protected by the First Amendment.  Accordingly, Plaintiffs' second cause of action fails as a matter of law.

> **c.**    **Plaintiffs' third cause of action for government compelled speech fails as a matter of law because the Ordinance does not require the disclosure of activity protected by the First Amendment.**

Plaintiffs argue that "[b]y requiring [them] to disclose any sponsorship of or contract with Plaintiff NRA as a precondition for being awarded a City contract …, the Ordinance violates Plaintiffs' right to free speech under the First Amendment." (Compl. ¶ 85.)[10]

"Disclosure requirements may burden the ability to speak, but they do not prevent anyone from speaking." *Reed*, 561 U.S. at 196 (quotation marks omitted).  Accordingly, courts review First Amendment challenges to disclosure requirements under an "exacting scrutiny" standard.  *Id*.  This standard "requires a substantial relation between the disclosure requirement and a sufficiently important governmental interest.  To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness *of the actual burden on First Amendment rights*."  *Id*. (emphasis added) (quotation marks omitted); *see also Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 535-38 (9th Cir. 2015) (en banc) (same).

Before applying the exacting scrutiny standard, however, the court must first determine whether the challenged disclosure requirement actually compels the disclosure of *information protected by the First Amendment*.  This is necessary because a disclosure requirement, by itself, does not violate the First Amendment.  *Reed* is instructive.  There, signatories of a referendum petition containing their names and addresses challenged the

---

[10] Yet again, Plaintiffs misleadingly state that "[t]he Ordinance compels the disclosure of [Plaintiffs]' affiliation with the NRA." (Compl. ¶ 86.)  Not so.  Rather, it merely requires a potential contractor to disclose whether it has a contract with the NRA or provides NRA members with business discounts.  (*Id*. Exh. 9 p.3.)  As previously discussed, there is no First Amendment right of association in these activities.

Washington Public Records Act (the "WPRA"), which permitted public inspection of government documents, such as referendum petitions.   561 U.S. at 190-91.   Before applying the exacting scrutiny test, the Supreme Court *first* addressed whether the information to be disclosed—the names of the petition signers—was actually protected by the First Amendment.   *See id*. at 194-95.   Only *after* finding that it was,[11] did the Supreme Court then address whether the compelled disclosure of the First Amendment protected activity was justified under the exacting scrutiny test.   *Id*. at 196-202.   But if the underlying information to be disclosed had not been protected by the First Amendment, then the Supreme Court would not have determined whether the exacting scrutiny factors were satisfied, and the law would have been upheld.   *See*, *e.g*., *id*. at 219-28 (J. Scalia, concurring) (expressing view that WPRA should be upheld because there is no First Amendment right to confidentiality for petition signing; no discussion of exacting scrutiny factors).

Under *Reed*, the court must *first* determine whether the Ordinance compels the disclosure of information protected by the First Amendment.   As previously discussed, it does not—there is simply no First Amendment associational right attached to contracting or providing business discounts, nor is either activity protected speech under the First Amendment.   Accordingly, the court need not examine the exacting scrutiny factors because the First Amendment is simply not implicated here.   Or stated differently, because the Ordinance does *not* burden First Amendment rights, Plaintiffs' compelled speech claim fails as a matter of law for this reason alone.   *See*, *e.g*., *Vote Choice v. Distefano*, 4 F.3d 26, 39 (1st Cir. 1993) (holding law satisfied exacting scrutiny since "*[i]n the first place*, we have difficulty believing that [the law] imposes any burden on first amendment rights"—court only examined the governmental interest assuming arguendo "[the law] burdens a non-complying candidate's first amendment rights to some small extent"

---

[11] *See Reed*, 561 U.S. at 194-95 ("An individual expresses a view on a political matter when he signs a petition under Washington's referendum procedure…. [T]he expression of a political view implicates a First Amendment right.").

(emphasis added)); *Colorado Right to Life Comm. v. Buckley*, Nos. 96-S-2844, 96-N-2973, 97-N-221, 1998 U.S. Dist. LEXIS 17247, at *22-23 (D. Colo. Apr. 17, 1998) (holding law satisfied exacting scrutiny where it "as a whole operates as an incentive to candidates to agree to voluntary expenditure limits and does not contain corresponding punitive measures to coerce candidates to accept voluntary spending limits.  Because the court finds no burden on Plaintiff's First Amendment rights, its analysis can end without determining the issue of the state's justification for [the law].").

However, even assuming arguendo there may be some slight burden on the First Amendment rights of City contractors—an allegation unsupported by the law—the Ordinance serves an important governmental interest by informing the public and promoting transparency.  As set forth directly in the Ordinance, "the City of Los Angeles has enacted ordinances and adopted positions that promote gun safety and sensible gun ownership.  The City's residents deserve to know if the City's public funds are spent on contractors that have contractual or sponsorship ties with the NRA." (Compl. Exh. 9 p.2.) These are well-recognized governmental interests.  *See*, *e.g.*, *Doe v. Reed*, 586 F.3d 671, 680 (9th Cir. 2009) ("We have also recognized the State's 'informational interest' as important."), *aff'd by*, 561 U.S. 186 (2010).

> **d.** **Plaintiffs' fourth cause of action for First Amendment retaliation fails as a matter of law because the Ordinance does not retaliate against Plaintiffs for engaging in constitutionally protected expression.**

Plaintiffs claim the City enacted the Ordinance to retaliate for "Plaintiffs' speech." (Compl. ¶¶ 93-101.)    According to Plaintiffs, "[t]he First Amendment prohibits government retaliation for exercising one's right to engage in protected speech or association." (*Id.* ¶ 21.)  But the Ordinance does not "retaliate" against a potential City contractor because of its pro-gun speech (or any speech) or its membership in the NRA. Rather, the Ordinance merely requires the disclosure of whether a potential City contractor has a contract with the NRA or provides discounts to the NRA or its members.  (Compl.

Exh. 9 p.3.)  Thus, the basis for the purported "retaliation" is the potential contractor's contract with the NRA or its provision of business discounts to the NRA or its members.

"This circuit … has recognized that a plaintiff must demonstrate that she has engaged in constitutionally protected expression to establish a First Amendment retaliation claim."  *Wasson v. Sonoma County Junior Coll.*, 203 F.3d 659, 662 (9th Cir. 2000); *see also Sousa v. Roque*, 578 F.3d 164, 169-70 (2d Cir. 2009) ("For [the plaintiff]'s retaliation claim to be viable, we must find that his speech was protected by the First Amendment.  It is established law in this Circuit that, regardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment." (quotation marks omitted)).  Yet, as previously discussed, there is simply no First Amendment associational right attached to contracting or providing discounts, nor is either activity protected speech.  In other words, even assuming arguendo Defendants are somehow retaliating against Plaintiffs, such retaliation is not based on conduct protected by the First Amendment.  Accordingly, Plaintiffs' fourth cause of action for First Amendment retaliation fails as a matter of law.

## V. PLAINTIFFS' FIFTH CAUSE OF ACTION FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT FAILS AS A MATTER OF LAW BECAUSE IT IS ENTIRELY DUPLICATIVE OF PLAINTIFFS' FIRST AMENDMENT CLAIMS.

Plaintiffs' fifth cause of action claims the City's enactment of the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment[12] because under the Ordinance, "Plaintiffs are being singled out for their political beliefs and speech." (Compl. ¶ 106.)  But this claim fails as a matter of law because it is duplicative of Plaintiffs' First Amendment claims.

The Ninth Circuit Court of Appeals has held that an equal protection claim is not viable where it seeks to vindicate enumerated rights protected by a separate constitutional amendment, such as the First or Second Amendment.  For example, in *Orin v. Barclay*,

---

[12] The Equal Protection Clause states that "no State shall … deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

272 F.3d 1207 (9th Cir. 2001), the Ninth Circuit rejected an "Equal Protection claim [that] appears to be no more than a First Amendment claim dressed in equal protection clothing," holding that "[i]t is generally unnecessary to analyze laws which burden the exercise of First Amendment rights by a class of persons under the equal protection guarantee, because the substantive guarantees of the Amendment serve as the strongest protection against the limitation of these rights.   Accordingly, we treat [the plaintiff]'s equal protection claim as subsumed by, and co-extensive with, his First Amendment claim." *Id*. at 1213 n.3 (citation omitted).

Similarly, in *Teixeira v. County of Alameda*, 822 F.3d 1047 (9th Cir. 2016), *vacated in part by*, 854 F.3d 1046 (9th Cir. 2016), and *reh'g en banc*, 873 F.3d 670 (9th Cir. 2017), the Ninth Circuit Court of Appeals held that an equal protection claim was "not cognizable" where it sought to vindicate the plaintiff's Second Amendment rights:

> [B]ecause the right to keep and to bear arms for self-defense is not only a fundamental right, [citation], but an enumerated one, it is more appropriately analyzed under the Second Amendment than the Equal Protection Clause. *Cf. Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989))). Because [the plaintiff]'s equal protection challenge is "no more than a [Second] Amendment claim dressed in equal protection clothing," it is "subsumed by, and coextensive with" the former, *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001), and therefore is not cognizable under the Equal Protection Clause.

*Id*. at 1052 (citation omitted).[13]

*Flanagan v. Harris*, No. LA CV 16-06164 JAK (ASx), 2017 U.S. Dist. LEXIS 28503 (C.D. Cal. Feb. 23, 2017) is instructive.  There, the district court dismissed an equal

---

[13] The en banc panel affirmed the district court's order on the plaintiff's equal protection claims "for the reasons given in the panel opinion."  *Teixeira*, 873 F.3d at 676 n.7.  So *Teixeira's* equal protection analysis remains good law.

protection claim brought by gun owners who were denied concealed carry permits because it was duplicative of the plaintiffs' Second Amendment claims:

> An Equal Protection claim brought under the Fourteenth Amendment that is the same as one brought simultaneously under a different constitutional provision cannot provide an independent basis for relief…. Plaintiffs' claims arise from the Second Amendment, which is an explicitly textual source of constitutional protection…. Consequently, the Equal Protection claim fails because it is "subsumed by, and coextensive with" the Second Amendment and "therefore not cognizable under the Equal Protection Clause."

*Id*. at *15 (quoting *Orin*, 272 F.3d at 1213 n.3) (citations omitted) (quotation marks omitted).  As the district court noted, despite "Plaintiffs conten[tion] that their Equal Protection and Second Amendment claims are distinct, a review of the Complaint shows otherwise.  Each claim seeks the same relief based on the same conduct.  This is confirmed by the prayer for relief.  It shows that the Equal Protection challenge is only an alternative to the Second Amendment claim without any unique elements."  *Id*. at *16.

Similarly, here, Plaintiffs' First Amendment claims and their Equal Protection claim seek the same relief.  (*See*, *e.g*., <u>Prayer for Relief</u> ¶ 6 (requesting "preliminary and permanent injunctive relief prohibiting Defendants … from enforcing or publishing Ordinance No. 186000.").)  And Plaintiffs' First Amendment claims and their equal protection claim are based on the same exact conduct—the City's enactment of the Ordinance.  In sum, Plaintiffs' duplicative equal protection claim should be dismissed.

Moreover, Plaintiffs' equal protection claim is also subject to dismissal because it is entirely duplicative of Plaintiffs' First Amendment retaliation claim.  It is well established that claims of unequal treatment in retaliation for exercising free speech rights are, at their core, First Amendment claims that do not implicate the Equal Protection Clause.  *See*, *e.g*., *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004) ("[T]he right to be free from retaliation may be vindicated under the First Amendment …, but not the equal protection clause."); *Ratliff v. Dekalb County*, 62 F.3d 338, 340 (11th Cir. 1995) ("The right to be free from retaliation is clearly established as a first amendment right …;

but no clearly established right exists under the equal protection clause to be free from retaliation."); *Vukadinovich v. Bartels*, 853 F.2d 1387, 1391-92 (7th Cir. 1988) ("[The plaintiff] claims only that he was treated differently … in retaliation for the exercise of his First Amendment rights…. Such a claim fits uneasily into an equal protection framework…. [P]laintiff is not claiming that he was classified on the basis of some forbidden characteristic, only that he was treated differently because he exercised his right to free speech. We believe this is best characterized as a mere rewording of plaintiff's First Amendment-retaliation claim, which was properly disposed of."); *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 44-45 (1st Cir. 1992) (rejecting equal protection claim because there was "little basis or justification for applying equal protection analysis" where the claim "overlap[ped]" with a First Amendment claim).[14]

*AIDS Healthcare Found. v. Los Angeles County*, CV 12-10400 PA (AGRx), 2013 U.S. Dist. LEXIS 202573 (C.D. Cal. Mar. 18, 2013) is instructive. There, the plaintiffs brought a First Amendment retaliation claim alleging the defendants retaliated against them for their advocacy efforts, as well as an equal protection claim "based on the same allegedly retaliatory conduct that forms the basis for Plaintiffs' second claim for First Amendment retaliation." *Id.* at *22. The district court dismissed the equal protection claim, holding: "Although the Ninth Circuit has not considered the issue, the First,

---

[14] *See also Quiles-Santiago v. Rodriguez-Diaz*, 851 F. Supp. 2d 411, 426 (D.P.R. 2012) (dismissing equal protection claim with prejudice because "[a]n equal protection claim alleging political discrimination … merely restates a First Amendment political discrimination claim and should be considered under the First Amendment…. The plaintiffs' Equal Protection Clause claim is based on the exact same set of facts in their First Amendment … claim: that defendants allegedly discriminated against them because of their [political] membership." (citations omitted)); *Aydelotte v. Town of Skykomish*, No. C14-307RSL, 2015 U.S. Dist. LEXIS 139364, at *3-4 (W.D. Wash. Oct. 13, 2015) ("[P]ersuasive authority suggests that claims that a plaintiff was retaliated-against and thus 'treated different' from others based on the content of his speech are actually First Amendment claims that do not actually implicate the Equal Protection Clause." (quotation marks omitted)), *rev'd on other grounds by* 2018 U.S. Dist. LEXIS 36244 (9th Cir. Dec. 24, 2018).

Second, Fourth, Seventh, and Eleventh Circuits have all concluded that allegations that a plaintiff was treated differently in retaliation for the exercise of First Amendment rights do not implicate the Equal Protection Clause…. Plaintiffs cannot simply recharacterize their First Amendment retaliation claim as a violation of the Equal Protection Clause. The Court therefore dismisses this claim with prejudice." *Id.* (citations omitted).

Here, Plaintiffs' equal protection claim alleges that "Plaintiffs are being singled out for their political beliefs and speech." (Compl. ¶ 106.) This is the essence of Plaintiffs' First Amendment retaliation claim. (*E.g.*, *id.* ¶¶ 93-101 (alleging the City enacted the Ordinance to retaliate for "Plaintiffs' speech"); *id.* ¶ 21 (alleging "[t]he First Amendment prohibits government retaliation for exercising one's right to engage in protected speech or association").) Moreover, because the conduct underlying both claims is exactly the same—the City's enactment of the Ordinance—the equal protection claim is based on the same allegedly retaliatory conduct as the First Amendment retaliation claim. Indeed, Plaintiffs repeatedly allege that they are being retaliated against, or treated differently by the City, because of their speech. (*See*, *e.g.*, *id.* ¶ 31 (City adopted Ordinance "to silence NRA's voice as well as the voices of all those who dare oppose the City's broad gun-control agenda"); ¶ 54 (alleging Ordinance "is about discriminating against a lawful organization and its members and supporters because the City does not approve of their political speech"); ¶ 58 ("Defendants' actions seek to single out individuals and a particular group with disfavored speech and treat them differently….").)

In sum, Plaintiffs' equal protection claim is duplicative of Plaintiffs' First Amendment claims, generally, and Plaintiffs' First Amendment retaliation claim, specifically. Accordingly, it should be dismissed with prejudice.

## VI.   MAYOR GARCETTI AND CITY CLERK WOLCOTT SHOULD BE DISMISSED AS DEFENDANTS.

Mayor Garcetti and City Clerk Wolcott have been named as defendants in their "official capacity[ies]." (Compl. ¶¶ 9-10.) "An official capacity suit against a municipal officer is equivalent to a suit against the entity…. When both a municipal officer and a

local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles County Sherriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (affirming dismissal of Los Angeles County Sheriff sued in his official capacity where County-employer was also named as a defendant) (citation omitted); *see also Archuleta v. County of Los Angeles*, No. CV 15-4695 DMG (SS), 2015 U.S. Dist. LEXIS 97761, at *7-8 (C.D. Cal. July 27, 2015) ("If a government entity is named as a defendant, it is not only unnecessary and redundant to name individual officers in their official capacity, but also improper…. Here, the County is a named defendant and the Sheriff is a County employee. Accordingly, Plaintiff's claims against the Sheriff in his official capacity are defective and must be dismissed." (citation omitted)).

## VII.   CONCLUSION

As the court has noted, "where leave to amend would be futile, the Court may deny leave to amend." *Helman v. Alcoa Global Fasteners, Inc*., 843 F. Supp. 2d 1038, 1041 (C.D. Cal. 2011).  Here, Plaintiffs' facial First Amendment claims are barred as a matter of law for two reasons:  (1) the Ordinance addresses conduct—contracting and providing business discounts—that is not commonly associated with expression; and (2) the Ordinance simply does not burden conduct or speech that is protected by the First Amendment.  And Plaintiffs' equal protection claim is also barred as a matter of law because it is entirely duplicative of Plaintiffs' failed First Amendment claims.  There are simply no additional facts that can alter these determinations.  Accordingly, amendment "would be futile," and the Complaint should be dismissed with prejudice.

1

Dated:  May 24, 2019

OFFICE OF THE CITY ATTORNEY OF LOS ANGELES

2

3

By:

4

  */s/ Benjamin Chapman*

5

Benjamin Chapman

6

Attorneys for Defendants

7

CITY OF LOS ANGELES, ERIC GARCETTI, and HOLLY WOLCOTT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28