# EXHIBIT 1

ORDINANCE NO. ___183806___

An ordinance adding a new Article 6.7 to Chapter IV of the Los Angeles Municipal Code to prohibit the possession of large-capacity magazines.

**WHEREAS,** the ability of an automatic or semi-automatic firearm to fire multiple bullets without reloading is directly related to the capacity of the firearm's feeding device or "magazine";

**WHEREAS,** any ammunition feeding device with the capacity to accept more than 10 rounds of ammunition as defined in Section 16740 of the California Penal Code is considered to be a "large-capacity" magazine, and some large-capacity magazines can hold up to 100 rounds of ammunition;

**WHEREAS,** although detachable large-capacity magazines are typically associated with machine guns or semi-automatic assault weapons, such devices are available for any semi-automatic firearm that accepts a detachable magazine, including semi-automatic handguns;

**WHEREAS,** the ability of large-capacity magazines to hold numerous rounds of ammunition significantly increases the lethal capacity of the automatic and semi-automatic firearms with these magazines;

**WHEREAS,** a recent study concluded that 42 percent of mass shooting incidents within the last three decades involved an assault weapon and more than half of the perpetrators possessed assault weapons, large-capacity magazines or both;

**WHEREAS,** on average, shooters who use assault weapons and/or large-capacity magazines in mass shootings shoot 151 percent more people and kill 63 percent more people than shooters who do not use assault weapons and large-capacity magazines;

**WHEREAS,** the prohibition on large-capacity magazines serves as further protection for law enforcement officers because shooters will be forced to reload – and put themselves in a position to be subdued – before they can cause mass casualties;

**WHEREAS,** large-capacity magazines were used in a number of high-profile shootings, including:

- The shooting at a San Francisco law firm on July 1, 1993, where a shooter armed with semiautomatic assault weapons and large capacity magazines, some capable of holding up to 50 rounds of ammunition, killed 8 people and injured 6 others;

1

- The shooting on December 7, 1993, that occurred in a Long Island Rail Road train, where a shooter armed with a semi-automatic handgun and large capacity magazines killed 6 people and wounded 19 others;

- The shooting on February 28, 1997, at a North Hollywood Bank of America where two heavily armed bank robbers emptied more than a thousand rounds of ammunition using fully automatic machine guns and an AR-15 assault rifle with high-capacity drum magazines and armor-piercing bullets, where several courageous LAPD officers were outgunned and injured as a result of the incident;

- The shooting at the Connecticut State Lottery Headquarters in Newington, Connecticut on March 6, 1998, where a gunman armed with 9mm pistol and large-capacity magazine holding 19-rounds of ammunition, killed 4 people;

- The shooting on April 20, 1999, at Columbine High School in Columbine, Colorado where two students using shot guns and semi-automatic handguns loaded with 52, 32 and 28-round large-capacity magazines killed 12 students and injured 21 additional students;

- The shooting at the North Valley Jewish Community Center in Granada Hills on August 10, 1999, where a shooter armed with an Uzi-type submachine gun and semi-automatic pistol and large-capacity magazines fired 70 shots into the lobby of the Community Center, wounding 5 people (3 children, 1 teenage counselor and an officer worker);

- The shooting on the campus of Virginia Polytechnic Institute and State University in Virginia on April 16, 2007, where a college student using two semi-automatic handguns loaded with 15-round large-capacity magazines and hollow-point ammunition killed 32 people and wounded 17 others;

- The shooting on April 3, 2009, at the American Civic Association immigration center in Binghamton, New York where a shooter armed with semi-automatic pistols, two 30-round large capacity magazines, and two 15-round large capacity magazines, killed 13 people and wounded 4 others;

- The shooting at a family-owned beer and wine wholesaler in Manchester, Connecticut on August 3, 2010, where a gunman using a Sturm Ruger SR9 pistol and two large capacity magazines holding 17-rounds of ammunition, killed 8 co-workers and seriously wounded 2 others;

- The shooting on January 8, 2011, at a constituent meeting held in a supermarket parking lot in Tucson, Arizona where U.S. Representative Gabrielle Gifford and 13 others were shot by a man using a semi-automatic pistol loaded with a 33-round large capacity magazine. Six of the people shot died, including a Federal Court Judge;

- The shooting in a movie theater in Aurora, Colorado on July 20, 2012, where a gunman using a 12-gauge Remington 870 Express Tactical shotgun, a Smith & Wesson M&P15 semi-automatic rifle with a 100-round drum magazine and a semi-automatic handgun killed 12 and injured 58 others;

- The recent shooting on December 14, 2012, at Sandy Hook Elementary School in Newtown, Connecticut where a gunman using a Bushmaster XM15-E2S rifle with 30-round large-capacity magazines and semi-automatic handguns fatally shot 20 children and 6 adult staff members;

- The recent shooting on July 15, 2013, near and on the campus of Santa Monica College where a shooter armed with 1,300-rounds of ammunition, including a semi-automatic AR-15 assault rifle with large-capacity magazines, capable of holding 30-rounds of ammunition, killed 5 people and seriously wounded 4 others;

- The recent shooting on August 5, 2013, at a town meeting in Ross Township, Pennsylvania where a gunman fired 28-rounds from a Ruger Mini-14 rifle, killing 3 people and injuring 2 others. The shooter used a 30-round large-capacity magazine in his rifle and had 90-rounds of ammunition in his car;

- The recent shooting on August 20, 2013, at Ronald E. McNair Discovery Learning Academy in Decatur, Georgia where a gunman using an AK 47-style assault rifle, large-capacity magazines and nearly 500 rounds of ammunition exchanged fire with local law enforcement before ultimately surrendering to local law enforcement;

- The recent shooting on September 20, 2013 at a park on the south side of Chicago where a shooter armed with an assault weapon equipped with a large-capacity magazine injured 13 people; and

- The recent shooting on November 1, 2013, at Los Angeles International Airport where a gunman using a Smith & Wesson M&P15 semi-automatic rifle loaded with a 30-round large-capacity magazine opened fire into a crowded airport terminal, killing 1 TSA agent and wounding several others. The shooter had five additional 30-round large-capacity magazines and hundreds of ammunition in his carrying bag;

**WHEREAS,** large-capacity magazine bans reduce the capacity, and thus the potential lethality, of any firearm that can accept a large capacity magazine; and

**WHEREAS,** large-capacity magazines are not necessary for individuals to vindicate their right to self-defense. Only in an extraordinarily rare circumstance would a person using a firearm in self-defense ever be required to use a large-capacity magazine to defend himself or herself effectively. This is particularly true in an urban center like Los Angeles where law enforcement can and does respond quickly to threats

3

and incidents. Conversely, the dangers of large-capacity magazines are heightened in dense urban areas like Los Angeles;

**WHEREAS,** in 1994, in recognition of the dangers posed by large-capacity magazines, Congress adopted a law prohibiting the transfer and possession of large-capacity magazines as part of the federal assault weapon ban;

**WHEREAS,** the federal law banning large-capacity magazines was enacted with a sunset clause and expired on September 13, 2004;

**WHEREAS,** a researcher hired by the U.S. Department of Justice to analyze the effect of the 1994 federal ban on assault weapons and large-capacity magazines found that "attacks with semi-automatics including assault weapons and other semi-automatics equipped with large-capacity magazines result in more shots fired, more persons hit, and more wounds inflicted per victim than do attacks with other firearms";

**WHEREAS,** since the federal ban's sunset in 2004, the Los Angeles Police Department's Gun Unit has seen a significant increase in the number of large-capacity magazines recovered, from 38 in 2003 to anywhere from 151 to 940 each year between 2004 and 2010;

**WHEREAS,** the number of assault rifles recovered by the Los Angeles Police Department's Gun Unit ranged from 93 in 2010, 56 in 2011, 54 in 2012, and 63 in 2013;

**WHEREAS,** since January 1, 2000, California Penal Code Section 32310 has, with limited exceptions, prohibited the manufacture, importation into the state, keeping for sale, offering or exposing for sale, giving or lending of large capacity magazines; however, California law does not prohibit the possession of these magazines, and this gap in the law threatens public safety;

**WHEREAS,** any large-capacity magazine that is subject to California Penal Code Section 32390 is a nuisance wherever found within the State and can be disposed of in accordance with the provisions of Sections 18010 and 18005 of the California Penal Code; and

**WHEREAS,** it is necessary to preserve the peace and protect the general health, safety and welfare of the residents of the City.

NOW, THEREFORE,

## THE PEOPLE OF THE CITY OF LOS ANGELES
## DO ORDAIN AS FOLLOWS:

Section 1. A new Article 6.7 is added to Chapter IV of the Los Angeles Municipal Code to read as follows:

### ARTICLE 6.7

### LARGE-CAPACITY MAGAZINES – POSSESSION PROHIBITED

**SEC. 46.30. LARGE-CAPACITY MAGAZINES – POSSESSION PROHIBITED.**

    (a)    **Definitions.**

        (1)    "LARGE –CAPACITY MAGAZINE" means any detachable ammunition feeding device with the capacity to accept more than 10 rounds, but shall not be construed to include any of the following:

            (i)    A feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds.

            (ii)    A .22 caliber tube ammunition feeding device.

            (iii)    A tubular magazine that is contained in a lever-action firearm.

    (b)    **Prohibition on Possession of Large-Capacity Magazines**

        (1)    It is unlawful for any person to possess any large-capacity magazine, except as otherwise authorized by law, whether assembled or disassembled.

        (2)    Any person who, prior to the effective date of this article, was legally in possession of a large-capacity magazine shall have 60 days from such effective date to do any of the following without being subject to prosecution:

            (i)    Remove the large-capacity magazine from the City of Los Angeles;

            (ii)    Surrender the large-capacity magazine to the Los Angeles Police Department for destruction;

            (iii)    Sell or transfer the large-capacity magazine lawfully in accordance with Section 32410 of the California Penal Code.

(c) **Exemptions**.

The provisions of Subsection (b) shall not apply to the following:

(1) Any government officer, agent, or employee, member of the armed forces of the United States, or peace officer, to the extent that such person is otherwise authorized to possess a large-capacity magazine, and does so while acting within the scope of his or her duties;

(2) A person licensed pursuant to Sections 26700 to 26915 of the California Penal Code;

(3) A gunsmith for the purpose of maintenance, repair or modification of the large-capacity magazine;

(4) Any entity that operates an armored vehicle business pursuant to the laws of the state, and an authorized employee of such entity, while in the course and scope of his or her employment for purposes that pertain to the entity's armored vehicle business;

(5) Any person, corporation or other entity that manufactures the large-capacity magazine for a person mentioned in Subdivision (1), or for export pursuant to applicable federal regulations;

(6) Any person using the large-capacity magazine solely as a prop for a motion picture, television or video production;

(7) Any holder of a special weapons permit issued pursuant to California Penal Code Sections 18900, 31000, 32650, 32700-32720, or 33300;

(8) Any person issued a permit pursuant to California Penal Code Section 32315 by the Department of Justice upon a showing of good cause for the possession, transportation or sale of large-capacity magazines between a person licensed pursuant to Sections 26700 to 26915 of the California Penal Code, and an out-of-state client, when those activities are in accordance with the terms and conditions of the permit;

(9) Any federal, state or local historical society, museum or institutional collection which is open to the public, provided that the large-capacity magazine is properly housed, secured from unauthorized handling and unloaded;

(10) Any person who finds the large-capacity magazine, if the person is not prohibited from possessing firearms or ammunition pursuant to federal or state law, and the person possesses the large-capacity magazine no longer than is necessary to deliver or transport the same to a law enforcement agency for that agency's disposition according to the law;

(11) A forensic laboratory or any authorized agent or employee thereof in the course and scope of his or her authorized activities;

(12) Any person in the business of selling or transferring large-capacity magazines in accordance with California Penal Code Section 32310 who is in possession of a large-capacity magazine solely for the purpose of doing so; or

(13) Any person lawfully in possession of a firearm that the person obtained prior to January 1, 2000 if no magazine that holds 10 or less rounds of ammunition is compatible with that firearm and the person possesses the large-capacity magazine solely for use with that firearm;

(d) **Penalty**. Violation of this section shall constitute a misdemeanor.

(e) **Severability**. If any provision of this ordinance is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions which can be implemented without the invalid provisions, and to this end, the provisions of this ordinance are declared to be severable.

Sec. 2. The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles: one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

I hereby certify that this ordinance was passed by the Council of the City of Los Angeles, at its meeting of _____JUL 2 8 2015_____.

HOLLY L. WOLCOTT, City Clerk

By _____
Deputy

Approved _August 7, 2015_

_____
Mayor

Approved as to Form and Legality

MICHAEL N. FEUER, City Attorney

By _____
BRIAN SOTTILE
Deputy City Attorney

Date _____JUN 2 6 2014_____

File No. _____CF 13-0068_____

m:\pgen\pgen\brian sottile\ordinances\large capacity magazines - final draft no 8 - 6.25.14.doc

## DECLARATION OF POSTING ORDINANCE

I, VERONICA COLEMAN-WARNER, state as follows: I am, and was at all times hereinafter mentioned, a resident of the State of California, over the age of eighteen years, and a Deputy City Clerk of the City of Los Angeles, California.

**Ordinance No.183806 – Adding a new Article 6.7 to Chapter IV of the Los Angeles Municipal Code to prohibit the possession of large-capacity magazines** - a copy of which is hereto attached, was finally adopted by the Los Angeles City Council on **July 28, 2015**, and under the direction of said City Council and the City Clerk, pursuant to Section 251 of the Charter of the City of Los Angeles and Ordinance No. 172959, on **August 10, 2015** I posted a true copy of said ordinance at each of the three public places located in the City of Los Angeles, California, as follows: 1) one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; 2) one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; 3) one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

Copies of said ordinance were posted conspicuously beginning on **August 10, 2015** and will be continuously posted for ten or more days.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this **7th** day of **August, 2015** at Los Angeles, California.

*Veronica Coleman-Warner*
Veronica Coleman-Warner, Deputy City Clerk

Ordinance Effective Date: **September 19, 2015**     Council File No. **13-0068**

# EXHIBIT 2

ORDINANCE NO. _____183956_____

An ordinance adding a new Section 55.21 to Chapter V of the Los Angeles Municipal Code to require handguns located in a residence to be kept in a locked container or disabled with a trigger lock.

**WHEREAS,** firearm injuries have a significant public health impact both nationally and locally;

**WHEREAS,** between 1999 and 2010, over 8,300 unintentional shooting deaths were reported in the United States, including 2,383 children and young people under the age of 21;

**WHEREAS,** on the average, over 16,000 people in the United States are treated each year in hospital emergency rooms for unintentional gunshot wounds;

**WHEREAS,** in 2010, firearms were used in 19,392 suicides in the United States, constituting almost 62 percent of all gun deaths;

**WHEREAS,** over 50 percent of suicides are committed with a firearm;

**WHEREAS,** approximately 49 gun suicides were committed each day for the years 2005-2010;

**WHEREAS,** firearms were used in 44 percent of suicide deaths among persons under age 25 in 2010;

**WHEREAS,** more than 75 percent of guns used in suicide attempts and unintentional injuries of people under 19 years of age were stored in the residence of the victim, a relative, or a friend;

**WHEREAS,** a 1991 study found that 8 percent of accidental shooting deaths resulted from guns fired by children under the age of six;

**WHEREAS,** having a loaded or unlocked gun in the home is associated with an increased risk of gun-related injury and death;

**WHEREAS,** in 2013, more than five children under the age of 12 were killed each month by guns that were improperly stored and secured at the home of a family member or friend;

**WHEREAS,** children are particularly at risk of injury and death, or causing injury and death, when they can access guns in their own homes or homes that they visit;

**WHEREAS,** a 2005 study found that an estimated 1.69 million children age 18 and under are living in households with loaded and unlocked firearms. Many young

1

children, including children as young as three years old, are strong enough to fire handguns;

**WHEREAS,** more than two thirds of school shooters obtained their guns from their own home or that of a relative;

**WHEREAS,** quick access to loaded firearms heightens the risk that a young person's impulsive decision to commit suicide will be carried out without reflection or seeking help, and that the attempt will be fatal. One third of youths who died by suicide had faced a crisis within the previous 24 hours. Among people who nearly died in a suicide attempt, almost a quarter indicated that fewer than five minutes had passed between deciding on suicide and making the attempt. While fewer than 10 percent of suicide attempts by other means are fatal, at least 85 percent of firearm suicide attempts end in death;

**WHEREAS,** guns kept in the home are more likely to be involved in an unintentional shooting, criminal assault, or used in suicides and against family and friends rather than in self-defense;

**WHEREAS,** only one in ten firearm homicides in the shooter's home is considered justified. Of every ten firearm homicide victims killed at the shooter's residence, six were intimate partners or family members of the shooter, three were friends or acquaintances of the shooter, and only one was a stranger to the shooter;

**WHEREAS,** applying trigger locks or using lockboxes when storing firearms in the home reduces the risk of firearm injury and death;

**WHEREAS,** keeping a firearm locked when it is not being carried ensures that it cannot be accessed and used by others without the owners' knowledge or permission. This simple measure significantly decreases the risk that the gun will be used to commit suicide, homicide or inflict injury, whether intentionally or unintentionally;

**WHEREAS,** safe storage measures have a demonstrated protective effect in homes with children and teenagers where guns are stored;

**WHEREAS,** there is a wide consensus among medical professionals, police chiefs, gun control advocates and gun rights groups that applying trigger locks or using lockboxes to store unsupervised guns in the home promotes health and safety;

**WHEREAS,** the International Association of Chiefs of Police recommends that state and local governments mandate safe storage of firearms;

**WHEREAS,** the American Academy of Pediatrics recommends that, if families must have firearms in their homes, the firearms should be stored locked, unloaded and separate from locked ammunition;

**WHEREAS,** both gun control and gun rights advocates endorse the use of locking devices when storing guns to ensure that unauthorized or untrained persons cannot use the gun to inflict injury or death. For example, the National Rifle Association's Home Firearm Safety Handbook, developed and used as part of the National Rifle Association (NRA) Basic Firearm Training Program, emphasizes that "there is one general rule that must be applied under all conditions: Store guns so they are not accessible to untrained or unauthorized persons." The NRA Guide To The Basics Of Personal Protection In The Home further explains that "all storage methods designed to prevent unauthorized access utilize some sort of locking method";

**WHEREAS,** requiring firearms to be stored with trigger locks or in a locked container does not substantially burden the right or ability to use firearms for self-defense in the home;

**WHEREAS,** the locking requirements apply only to handguns that are not being lawfully carried. Gun owners and adults over 18 years of age may carry loaded and unlocked handguns in the home at any time. The safe storage requirements also permit owners to store their handguns fully loaded;

**WHEREAS,** gun security does not preclude quick access. For example, affordable lockboxes using Simplex-type locks, which pop open immediately when several keys or pushbuttons are touched in a preset sequence, are widely available. Users report that they can retrieve a loaded weapon in just two to three seconds, and that the locks are also easy to open in the dark. The NRA describes this type lockbox as providing "a good combination of security and quick access." Some lockboxes also feature biometric locks, which provide immediate access when they scan the owner's fingerprint; and

**WHEREAS,** portable lockboxes can store loaded weapons such that they are always within easy reach on counters, tables or nightstands. Such safely stored weapons are more quickly and easily retrieved for use in self-defense than unlocked guns that have been hidden away in seldom-used locations.

**NOW, THEREFORE,**

### THE PEOPLE OF THE CITY OF LOS ANGELES DO ORDAIN AS FOLLOWS:

Section 1. A new Section 55.21 is added to Chapter V of the Los Angeles Municipal Code to read as follows:

### SEC. 55.21. SAFE STORAGE OF HANDGUNS.

(a) **Definitions.**

1. **"Residence"** shall mean any structure intended or used for

3

human habitation, including, but not limited to, houses, condominiums, rooms, in-law units, motels, hotels, single room occupancies, time-shares, recreational and other vehicles where human habitation occurs.

    2.    **"Locked Container"** shall mean a secure container which is fully enclosed and locked by a padlock, key lock, combination lock or similar locking device.

    3.    **"Handgun"** shall mean any pistol, revolver or other firearm that is capable of being concealed upon the person, designed to be used as a weapon, capable of expelling a projectile by the force of any explosion or other form of combustion and has a barrel less than 16 inches in length.

    4.    **"Trigger Lock"** shall mean a trigger lock that is listed in the California Department of Justice's list of approved firearm safety devices and that is identified as appropriate for that handgun by reference to either the manufacturer and model of the handgun or to the physical characteristics of the handgun that match those listed on the roster for use with the device under Penal Code Section 23655(d).

(b)    **Prohibition.** No person shall keep a handgun within a residence unless the handgun is:

    1.    Stored in a locked container or disabled with a trigger lock that has been approved by the California Department of Justice;

    2.    Carried on the person of the owner or other lawfully authorized user of the handgun who is over the age of 18; or

    3.    Within close enough proximity and control that the owner or other lawfully authorized user of the handgun who is over the age of 18 can readily retrieve and use the handgun as if carried on the person.

(c)    **Penalty.** Every violation of this section shall constitute a misdemeanor and upon conviction shall be punished by a fine not to exceed $1,000 or by imprisonment in the county jail not to exceed six months, or by both.

(d)    **Severability.** If any provision of this ordinance is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions of this ordinance which can be implemented without the invalid provisions, and to this end, the provisions of this ordinance are declared to be severable. The City Council hereby declares that it would have adopted this ordinance and each provision thereof irrespective of whether any one or more provisions are found invalid, unconstitutional or otherwise unenforceable.

Sec. 2. The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles: one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

I hereby certify that this ordinance was passed by the Council of the City of Los Angeles, at its meeting of _____ OCT 2 7 2015 _____.

HOLLY L. WOLCOTT, City Clerk

By _____

Deputy

Approved ____Nov 06 2015_____

_____

Mayor

Approved as to Form and Legality

MICHAEL N. FEUER, City Attorney

By _____

BRIAN SOTTILE
Deputy City Attorney

Date _____OCT 2 1 2015_____

File No. ____CF 14-1553_____

m:\pgen\pgen\brian sottile\storage of hanguns\storage of handguns - revised draft ordinance - 10.20.15 bls.docx

5

## DECLARATION OF POSTING ORDINANCE

I, VERONICA COLEMAN-WARNER, state as follows: I am, and was at all times hereinafter mentioned, a resident of the State of California, over the age of eighteen years, and a Deputy City Clerk of the City of Los Angeles, California.

**Ordinance No.183956 – Adding a new Section 55.21 to Chapter V of the Los Angeles Municipal Code to require handguns located in a residence to be kept in a locked container or disabled with a trigger lock** - a copy of which is hereto attached, was finally adopted by the Los Angeles City Council on **October 27, 2015**, and under the direction of said City Council and the City Clerk, pursuant to Section 251 of the Charter of the City of Los Angeles and Ordinance No. 172959, on **November 6, 2015** I posted a true copy of said ordinance at each of the three public places located in the City of Los Angeles, California, as follows: 1) one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; 2) one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; 3) one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

Copies of said ordinance were posted conspicuously beginning on **November 6, 2015** and will be continuously posted for ten or more days.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this **6th** day of **November, 2015** at Los Angeles, California.

*Veronica Coleman-Warner*
Veronica Coleman-Warner, Deputy City Clerk

**Ordinance Effective Date**: December 16, 2015           **Council File No.** 14-1553