MICHAEL N. FEUER, City Attorney (SBN 111529x)
JAMES P. CLARK, Chief Deputy City Attorney (SBN 64780)
james.p.clark@lacity.org
GABRIEL S. DERMER, Supervising City Attorney (SBN 229424)
gabriel.dermer@lacity.org
BENJAMIN CHAPMAN, Deputy City Attorney (SBN 234436)
benjamin.chapman@lacity.org
200 North Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Telephone Number:  213.978.7556
Facsimile Number: 213.978.8214

Attorneys for Defendants,
CITY OF LOS ANGELES, ERIC GARCETTI, and HOLLY WOLCOTT

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA; JOHN DOE,<br><br>                   Plaintiffs,<br>vs.<br><br>CITY OF LOS ANGELES; ERIC GARCETTI, in his official capacity as Mayor of the City of Los Angeles; HOLLY L. WOLCOTT, in her official capacity as City Clerk of the City of Los Angeles, and DOES 1-10,<br><br>                  Defendants. | Case No.: 19-cv-03212-SVW-GJS<br><br>**DEFENDANTS CITY OF LOS ANGELES, ERIC GARCETTI, AND HOLLY WOLCOTT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      July 22, 2019<br>Time:     1:30 p.m.<br>Ctrm:    10A-First Street Courthouse<br>Judge:   Hon. Stephen V. Wilson<br><br>Action Filed: 04/24/2019 |

# **Table of Contents**

I.    INTRODUCTION ................................................................................1

II.   FACTUAL BACKGROUND...................................................................3

III.  LEGAL STANDARD ...........................................................................5

IV.   PLAINTIFFS CANNOT ESTABLISH THEY ARE LIKELY TO SUCCEED ON THE
      MERITS BECAUSE PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW. ....................5

      A. Plaintiffs Assert Facial First Amendment Challenges to the Ordinance. ..........5

      B. Plaintiffs' Facial First Amendment Claims Fail as a Matter of Law Because
         the Ordinance Addresses Conduct—Entering into Contracts and Providing
         Business Discounts—that is not Commonly Associated with Expression. .......7

      C. Plaintiffs' First Amendment Claims also Fail as a Matter of Law
         Because the Ordinance does not Implicate Speech Protected by the First
         Amendment...........................................................................................8

         1. Plaintiffs' first cause of action for right to freedom of association. .............9

         2. Plaintiffs' second cause of action for right to free speech. .........................12

         3. Plaintiffs' third cause of action for government compelled speech fails as a
            matter of law because the Ordinance does not require the disclosure of
            activity protected by the First Amendment. ..................................................14

         4. Plaintiffs' fourth cause of action for First Amendment retaliation.............17

      D. Plaintiffs' Fifth Cause of Action for Violation of the Equal Protection
         Clause of the Fourteenth Amendment Fails as a Matter of Law Because
         it is  Entirely Duplicative of Plaintiffs' First Amendment Claims.................18

V.    PLAINTIFFS DO NOT ESTABLISH THEY WILL SUFFER "IRREPARABLE HARM"
      IN THE ABSENCE OF A PRELIMINARY INJUNCTION. ...................................21

VI.   THE REMAINING *WINTER* FACTORS WEIGH AGAINST AN INJUNCTION ..................24

VII.  CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abood v. Detroit Bd. of Educ.*,
  431 U.S. 209 (1977), *overruled on other grounds by Janus v. Am. Fed'n of State,
  County, and Mun. Employees*, *Council 31*, 138 S. Ct. 2448 (2018) ..........................16

*Advertise.com, Inc. v. AOL Advertising, Inc.*,
  616 F.3d 974 (9th Cir. 2010) .......................................................................21

*Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*,
  570 U.S. 205 (2013)..................................................................................13

*AIDS Healthcare Found. v. Los Angeles County*,
  CV 12-10400...........................................................................................20

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
  750 F.2d 1470 (9th Cir. 1985) ......................................................................22

*Animal Legal Def. Fund v. Wasden*,
  878 F.3d 1184 (9th Cir. 2018) .......................................................................8

*Baird v. State Bar of Ariz.*,
  401 U.S. 1 (1971).....................................................................................11

*Bingue v. Prunchak*,
  512 F.3d 1169 (9th Cir. 2008) ......................................................................7

*Boyd v. Illinois State Police*,
  384 F.3d 888 (7th Cir. 2004) .......................................................................20

*Branson v. Piper*,
  No. 16-1790, 2017 U.S. Dist. LEXIS 99592 (D. Minn. May 3, 2017) ......................13

*Buckley v. Valeo*,
  424 U.S. 1 (1976)................................................................................15, 16

*Cal. v. FCC*,
  75 F.3d 1350 (9th Cir. 1996) .......................................................................16

*Canatella v. Stovitz*,
  365 F. Supp. 2d 1064 (N.D. Cal. 2005) ........................................................ 8

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) ..................................................................... 22

*Chula Vista Citizens for Jobs & Fair Competition v. Norris*,
  782 F.3d 520 (9th Cir. 2015) (en banc) ...................................................... 14

*Clark v. Cmty. for Creative Non-Violence*,
  468 U.S. 288 (1984) ..................................................................................... 9

*Coalition for Econ. Equity v. Wilson*,
  122 F.3d 718 (9th Cir. 1997) ..................................................................... 24

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
  473 U.S. 788 (1985) ................................................................................ 8, 11

*County of Sacramento v. Lewis*,
  532 U.S. 833 (1998) ..................................................................................... 7

*Dish Network Corp. v. FCC*,
  653 F.3d 771 (9th Cir. 2011) ........................................................... 5, 21, 25

*Doe v. Reed*,
  561 U.S. 186 (2010) ................................................................. 6, 14, 15, 16

*Feldman v. Reagan*,
  843 F.3d 366 (9th Cir. 2016) ................................................................. 3, 25

*Flanagan v. Harris*,
  No. LA CV 16-06164 JAK, 2017 U.S. Dist. LEXIS 28503 (C.D. Cal. Feb. 23, 2017) ...................................................................................................... 19

*Foti v. City of Menlo Park*,
  146 F.3d 629 (9th Cir. 1998) ................................................................... 5, 6

*Friendly House v. Whiting*,
  846 F. Supp. 2d 1053 (D. Ariz. 2012) ....................................................... 23

*Ft. Wayne Patrolmen's Benevolent Ass'n v. Ft. Wayne*,
  625 F. Supp. 722 (N.D. Ind. 1986) ............................................................ 10

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) (en banc) ............................................................ 23, 24

*Garcia v. Nakoula*,
   No. CV 12-08315-MWF, 2012 U.S. Dist. LEXIS 192948 (C.D. Cal. Nov. 30,
   2012) ......................................................................................................................... 24

*Gibson v. Fla. Legislative Investigation Comm.*,
   372 U.S. 539 (1963)................................................................................................. 11

*Golden Gate Rest. Ass'n v. City of San Francisco*,
   512 F.3d 1112 (9th Cir. 2008) ............................................................................ 3, 25

*Gresham v. Picker*,
   705 Fed. Appx. 554 (9th Cir. 2017).......................................................................... 25

*Jantzen v. Hawkins*,
   188 F.3d 1247 (10th Cir. 1999) ................................................................................ 14

*Karmanos v. Baker*,
   617 F. Supp. 809 (E.D. Mich. 1985) ....................................................................... 10

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) .................................................................................. 24

*Las Vegas Nightlife v. Clark County*,
   38 F.3d 1100 (9th Cir. 1994) ...................................................................................... 9

*Marin Alliance for Med. Marijuana v. Holder*,
   866 F. Supp. 2d 1142 (N.D. Cal. 2011) ................................................................... 25

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997)..................................................................................................... 5

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995)............................................................................................. 16, 17

*NAACP v. Alabama*,
   357 U.S. 449 (1958)............................................................................................. 11, 12

*New York State Rifle and Pistol Ass'n v. City of New York*,
   883 F.3d 45 (2d Cir. 2018), *cert. granted*, 139 S. Ct. 939 (2019)......................... 2, 10

iv

*Nordyke v. King*,
   319 F.3d 1185 (9th Cir. 2003) ................................................................. 8

*O'Hare Truck Serv. v. City of Northlake*,
   518 U.S. 712 (1996)............................................................................... 14

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
   762 F.2d 1374 (9th Cir. 1985) ......................................................... 21, 25

*Orin v. Barclay*,
   272 F.3d 1207 (9th Cir. 2001) ............................................................... 18

*Preminger v. Principi*,
   422 F.3d 815 (9th Cir. 2005) ................................................................... 5

*Ratliff v. Dekalb County*,
   62 F.3d 338 (11th Cir. 1995) ..................................................................20

*Recording Indus. of Am. v Verizon Internet Servs.*,
   257 F. Supp. 2d 244 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C.
   Cir. 2003) ...............................................................................................16

*Rivers v. Campbell*,
   791 F.2d 837 (11th Cir. 1986) ................................................................10

*Roberts v. United States Jaycees*,
   468 U.S. 609 (1984)............................................................................9, 10

*Roulette v. City of Seattle*,
   97 F.3d 300 (9th Cir. 1996) ..........................................................2, 7, 8, 24

*Shelton v. Tucker*,
   364 U.S. 479 (1960). (Mot. .) ................................................................11

*Slane v. City of Sanibel*,
   No. 15-cv-181-FtM-38CM, 2015 U.S. Dist. LEXIS 93157 (M.D. Fla. July 17,
   2015) ......................................................................................................16

*Sorbello v. US Bank, NA*,
   CV 12-3327-JFW, 2012 U.S. Dist. LEXIS 192030 (C.D. Cal. Apr. 18, 2012) ..........23

*Sousa v. Roque*,
   578 F.3d 164 (2d Cir. 2009) .................................................................. 17

v

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) .................................................................... 25

*Teixeira v. County of Alameda*,
  822 F.3d 1047 (9th Cir. 2016), *vacated in part by*, 854 F.3d 1046
  (9th Cir. 2016) ................................................................................ 18, 19

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.*,
  585 Fed. Appx. 390 (9th Cir. 2014) ...................................................... 2, 22

*URI Student Senate v. Town of Narragansett*,
  631 F.3d 1 (1st Cir. 2011) ................................................................. 2, 13

*Video Gaming Techs., Inc. v. Bureau of Gambling Control*,
  356 Fed. Appx. 89 (9th Cir. 2009) ............................................................ 24

*Wasson v. Sonoma County Junior Coll.*,
  203 F.3d 659 (9th Cir. 2000) ................................................................ 17

*Wine & Spirits Retails, Inc. v. Rhode Island*,
  418 F.3d 36 (1st Cir. 2005) ...................................................................... 9

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................ *passim*

**Statutes**

City Ordinance No. 186000 ................................................................... 3

Washington Public Records Act ........................................................ 6, 15

**Other Authorities**

First Amendment.......................................................................... *passim*

Second Amendment ................................................................... 18, 19

Fourteenth Amendment ......................................................... 5, 18, 19

Defendants City of Los Angeles (the "City"), Los Angeles Mayor Eric Garcetti, and Los Angeles City Clerk Holly Wolcott file this opposition to Plaintiffs National Rifle Association (the "NRA") and John Doe's motion for preliminary injunction ("Motion").

## I.   INTRODUCTION

The Motion seeks to enjoin a City ordinance requiring a potential City contractor to disclose "all of its and its Subsidiaries' contracts with or Sponsorships of the NRA" (the "Ordinance").[1]  There are four factors a plaintiff "must show" to obtain a preliminary injunction:  "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (the "*Winter* factors").  As set forth herein, Plaintiffs cannot, and do not, show that they meet any of the *Winter* factors.

***Likelihood of success on the merits:***  Although the Complaint contains five causes of action, this lawsuit boils down to a single legal question:  Does the Ordinance violate the First Amendment to the United States Constitution?  The answer is no.[2]

The Ordinance does not criminalize speech, prevent anyone from engaging in free speech, or condition the right to obtain a City contract on a potential contractor's refusal to support the NRA or to engage in pro-gun speech.  The Ordinance also does not require a potential contractor to disclose whether they are a member of the NRA, or to renounce their NRA membership.  Rather, the Ordinance merely requires the disclosure of certain conduct:  whether a potential City contractor has entered into a contract with the NRA and whether it provides business discounts to the NRA or its members.  Thus, the alleged First

---

[1] The Ordinance is attached to Plaintiffs' RJN as Exhibit 3.  (Dkt No. 20-2).  The term "Sponsorships" is defined as "an agreement [with] the NRA to provide a discount to the NRA or an NRA member of the customary costs, fees or service charges for goods of services provided by the Person to the NRA or an NRA member."  (*Id.* p.3.)

[2] On May 24, 2019, Defendants filed a motion to dismiss the Complaint.  (Dkt. No. 15.)  The motion to dismiss sets forth the same arguments made herein, but with additional legal authority (given the space constraints of this opposition).

Amendment right underlying this lawsuit is the alleged right to ***enter into a contract with the NRA or to provide business discounts to the NRA or its members***.  This is fatal to Plaintiffs' Complaint for two reasons.

***First***, this is conduct, not speech.  It is well established that where an ordinance merely addresses conduct, "a facial freedom of speech attack must fail unless, at a minimum, the challenged statute is directed narrowly and specifically at expression or conduct commonly associated with expression." *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996) (quotation marks omitted).  Here, the Ordinance requires only the disclosure of contracts and business discounts—conduct that is simply not "integral to, or commonly associated with expression." *Id*. at 304-05 (affirming dismissal of facial First Amendment challenge to ordinance barring sitting or lying down on a public sidewalk).

***Second***, Plaintiffs' claims all require the court to find that the Ordinance burdens activity protected by the First Amendment.  However, the right to contract and to provide business discounts is not "expressive activity" or speech protected by the First Amendment.  *See*, *e.g*., *New York State Rifle and Pistol Ass'n v. City of New York*, 883 F.3d 45, 67 (2d Cir. 2018) (holding First Amendment right of association "generally will not apply … to business relationships"), *cert. granted*, 139 S. Ct. 939 (2019); *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 12 n.9 (1st Cir. 2011) ("The appellants … have authored no authority to suggest that the right to contract is a recognized First Amendment interest.  Manifestly, it is not.").

Plaintiffs' facial First Amendment claims fail for both of these reasons.  Accordingly, the Motion should be denied on this ground alone.

***Irreparable harm:***  "To establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough." *Titaness Light Shop, LLC v. Sunlight Supply, Inc*., 585 Fed. Appx. 390, 391 (9th Cir. 2014)   Yet, the Motion is chock-full of speculative allegations of injury that are not supported by ***any*** evidence or facts.  (*See*, *e.g*., Mot. at 1:20-22 ("Without preliminary relief, the speech of Plaintiff NRA and its members, including John Doe, be [sic] chilled and if not entirely stopped.").)  Notably, the Motion

is unsupported by a single declaration from either plaintiff!  In other words, there is no declaration from the NRA stating they have lost a contract, sponsor, or member because of the Ordinance.  And similarly, there is no declaration from Doe, or any other potential City contractor detailing how the Ordinance has chilled, or will chill, their speech or their willingness to contract with the NRA or to provide the NRA business discounts.

***Balance of equities and public interest:***  Finally, Plaintiffs do not establish either of the two remaining *Winter* factors because they seek to enjoin a duly enacted law passed by the City Council and signed by the Mayor.  *See*, *e.g.*, *Feldman v. Reagan*, 843 F.3d 366, 394 (9th Cir. 2016) ("The impact of [the challenged law], which the district court found largely to be inconvenience, does not outweigh the hardship on Arizona, which has a compelling interest in the enforcement of its duly enacted laws."); *Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112, 1126-27 (9th Cir. 2008) ("[O]ur consideration of the public interest is constrained …, for the responsible public officials in San Francisco have already considered that interest.  Their conclusion is manifested in the Ordinance that is the subject of this appeal.").

In sum, Plaintiffs cannot establish any of the *Winter* factors.  Thus, the Motion should be denied.

## II.   FACTUAL BACKGROUND

Plaintiff NRA is "a national membership organization" that "provid[es] instruction on firearm safety," and "engag[es] in civil rights advocacy."  (Compl. ¶ 3.)  The NRA purports to have associational standing, as well as standing in its own right.  (*Id*. ¶¶ 4-5.)  Plaintiff John Doe allegedly "operates a business with multiple contracts with the City of Los Angeles," and is a "member and supporter of the NRA."  (*Id*. ¶ 6.)

This lawsuit concerns the constitutionality of City Ordinance No. 186000, which the City Council passed on February 12, 2019, and which took effect on April 1, 2019.  (*Id*. ¶¶ 46, 49.)  The Ordinance requires a potential City contractor to disclose "all of its and its Subsidiaries' contracts with or Sponsorships of the NRA."  (Dkt. No. 20-2.)  The term "Sponsorships" is defined as "an agreement [with] the NRA to provide a discount to

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

the NRA or an NRA member of the customary costs, fees or service charges for goods of services provided by the Person to the NRA or an NRA member." (*Id.*)[3]

Plaintiffs argue the Ordinance covers a wide-swath of relationships. (Mot. at 16:8-21.) Plaintiffs list five examples; only one bears explanation. Plaintiffs contend that under the Ordinance, a potential City contractor must disclose whether it has "[i]ndividual paid memberships with the [NRA]." (*Id.* at 16:21.) Not so. The City specifically disclaims any contention that the Ordinance requires the disclosure of an NRA membership.[4]

Additionally, the Ordinance has no effect on whether a potential contractor obtains a contract. Under the City Charter, which the City and its Council are bound to follow, the City must accept the lowest bid for a contract, subject to a few exceptions that are not relevant here. (City Charter § 371(a) (filed as Dkt. No. 17-1).)

There have been four disclosures to date: (1) a large telecommunications company disclosed they have contracts with the NRA to provide basic services; (2) a law firm disclosed the NRA was a former client; (3) an international air gun manufacturer disclosed that it sponsors youth air gun events with the NRA pursuant to a license agreement; and (4) a large commercial real estate firm disclosed that it has been involved in six lease transactions for office space with the NRA.[5] None of these companies have sued the City over the Ordinance, or otherwise claimed they have been adversely affected by the Ordinance. And Plaintiffs do not contend that these companies are members of the NRA.

The gravamen of the Complaint is that the City's enactment of the Ordinance violates the First Amendment to the United States Constitution. (Compl. ¶¶ 59-101.)

---

[3] The Complaint alleges that a "diverse pool" of companies provide "incentives to [the NRA]'s members," including "large, national corporations that offer affinity discount programs to smaller, local retailers and firearm trainers." (Compl. ¶ 27.)

[4] Plaintiffs also claim the Ordinance applies to "financial donations" to the NRA's "lobbying arm" because such donations constitute contracts. (Mot. at 16:17-18.) This argument is dubious; regardless, the City specifically disclaims any contention that the Ordinance requires the disclosure of donations to the NRA's lobbying arm.

[5] The first three disclosures are reflected in Exh. 31 to the Motion (Dkt. No. 19-5 at p.36).) The fourth was recently filed.

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs allege four different First Amendment claims:  (1) violation of the right to freedom of association; (2) violation of the right to free speech; (3) compelled speech; and (4) retaliation.  Plaintiffs also allege a duplicative fifth cause of action for violation of the Equal Protection Clause of the Fourteenth Amendment, claiming that the City has "singled out [Plaintiffs] for their political beliefs and speech" by enacting the Ordinance.  (*Id.* ¶ 106.)  On all causes of action, Plaintiffs seek a declaration that the Ordinance violates the Constitution, and "injunctive relief prohibiting Defendants … from enforcing or publishing [the] Ordinance."  (Prayer for Relief ¶¶ 1-6.)

## III.  LEGAL STANDARD

"It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation marks omitted).  This applies to First Amendment claims. *See*, *e.g.*, *Preminger v. Principi*, 422 F.3d 815, 823 n.5 (9th Cir. 2005) (denying preliminary injunction motion challenging regulation on First Amendment grounds, holding "[a]t the preliminary injunction stage, Plaintiffs have the burden of proof").

To obtain a preliminary injunction, the plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  "[I]n the case of a First Amendment claim," the moving party must establish ***all*** four *Winter* factors.  *Dish Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011) ("[E]ven if [the court] were to determine that [plaintiffs] [are] likely to succeed on the merits, [the court] would still need to consider whether [plaintiffs] satisfied the remaining elements of the preliminary injunction test").

## IV.  PLAINTIFFS CANNOT ESTABLISH THEY ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW.

### A.   Plaintiffs Assert Facial First Amendment Challenges to the Ordinance.

There are two types of constitutional challenges—facial and as-applied. *Foti v. City*

*of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).   "An ordinance may be facially unconstitutional in one of two ways:  either it is unconstitutional in every conceivable application, or it seeks to prohibit such a broad range of protected conduct that is unconstitutionally overbroad."   *Id*. (quotation marks omitted).   The Complaint only implicates the first type of facial challenge.[6]   "In the first type of facial challenge, the plaintiff argues that the ordinance could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity."   *Id*.   "A successful challenge to the facial constitutionality of a law invalidates the law itself."   *Id*. On the other hand, "[a]n as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others."   *Id*.   "A successful as-applied challenge does not render the law itself invalid but only the particular application of the law."   *Id*.

Despite occasional references to the Ordinance being invalid "as applied,"[7] Plaintiffs assert a facial challenge to the Ordinance.   *Doe v. Reed*, 561 U.S. 186 (2010) is instructive.   There, the Supreme Court determined that a complaint asserting that the Washington Public Records Act was unconstitutional as to referendum petitions was a facial challenge, not an as-applied challenge, because "plaintiffs' claim and the relief that would follow—an injunction barring the secretary of state from making referendum petitions available to the public … reach beyond the particular circumstances of these plaintiffs.  They must therefore satisfy our standards for a facial challenge to the extent of that reach."   *Id*. at 194 (quotation marks omitted).   Similarly, here, the relief Plaintiffs seek—"injunctive relief prohibiting Defendants … from enforcing or publishing [the]

---

[6] Under the second type of facial challenge—overbreadth—"the plaintiff argues that the statute is written so broadly that it may inhibit the constitutionally protected speech of third parties, even if his own speech may be prohibited."   *Foti*, 146 F.3d at 635.  Plaintiffs do not argue that their own speech may be prohibited.

[7] *See*, *e.g*., Compl. ¶ 62 ("The Ordinance, on its face and as applied or threatened to be applied does not serve a compelling, significant, or legitimate government interest.").

Ordinance" (<u>Prayer for Relief</u> ¶ 6)—reaches beyond Plaintiffs.  Thus, Plaintiffs'

Complaint is a facial First Amendment challenge to the Ordinance.

    **B.**    **Plaintiffs' Facial First Amendment Claims Fail as a Matter of Law Because the Ordinance Addresses Conduct—Entering into Contracts and Providing Business Discounts—that is not Commonly Associated with Expression.**

"As in any action under [42 U.S.C. §] 1983, the first step is to identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 532 U.S. 833, 841 n.5 (1998); *see also Bingue v. Prunchak*, 512 F.3d 1169, 1173 (9th Cir. 2008) (same).  The Ordinance requires a potential City contractor to disclose "all of its and its Subsidiaries' contracts with or Sponsorships of the NRA."  (Dkt. No. 20-2 (defining "Sponsorships" as "an agreement [with] the NRA to provide a discount to the NRA or an NRA member").)  The Ordinance does not require a potential City contractor to disclose whether it is a member or supporter of the NRA.  Thus, the alleged First Amendment right underlying this lawsuit is not the right to associate with the NRA or to speak out in favor of guns.  Rather, the alleged First Amendment right underlying this lawsuit is the alleged right to ***enter into a contract with the NRA or to provide business discounts to the NRA or its members***.  This is conduct, not speech.

However, it is well established that where an ordinance merely addresses conduct, "a facial freedom of speech attack must fail unless, at a minimum, the challenged statute is directed narrowly and specifically at expression or conduct commonly associated with expression." *Roulette*, 97 F.3d at 305 (quotation marks omitted).  *Roulette* is fatal to Plaintiffs' facial First Amendment claims.  There, the Ninth Circuit Court of Appeals considered a facial First Amendment challenge to a Seattle ordinance prohibiting sitting or lying on the public sidewalk.  *Id*. at 302.  The plaintiffs argued that the ordinance infringed their free speech rights because sitting and lying down can sometimes communicate a message.  *Id*. at 303.  The Ninth Circuit rejected this argument and affirmed the dismissal of Plaintiffs' facial First Amendment challenge to the ordinance, holding "[t]he fact that sitting can possibly be expressive, however, isn't enough to sustain

plaintiffs' facial challenge to the Seattle ordinance…. By its terms, [the ordinance] prohibits only sitting or lying on the sidewalk, neither of which is integral to, or commonly associated with, expression." *Id*. at 303-04 (citations omitted) (quotation marks omitted).

Similarly, in *Nordyke v. King*, 319 F.3d 1185 (9th Cir. 2003), the Ninth Circuit Court of Appeals rejected a facial First Amendment challenge to an ordinance prohibiting the possession of firearms on county property, holding that since "possession of a gun is not 'commonly associated with expression,'" the plaintiff's "'facial freedom of speech attack'" failed as a matter of law. *Id*. at 1190 (quoting *Roulette*, 97 F.3d at 305).

Here, Plaintiffs' facial challenge to the Ordinance necessarily fails as a matter of law because the Ordinance requires only the disclosure of contracts and business discounts—conduct that is simply not "integral to, or commonly associated with expression." *Roulette*, 97 F.3d at 304-05; *see also Canatella v. Stovitz*, 365 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005) (dismissing facial First Amendment challenge to statutes disciplining attorneys for violating court orders and committing acts of dishonesty because the statutes "simply do not directly regulate speech or expressive conduct…. While acts that would fall within the reach of these statutes might come in the form of speech or other expressive conduct, that is not enough to support a facial challenge." (citing *Roulette*, 97 F.3d at 303, 305)).

In sum, Plaintiffs' facial First Amendment challenge to the Ordinance must be rejected because contracting and providing business discounts are not integral to or commonly associated with expression. Accordingly, Plaintiffs are not likely to succeed on their First Amendment claims, and the Motion should be denied for this reason alone.

## C. Plaintiffs' First Amendment Claims Also Fail Because the Ordinance does not Implicate Speech Protected by the First Amendment.

Where a plaintiff challenges the constitutionality of a law under the First Amendment, the court must first determine whether a First Amendment right exists, "for, if it [does] not, [it] need go no further." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985); *see also Animal Legal Def. Fund v. Wasden*, 878 F.3d

1184, 1193-94 (9th Cir. 2018) ("Our first task is to determine whether the misrepresentations prohibited in the … statute constitute speech protected by the First Amendment…. If the government's actions do not implicate speech protected by the First Amendment, we 'need go no further.'" (quoting *Cornelius*, 473 U.S. at 797)). Plaintiffs bear the burden of establishing that they are engaged in conduct protected by the First Amendment. *See*, *e.g.*, *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984) ("[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate the First Amendment even applies. To hold otherwise would be to create a rule that all conduct is presumptively expressive."); *Las Vegas Nightlife v. Clark County*, 38 F.3d 1100, 1102 (9th Cir. 1994) (same).

Even assuming arguendo that Plaintiffs may pursue a facial First Amendment challenge to the Ordinance, their First Amendment claims all fail as a matter of law for the same reason: the right to contract and to provide business discounts is not "expressive activity" or speech protected by the First Amendment.

### 1.     Plaintiffs' first cause of action for right to freedom of association.

The First Amendment right to freedom of association encompasses two categories: (1) the freedom of intimate association; and (2) the freedom of expressive association. *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). Plaintiffs only invoke the latter. (*See*, *e.g.*, Mot. 7:18-19 ("The First Amendment protects the right to freely associate with others to advance one's beliefs.").) The right to expressive association is the "right to associate *for the purpose of* engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts*, 468 U.S. at 618 (emphasis added). Stated differently, "the [Supreme] Court has tended to view the right of association as dependent on underlying individual rights of expression; there is no right of association in the abstract." *Wine & Spirits Retails, Inc. v. Rhode Island*, 418 F.3d 36, 50 (1st Cir. 2005) (quotation marks omitted).

Plaintiffs disingenuously claim "[t]he Ordinance violates Plaintiffs' freedom of association by forcing them to publicly disclose affiliations that are disfavored by some."

(Compl. ¶ 61; *see also* Mot. at 9:12-13 (arguing the Ordinance "compel[s] NRA members and sponsors to disclose their relationship with NRA").)  This is intentionally misleading and glosses over what the Ordinance actually requires—the disclosure of whether a potential contractor has a contract with the NRA or provides discounts to the NRA or its members.  (Dkt. No. 20-2.)  Thus, to succeed on their freedom of association claim, Plaintiffs first must establish that they have a First Amendment right to contract or to provide business discounts, because the right to expressive association only protects the "right to associate ***for the purpose of engaging in those activities protected by the First Amendment***."  *Roberts*, 468 U.S. at 618 (emphasis added).

However, it is well-established that the right to contract and the right to provide discounts are simply not expressive activity protected by the First Amendment.  *See, e.g.*, *New York State Rifle and Pistol Ass'n*, 883 F.3d at 67 (First Amendment right of association "generally will not apply, for example, to business relationships"); *URI Student Senate*, 631 F.3d at 12 n.9 ("The appellants … have authored no authority to suggest that the right to contract is a recognized First Amendment interest.  Manifestly, it is not."); *Rivers v. Campbell*, 791 F.2d 837, 840 (11th Cir. 1986) (no First Amendment right to association where a person desires to associate with a group for "commercial gain"); *Ft. Wayne Patrolmen's Benevolent Ass'n v. Ft. Wayne*, 625 F. Supp. 722, 728 (N.D. Ind. 1986) ("The court seriously doubts that the first amendment right to freedom of association is designed to protect employer-employee relationships….  The employer-employee relationship in this context is simply a contractual arrangement whereby employer and employee exchange mutually beneficial resources.  To imbue that relationship with constitutional dimensions is to go far beyond the limits of constitutional construction."); *Karmanos v. Baker*, 617 F. Supp. 809, 816 (E.D. Mich. 1985) ("It is clear that plaintiff has a liberty interest in his right to associate guaranteed by the first amendment of the Constitution, but I hold that defendants have not deprived plaintiff of this right….  The only deprivation that plaintiff faces is of his claimed 'right' to contract and play hockey with a professional hockey team….  I hold that plaintiff has

no such constitutional right."); *Branson v. Piper*, No. 16-1790 (WMW/FLN), 2017 U.S. Dist. LEXIS 99592, at *5 (D. Minn. May 3, 2017) ("Plaintiff offers no support that … the right to contract … [is] secured by the First Amendment.").

Plaintiffs rely on three cases to support their association claims: *NAACP v. Alabama*, 357 U.S. 449 (1958), *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963), and *Shelton v. Tucker*, 364 U.S. 479 (1960).  (Mot. at 7-9.)  A fourth case, *Baird v. State Bar of Ariz.*, 401 U.S. 1 (1971), is cited later.  (Mot. at 12.)  In *NAACP*, the Supreme Court refused to enforce a discovery order compelling the NAACP to disclose its membership list (357 U.S. at 451), and in *Gibson*, the Supreme Court refused to enforce a subpoena requiring the NAACP to disclose its membership list to a Florida state legislative committee.  372 U.S. at 540.  In *Shelton*, the Supreme Court invalidated a state law requiring public school teachers to disclose every organization they belonged to within the preceding five years (364 U.S. at 480), and in *Baird*, the Supreme Court struck a requirement that a bar applicant to disclose whether she was a member of the Communist Party or any subversive association.  401 U.S. at 4-5.

These cases, however, are clearly distinguishable because they involved as-applied challenges to the compelled disclosure of ***membership lists*** (of either an organization or an individual).   But the Ordinance does not require the disclosure of the NRA's membership list, nor does it require a potential City contractor to disclose a list of the organizations it belongs to.[8]   This distinction is dispositive.  For example, in *NAACP*, the

---

[8] Plaintiffs have not submitted any evidence that a business that has a contract with the NRA or that provides the NRA or its members business discounts is likely to be an NRA member.  Indeed, there have been four disclosures to date (Mot. Exh. 31); Plaintiffs do not contend that any of these businesses are NRA members.  The difference between an NRA contractor/sponsor and a member is highlighted by Plaintiff Doe, who alleges that he "operates ***a business*** with multiple contracts with the City," and that ***he*** is a member of the NRA.  (Compl. ¶ 6 (emphasis added).)  Under the plain language of the Ordinance, Doe's business, the entity that is required to file a disclosure statement, is not required to disclose its ***owner's*** membership in the NRA.  So Doe's membership in the NRA remains "anonymous" under the Ordinance.

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Supreme Court held that "compelled disclosure of [the NAACP]'s Alabama membership is likely to affect adversely the ability of [NAACP] and its members to pursue *their collected effort* to foster beliefs." 357 U.S. at 462-63 (emphasis added). While an organization and its members are presumably engaged in a "collected effort to foster beliefs," it is unlikely—and Plaintiffs submit no evidence to support such an inference—that the NRA and the businesses that contract with it or provide business discounts to its members are in pursuit of a "collective effort." This is confirmed by the disclosures that have been made pursuant to the Ordinance (Mot. Exh. 31 (Dkt. No. 19-5 at p.36)): when a large telecommunications company or a law firm enters into a contract with the NRA to provide it basic services, are they doing so to pursue a collective effort to foster support for guns? Doubtful.

Indeed, the NRA itself has admitted that the loss of a business providing discounts to the NRA and its members (resulting from the disclosure of the business's identity) is not "likely to affect adversely the ability of [the organization] and its members to pursue their collected effort to foster beliefs." *NAACP*, 357 U.S. at 462-63. In response to certain businesses terminating their discount programs with the NRA following the tragic mass shooting at Marjory Stoneman Douglas High School last year, the NRA stated: "Let it be absolutely clear. The loss of a discount will neither scare nor distract one single NRA member from our mission to stand and defend the individual freedoms that have always made America the greatest nation in the world." (Mot. Exh. 19 (Dkt. No. 19-3 at p.56).)

In sum, the activity described in the Ordinance—entering into contracts and providing business discounts—is not expressive activity protected by the First Amendment. Accordingly, Plaintiffs are not likely to succeed on their first cause of action.

### 2. Plaintiffs' second cause of action for right to free speech.

Plaintiffs allege "[t]he Ordinance is an unconstitutional abridgment on its face … of Plaintiffs' affirmative rights to freedom of speech under the First Amendment." (Compl. ¶ 73.) Similarly, Plaintiffs argue that "[t]he Supreme Court has recognized that speaking out about public issues, like NRA and its members often do, has always rested

on the highest rung of the hierarchy of First Amendment values" (Mot. at 11:16-18 (quotation marks omitted)), and that it "is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." (*Id*. at 11:19-21 (quotation marks omitted).)

However, the Ordinance does not prevent a potential City contractor from speaking out in favor of the NRA or guns. Nor does it regulate speech. Rather, the Ordinance merely requires a potential contractor to disclose whether it has a contract with the NRA or provides business discounts to the NRA or its members. (Dkt. No. 20-2.) Thus, the question is whether a potential contractor is engaged in First Amendment-protected speech when it enters into a contract with the NRA or provides business discounts. The answer is no. *E.g.*, *URI Student Senate*, 631 F.3d at 12 n.9; *Branson*, 2017 U.S. Dist. LEXIS 99592, at *5.

Indeed, Plaintiffs do not cite a single case to the contrary. Instead, Plaintiffs cite opinions that have no application here. (Mot. at 12-13.) For example, in *Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*, 570 U.S. 205 (2013), the Supreme Court held that a federal law requiring nongovernmental organizations to adopt a policy explicitly opposing prostitution as a condition of receiving federal funds to fight HIV/AIDS violated the First Amendment because it "requires [organizations] to pledge allegiance to the Government's policy of eradicating prostitution." *Id*. at 220. But the Ordinance does not require a potential City contractor to adopt a policy of opposition to the NRA (or to guns). Nor does it prohibit a potential City contractor from being an NRA member or speaking out in favor of the NRA (and guns). *Cf. id*. at 217 ("Because the regulations did not prohibit the recipient [of government funds] from engaging in the protected conduct outside the scope of the federal funded program, they did not run afoul of the First Amendment." (quotation marks omitted)).

Plaintiffs also rely on two political patronage opinions prohibiting the firing of contractors and employees for failing to support an incumbent political candidate. *O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712, 714 (1996); *Jantzen v. Hawkins*, 188 F.3d

1247, 1251-52 (10th Cir. 1999).  But the Ordinance does not bar a potential City contractor from obtaining a City contract if it discloses it has a contract with the NRA or provides the NRA and its members discounts.  So these cases are inapposite.

In sum, the activity described in the Ordinance—entering into contracts and providing discounts—is not speech protected by the First Amendment.  Accordingly, Plaintiffs are not likely to prevail on their second cause of action.

### 3. Plaintiffs' third cause of action for government compelled speech fails as a matter of law because the Ordinance does not require the disclosure of activity protected by the First Amendment.

Plaintiffs argue that "[b]y requiring [them] to disclose any sponsorship of or contract with Plaintiff NRA as a precondition for being awarded a City contract …, the Ordinance violates Plaintiffs' right to free speech under the First Amendment."  (Compl. ¶ 85.)

"Disclosure requirements may burden the ability to speak, but they do not prevent anyone from speaking."  *Reed*, 561 U.S. at 196 (quotation marks omitted).  Accordingly, courts review First Amendment challenges to disclosure requirements under a lesser "exacting scrutiny" standard.  *Id*.  This standard "requires a substantial relation between the disclosure requirement and a sufficiently important governmental interest.  To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness *of the actual burden on First Amendment rights*."  *Id*. (emphasis added) (quotation marks omitted); *see also Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 535-38 (9th Cir. 2015) (en banc) (same).

Because a disclosure requirement, by itself, does not violate the First Amendment, the court must first determine whether the challenged disclosure requirement actually compels the disclosure of *information protected by the First Amendment*.  *Reed* is once again instructive.  There, signatories of a referendum petition containing their names and addresses challenged the Washington Public Records Act, which permitted public inspection of government documents, such as referendum petitions.  561 U.S. at 190-91.

Before applying the exacting scrutiny test, the Supreme Court *first* addressed whether the information to be disclosed—the names of the petition signers—was actually protected by the First Amendment. *See id*. at 194-95.[9]  Only *after* finding that it was, did the Supreme Court *then* address whether the compelled disclosure of the First Amendment protected activity was justified under the exacting scrutiny test. *Id*. at 196-202.  But if the underlying information to be disclosed had not been protected by the First Amendment, then the Supreme Court would not have determined whether the exacting scrutiny factors were satisfied, and the law would have been upheld. *See*, *e.g*., *id*. at 219-28 (J. Scalia, concurring) (expressing view that disclosure law should be upheld because there is no First Amendment right to confidentiality for petition signing; no discussion of exacting scrutiny factors).  Thus, *Reed* requires that the court *first* determine that the Ordinance compels the disclosure of information protected by the First Amendment.

The cases cited by Plaintiffs (Mot. at 14-15) confirm this.  For example, in *Buckley v. Valeo*, 424 U.S. 1 (1976), which Plaintiffs cite for the proposition that compelled disclosure laws are subject to exacting scrutiny (Mot. at 14:14-17), the Supreme Court analyzed a campaign disclosure law under the exacting scrutiny standard (*Buckley*, 424 U.S. at 60-72), but only *after* finding that the law compelled the disclosure of an act— contributing to a political organization—that was protected by the First Amendment. *Id*. at 22-23 (holding political contributions are protected by the First Amendment because "[m]aking a contribution … serves to affiliate a person with a candidate.  In addition it enables like-minded persons to pool their resources in furtherance of political goals.").[10]

_____

[9] *See Reed*, 561 U.S. at 194-95 ("An individual expresses a view on a political matter when he signs a petition under Washington's referendum procedure….  [T]he expression of a political view implicates a First Amendment right.").

[10] *See*, *e.g*., *Abood v. Detroit Bd. of Educ*., 431 U.S. 209, 234 (1977) ("One of the principles underlying the Court's decision in *Buckley v. Valeo* … was that contributing to an organization for the purpose of spreading a political message is protected by the First Amendment."), *overruled on other grounds by Janus v. Am. Fed'n of State, County, and Mun. Employees*, *Council 31*, 138 S. Ct. 2448 (2018).

Thus, as in *Reed*, the exacting scrutiny standard was only triggered in *Buckley* because the law mandated the disclosure of activity protected by the First Amendment.

Similarly, in *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995), the Supreme Court struck down an Ohio statute banning the distribution of anonymous campaign literature because it addressed "core political speech":  "The speech in which [the plaintiff] engaged – handing out leaflets in the advocacy of a politically controversial viewpoint – is the essence of First Amendment expression….  No form of speech is entitled to greater constitutional protection."  *Id.* at 347.  Contrary to Plaintiffs' claim that *McIntyre* stands for the proposition that there is a general First Amendment right to anonymity (Mot. at 14:27-15:6), the Supreme Court held in *McIntyre* that there is a right to anonymity ***when you are engaged in political speech***.  *Id.* at 357.

Indeed, the plaintiff must be engaged in speech protected by the First Amendment to invoke *McIntyre*.  *See*, *e.g.*, *Cal. v. FCC*, 75 F.3d 1350, 1362-63 (9th Cir. 1996) (rejecting argument that an FCC order making it harder to make anonymous phone calls violated the First Amendment right to speak anonymously because "[u]nlike the circumstances in [*McIntyre*], the FCC's regulation does not compel disclosure of the identity of a person who exercises ***his or her freedom of expression***" (emphasis added)); *Recording Indus. of Am. v Verizon Internet Servs.*, 257 F. Supp. 2d 244, 259-260 (D.D.C. 2003) ("An individual's anonymity may be important for encouraging ***the type of expression protected by the First Amendment***….  But when the Supreme Court has held that the First Amendment protects anonymity, it has typically done so in cases involving ***core First Amendment expression***." (citing *McIntyre*, 514 U.S. at 346) (emphasis added)), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003); *Slane v. City of Sanibel*, No. 15-cv-181-FtM-38CM, 2015 U.S. Dist. LEXIS 93157, at *26 n.7 (M.D. Fla. July 17, 2015) (holding *McIntyre* did not apply where the plaintiff's conduct—anonymously providing stolen documents to a newspaper—"[wa]s not entitled to First Amendment protection").

Here, however, the Ordinance does not address "core political speech," let alone speech or activity that is protected by the First Amendment.  And Plaintiffs simply do not

provide any support for their claim that there is a First Amendment right to anonymity in contracting or providing business discounts.  Because the Ordinance does ***not*** burden First Amendment rights, Plaintiffs are not likely to succeed on their third cause of action.

**4.      Plaintiffs' fourth cause of action for First Amendment retaliation.**

Plaintiffs claim the City enacted the Ordinance to retaliate for "Plaintiffs' speech" (Compl. ¶¶ 93-101), and that "[t]he First Amendment prohibits government retaliation for exercising one's right to engage in protected speech or association." (*Id.* ¶ 21.)  But the Ordinance does not "retaliate" against a potential contractor because of its pro-gun speech (or any speech) or its membership in the NRA.   Rather, the Ordinance merely requires the disclosure of whether a potential contractor has a contract with the NRA or provides discounts to the NRA or its members.  (Dkt. No. 20-2.)

"This circuit … has recognized that a plaintiff must demonstrate that she has engaged in constitutionally protected expression to establish a First Amendment retaliation claim." *Wasson v. Sonoma County Junior Coll.*, 203 F.3d 659, 662 (9th Cir. 2000); *see also* Mot. at 17:11-13 (acknowledging that to bring a First Amendment retaliation claim, "'the plaintiff must allege that … it engaged in constitutionally protected activity'" (quoting *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016))).  Here, the basis for the purported "retaliation" is the potential contractor's contract with the NRA or its provision of business discounts to the NRA or its members. Yet, as previously discussed, there is simply no First Amendment associational right attached to contracting or providing discounts, nor is either activity protected speech.[11] Accordingly, because a potential City contractor is not engaged in constitutionally

---

[11] Plaintiffs hysterically argue that "[t]hreatening the livelihood of NRA's supporters by denying them government contracts as retribution for their associational ties to NRA is to threaten the livelihood of NRA as retaliation for engaging in political speech and expression with which the City disagrees." (Mot. at 17:24-27; *see also id*. at 18:7-8 ("[T]he City intends to boycott NRA-affiliated businesses.").)  But the Ordinance does not deny anyone a government contract, nor does it cause a boycott of the NRA.

protected speech when it contracts with the NRA or provides its members discounts, Plaintiffs cannot succeed on their fourth cause of action for First Amendment retaliation.

**D.   Plaintiffs' Fifth Cause of Action for Violation of the Equal Protection Clause of the Fourteenth Amendment Fails as a Matter of Law Because it is Entirely Duplicative of Plaintiffs' First Amendment Claims.**

Plaintiffs' fifth cause of action claims the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment because under the Ordinance, "Plaintiffs are being singled out for their political beliefs and speech."  (Compl. ¶ 106.)

However, the Ninth Circuit Court of Appeals has held that an equal protection claim is not viable where it seeks to vindicate enumerated rights protected by a separate constitutional amendment, such as the First or Second Amendment.  For example, in *Orin v. Barclay*, 272 F.3d 1207 (9th Cir. 2001), the Ninth Circuit rejected an "Equal Protection claim [that] appears to be no more than a First Amendment claim dressed in equal protection clothing," holding that "[i]t is generally unnecessary to analyze laws which burden the exercise of First Amendment rights by a class of persons under the equal protection guarantee, because the substantive guarantees of the Amendment serve as the strongest protection against the limitation of these rights.  Accordingly, we treat [the plaintiff]'s equal protection claim as subsumed by, and co-extensive with, his First Amendment claim."  *Id*. at 1213 n.3 (citation omitted).

Similarly, in *Teixeira v. County of Alameda*, 822 F.3d 1047 (9th Cir. 2016), *vacated in part by*, 854 F.3d 1046 (9th Cir. 2016), and *reh'g en banc*, 873 F.3d 670 (9th Cir. 2017), the Ninth Circuit Court of Appeals held that an equal protection claim was "not cognizable" where it sought to vindicate the plaintiff's Second Amendment rights:

> [B]ecause the right to keep and to bear arms for self-defense is not only a fundamental right, [citation], but an enumerated one, it is more appropriately analyzed under the Second Amendment than the Equal Protection Clause.  *Cf. Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion

of 'substantive due process,' must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989))).  Because [the plaintiff]'s equal protection challenge is "no more than a [Second] Amendment claim dressed in equal protection clothing," it is "subsumed by, and coextensive with" the former, *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001), and therefore is not cognizable under the Equal Protection Clause.

*Id.* at 1052 (citation omitted).[12]

*Flanagan v. Harris*, No. LA CV 16-06164 JAK (ASx), 2017 U.S. Dist. LEXIS 28503 (C.D. Cal. Feb. 23, 2017) is instructive.  There, the district court dismissed an equal protection claim brought by gun owners who were denied concealed carry permits because it was duplicative of their Second Amendment claims, holding that "[a]n Equal Protection claim brought under the Fourteenth Amendment that is the same as one brought simultaneously under a different constitutional provision cannot provide an independent basis for relief."  *Id.* at *14-15.  Thus, despite "Plaintiffs conten[tion] that their Equal Protection and Second Amendment claims are distinct, a review of the Complaint shows otherwise.  Each claim seeks the same relief based on the same conduct.  This is confirmed by the prayer for relief.  It shows that the Equal Protection challenge is only an alternative to the Second Amendment claim without any unique elements."  *Id.* at *16.

Similarly, here, Plaintiffs' First Amendment and equal protection claims seek the same relief (an injunction preventing enforcement of the Ordinance), and are based on the same exact conduct (the City's enactment of the Ordinance).  In sum, Plaintiffs' duplicative equal protection claim should be dismissed.

Moreover, Plaintiffs' equal protection claim is also subject to dismissal because it is duplicative of Plaintiffs' First Amendment retaliation claim, specifically.  Claims of unequal treatment in retaliation for exercising free speech rights are, at their core, First Amendment claims that do not implicate the Equal Protection Clause.  *See*, *e.g.*, *Boyd v.*

---

[12] The en banc panel affirmed the district court's order on the plaintiff's equal protection claims "for the reasons given in the panel opinion."  *Teixeira*, 873 F.3d at 676 n.7.  So *Teixeira's* equal protection analysis remains good law.

*Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004) ("[T]he right to be free from retaliation may be vindicated under the First Amendment …, but not the equal protection clause."); *Ratliff v. Dekalb County*, 62 F.3d 338, 340 (11th Cir. 1995) ("The right to be free from retaliation is clearly established as a first amendment right …; but no clearly established right exists under the equal protection clause to be free from retaliation.").

*AIDS Healthcare Found. v. Los Angeles County*, CV 12-10400 PA (AGRx), 2013 U.S. Dist. LEXIS 202573 (C.D. Cal. Mar. 18, 2013) is instructive.  There, the plaintiffs brought a First Amendment retaliation claim alleging the defendants retaliated against them for their advocacy efforts, as well as an equal protection claim "based on the same allegedly retaliatory conduct that forms the basis for Plaintiffs' second claim for First Amendment retaliation." *Id*. at *22.  The district court dismissed the equal protection claim, holding:  "Although the Ninth Circuit has not considered the issue, the First, Second, Fourth, Seventh, and Eleventh Circuits have all concluded that allegations that a plaintiff was treated differently in retaliation for the exercise of First Amendment rights do not implicate the Equal Protection Clause….  Plaintiffs cannot simply recharacterize their First Amendment retaliation claim as a violation of the Equal Protection Clause.  The Court therefore dismisses this claim with prejudice." *Id*. (citations omitted).

Here, Plaintiffs' equal protection claim alleges that "Plaintiffs are being singled out for their political beliefs and speech."  (Compl. ¶ 106.)  Similarly, Plaintiffs' Motion argues that potential contractors "that wish to support NRA are branded with a scarlet letter."  (Mot. at 19:10-12.)  Yet, this is the essence of Plaintiffs' First Amendment retaliation claim.  (*E.g*., Compl. ¶¶ 93-101 (alleging the City enacted the Ordinance to retaliate for "Plaintiffs' speech").)  Moreover, because the conduct underlying both claims is exactly the same—the City's enactment of the Ordinance—the equal protection claim is based on the same allegedly retaliatory conduct as the First Amendment retaliation claim.  Indeed, Plaintiffs repeatedly allege that they are being retaliated against, or treated differently by the City, because of their speech.  (*See*, *e.g*., *id*. ¶ 54 (alleging Ordinance

"is about discriminating against a lawful organization and its members and supporters because the City does not approve of their political speech").)

In sum, Plaintiffs' equal protection claim is duplicative of Plaintiffs' First Amendment claims, generally, and Plaintiffs' First Amendment retaliation claim, specifically.  Accordingly, Plaintiffs are not likely to succeed on their fifth cause of action.

***

Plaintiffs are not likely to prevail on the merits.  Accordingly, the court "need not consider the three remaining preliminary injunction factors," and the Motion should be denied.  *Advertise.com, Inc. v. AOL Advertising, Inc*., 616 F.3d 974, 982 (9th Cir. 2010).

## V.   PLAINTIFFS DO NOT ESTABLISH THEY WILL SUFFER "IRREPARABLE HARM" IN THE ABSENCE OF A PRELIMINARY INJUNCTION.[13]

Under the second *Winter* factor, Plaintiffs must "demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle Pub. Co*., 762 F.2d 1374, 1376 (9th Cir. 1985).  Assuming arguendo the court finds that Plaintiffs have established a likelihood of success on the merits, Plaintiffs cannot show that they will suffer irreparable harm if injunctive relief is not granted.

*First*, it is well established that "a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm….  Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction…. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citations omitted); *see also Titaness Light Shop*, 585 Fed. Appx. at 391 ("To establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough."); *Am. Passage Media Corp. v. Cass Commc'ns, Inc*., 750 F.2d 1470, 1473

---

[13] Plaintiffs erroneously argue that because they are likely to succeed on the merits, "the remaining preliminary injunction factors readily follow."  (Mot. at 20:1-11.)  Not so.  Rather, it is well established that Plaintiffs must independently establish irreparable injury. *Dish Network*, 653 F.3d at 776.

21

(9th Cir. 1985) (statements that "are conclusory and without sufficient support in facts" do not establish irreparable harm).

Despite this black-letter law, the Motion is replete with speculative allegations of injury that are unsupported by actual evidence and facts.  For example, the NRA claims that "[t]hrough the Ordinance, the City hopes to pressure NRA supporters and members to end their relationships with NRA, reducing NRA's funding and support and, ultimately, its pro-Second Amendment speech." (Mot. at 10:13-15.)  But this speculative allegation is unsupported by any evidence or facts that the Ordinance has caused anyone to terminate a contract with the NRA, a discount program with the NRA, or even a membership in the NRA, in order to secure a contract with the City.

Similarly, Plaintiffs conclusorily allege that the Ordinance "seeks to chill the speech of NRA members and sponsors, making them choose whether to continue supporting NRA and risk the ire of a city that seeks to 'rid itself' of such businesses, or succumb to the City's political pressure and break its formal ties with the [NRA]." (Mot. at 1:12-16; *see also id*. at 1:20-22 ("Without preliminary relief, the speech of Plaintiff NRA and its members, including Plaintiff John Doe, be [sic] chilled and if not entirely stopped.").)  But the Motion is not supported by a single declaration from Plaintiff Doe,[14] from a party that has filed a disclosure statement under the Ordinance (Mot. Exh. 31 (Dkt. No. 19-5 at p.36)), or from any potential City contractor detailing how the Ordinance has chilled, or will chill:  (1) their speech; or (2) their willingness to contract with the NRA or to provide the NRA and its members business discounts.  In sum, there is no evidence that anyone has suffered, or will suffer any injury as a result of the Ordinance.  *Cf. Friendly House v. Whiting*, 846 F. Supp. 2d 1053, 1061 (D. Ariz. 2012) ("The record contains evidence showing that the individual day laborer Plaintiffs and day laborer members of some of the organizational Plaintiffs are being chilled from soliciting day labor. [Citing

---

[14] Instead, Plaintiffs submitted a generic declaration from Tiffany Cheuvront, counsel for Plaintiffs. (Dkt. No. 19-6.)  The hearsay declaration, which purports to speak for Plaintiff Doe, simply restates the conclusory allegations in the Complaint.  It is hardly proof that the Ordinance has harmed, or will harm, Doe.

declarations].  The Court has concluded that Plaintiffs are likely to succeed on the merits of their First Amendment challenge …, and that conclusion, ***when coupled with Plaintiffs' evidence regarding the chilling of individuals' solicitation of day labor***, demonstrates that Plaintiffs are likely to suffer irreparable harm." (emphasis added)).

Remarkably, the scant "evidence" submitted in support of the Motion undermines any inference that the Ordinance will harm the NRA.  For example, in response to businesses terminating their discount programs with the NRA, the NRA stated:  "Let it be absolutely clear.  The loss of a discount will neither scare nor distract one single NRA member from our mission to stand and defend the individual freedoms that have always made America the greatest nation in the world."  (Mot. Exh. 19 (Dkt. No. 19-3 at p.56).)  Thus, the Ordinance does not, and will not harm the NRA's First Amendment rights.

***Second***, Plaintiffs' claim of "irreparable harm" is also belied by their lengthy delay in bringing this Motion.  The Ninth Circuit Court of Appeals has held that "delay undercut[s] [a plaintiff's] claim of irreparable harm." *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc); *see also Sorbello v. US Bank, NA*, CV 12-3327-JFW (VBKx), 2012 U.S. Dist. LEXIS 192030, at *2-3 (C.D. Cal. Apr. 18, 2012) ("A plaintiff's delay in seeking relief weighs heavily against granting a … preliminary injunction.").

The Ordinance was passed by the City Council on February 12, 2019 (Compl. ¶ 46), and was signed by the Mayor on February 18, 2019.  (*Id*. ¶ 48.)  Yet, Plaintiffs waited more than ***three months*** to file this Motion.  *See*, *e.g*., *Garcia*, 786 F.3d at 746 (four month delay between notice of claim and motion[15]—"[t]he district court did not abuse its discretion by finding this delay undercut [the plaintiff]'s claim of irreparable harm"); *Li v. Home Depot USA Inc.*, SACV 12-2151 AG (RNBx), 2013 U.S. Dist. LEXIS 198483, at *6 (C.D. Cal. Jan. 7, 2013) (three month delay between notice of claim and motion—"[s]uch a delay implies a lack of urgency and irreparable harm").

---

[15] The offending conduct took place in June 2012 (*Garcia*, 786 F.3d at 737), and the TRO was filed in October 2012.  *Garcia v. Nakoula*, No. CV 12-08315-MWF (VBKx), 2012 U.S. Dist. LEXIS 192948, at *1 (C.D. Cal. Nov. 30, 2012).

*Third*, "it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 Fed. Appx. 89, 92 (9th Cir. 2009) (reversing order enjoining enforcement of law: "We have held that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined…. Senate Bill 1369 was passed by the California Legislature and signed into law by the … governor. It is therefore 'an enactment of . . . [California's] representatives,' the injunction of which irreparably harms appellants under this court's precedent." (citation omitted)). Here, the Ordinance was passed by the City Council and signed by the Mayor. (Compl. ¶¶ 46, 48.)

Plaintiffs only argument in support of this factor is that "[w]hen the burdened expression is political, 'the harm is particularly irreparable.'" (Mot. at 20:7-8 (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)).) However, more context shows that *Klein* is distinguishable. There, the Ninth Circuit Court of Appeals enjoined the enforcement of an anti-littering ordinance that prohibited handbilling vehicles on city streets, holding that "[t]he harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable." *Klein*, 584 F.3d at 1199, 1208. It is well established that handbilling is "patently expressive or communicative conduct." *Roulette*, 97 F.3d at 303 (quotation marks omitted). But unlike *Klein*, the Ordinance does not address political speech (indeed, the so-called speech is not expressive at all), and Plaintiffs' activity involves no urgency in timing.

In sum, Plaintiffs cannot and do not show irreparable harm. This alone is fatal to their Motion. *Oakland Tribune, Inc.*, 762 F.2d at 1376.

## VI.   THE REMAINING *WINTER* FACTORS WEIGH AGAINST AN INJUNCTION

The third *Winter* factor, the balance of equities, "impose[s] a duty on the court to balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quotation marks omitted). Under the fourth

*Winter* factor, "[i]f … the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* at 1139.  The burden is on Plaintiffs to establish both factors. *Id.* at 1138-39.

Plaintiffs have not met their burden.  To the contrary, both factors weigh against the Court issuing an injunction because Plaintiffs seek to enjoin a duly enacted law passed by the representatives of the City's residents. *Feldman*, 843 F.3d at 394 (balance of equities); *Golden Gate*, 512 F.3d at 1126-27 (public interest); *Stormans*, 586 F.3d at 1140 (public interest); *Marin Alliance for Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1161 (N.D. Cal. 2011) (public interest).  In contrast, the Ordinance imposes a slight burden on potential City contractors to fill out a disclosure statement.  Indeed, Plaintiffs only argument in favor of both factors is that they are likely to succeed on the merits.  (Mot. 20-21.)  However, the Ninth Circuit Court of Appeals has repeatedly held that "proving a likelihood of success on their First Amendment claim, alone, does not satisfy the balance of hardships and public interest requirements for an injunction under *Winter*." *Gresham v. Picker*, 705 Fed. Appx. 554, 557 (9th Cir. 2017); *Dish Network*, 653 F.3d at 776 (same). Accordingly, the last two *Winter* factors weigh against granting the Motion.

## VII.  CONCLUSION

For the foregoing reasons, the court should deny the Motion.

Dated:  June 26, 2019

OFFICE OF THE CITY ATTORNEY OF LOS ANGELES

By:
    */s/ Benjamin Chapman*
Benjamin Chapman

Attorneys for Defendants