C. D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Tiffany D. Cheuvront – SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Facsimile: 562-216-4445
cmichel@michellawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA; JOHN DOE,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, ERIC GARCETTI, in his official capacity as Mayor of City of Los Angeles; HOLLY L. WOLCOTT, in her official capacity as City Clerk of City of Los Angeles; and DOES 1-10,<br><br>                    Defendants. | Case No.: 2:19-cv-03212 SVW (GJSx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date:      July 8, 2019<br>Hearing Time:     1:30 p.m.<br>Courtroom:         10A<br>Judge:                Hon. Stephen V. Wilson |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Introduction ............................................................................................................. 1

Factual Background ................................................................................................. 2

I.    National Rifle Association's History, Mission, and Work ................................ 2

II.   The City's Anti-NRA Crusade and the Challenged Ordinance ........................ 3

Legal Standard ........................................................................................................ 5

Argument ................................................................................................................. 5

I.    Plaintiffs Assert Both Facial and As Applied Claims to the Ordinance ........... 5

II.   Plaintiffs Have Stated Valid Claims Under the First and Fourteenth
Amendments ............................................................................................ 6

    A.    The Ordinance Burdens First Amendment Protected Speech and
Expression ........................................................................................ 7

    B.    The Ordinance Violates Both the First Amendment and Equal
Protection Clause ............................................................................. 9

        1.    The Ordinance Violates the Right to Free Association ............... 11

        2.    The Ordinance Violates the First Amendment Right to Free
Speech ...................................................................................... 14

            a.    Through the Ordinance, the City Imposes an Ideological
Litmus Test for Independent Contractors in Violation of
the First Amendment ......................................................... 15

            b.    The Ordinance Impermissibly Compels Disclosure of
Political Beliefs and Associations by NRA Members
and Supporters in Violation of the First Amendment ....... 16

        3.    The Ordinance Violates the First Amendment Because It
Retaliates Against Plaintiffs for Exercising Their Rights to
Free Speech and Association ..................................................... 19

        4.    The Ordinance Violates the Equal Protection Clause ................. 21

Conclusion ............................................................................................................. 23

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. All. for Open Society Int'l, Inc.*,
  570 U.S. 205 (2013) ........................................................................... 16

*Arcara v. Cloud Books, Inc.*,
  478 U.S. 697 (1986) ............................................................................. 8

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
  824 F.3d 858 (9th Cir. 2016) ............................................................. 19

*Austin v. Mich. Chamber of Commerce*,
  494 U.S. 652 (1990) ........................................................................... 21

*Baird v. State Bar of Arizona*,
  401 U.S. 1 (1971) ......................................................................... 15, 16

*Bates v. Little Rock*,
  361 U.S. 516 (1960) ..................................................................... 10, 17

*Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*,
  518 U.S. 668 (1996) ........................................................................... 19

*Buckley v. Am. Constit. Law Found., Inc.*,
  525 U.S. 182 (1999) ........................................................................... 17

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ......................................................................... 7, 17

*Carey v. Brown*,
  447 U.S. 455 (1980) ........................................................................... 14

*Citizens Against Rent Control/Coal. for Fair Housing v. City of Berkley*,
  454 U.S. 290 (1981) ............................................................................. 7

*Doe v. United States*,
  419 F.3d 1058 (9th Cir. 2005) ............................................................. 5

*Elrod v. Burns*,
  427 U.S. 347 (1976) ........................................................................... 15

*Foti v. City of Menlo Park*,
146 F.3d 629 (9th Cir. 1998) .............................................................. 5, 6

*Gibson v. Fla. Legis. Investig. Comm.*,
372 U.S. 539 (1963)..................................................................... 11, 17

*Jantzen v. Hawkins*,
188 F.3d 1247 (10th Cir. 1999) ........................................................ 16

*Martin v. Town & Cty. Devel., Inc.*,
230 Cal. App. 2d 422 (1964) .............................................................. 7

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995)......................................................................... 17

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Rev.*,
460 U.S. 575 (1983)........................................................................... 8

*NAACP v. State of Alabama ex rel. Patterson* (*NAACP*),
357 U.S. 449 (1958)................................................................... *passim*

*O'Brien v. Welty*,
818 F.3d 920 (9th Cir. 2016) ........................................................ 19, 20

*O'Hare Truck Serv., Inc. v. City of Northlake*,
518 U.S. 712 (1996) ......................................................................... 16

*Perry v. Sindermann*,
408 U.S. 593 (1972)......................................................................... 19

*Police Dep't of City of Chic. v. Mosley*,
408 U.S. 92 (1972)........................................................................... 21

*Porter v. Jones*,
319 F.3d 483 (9th Cir. 2003) .............................................................. 5

*Reed v. Town of Gilbert, Ariz.*,
135 S. Ct. 2218 (2015)..................................................................... 10

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
487 U.S. 781 (1988).............................................................. 9, 16, 19

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995)......................................................................... 14

iv

*Roulette v. City of Seattle*,
    97 F.3d 300 (9th Cir. 1996) .................................................................. 9

*Shelton v. Tucker*,
    364 U.S. 479 (1960) ........................................................................... 13

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ............................................................................. 9

*Talley v. California*,
    362 U.S. 60 (1960) ............................................................................. 17

*United States v. Fitzgerald*,
    882 F.2d 397 (9th Circuit 1989) ........................................................... 7

*United States v. Mayer*,
    503 F.3d 740 (9th Cir. 2007) .............................................................. 11

*United States v. O'Brien*,
    391 U.S. 367 (1968) ............................................................................. 9

*West Virginia State Board of Education v. Barnette*,
    319 U.S. 624 (1943) ........................................................................... 15

*Williams v. Rhodes*,
    393 U.S. 23 (1968) ............................................................................. 21

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ........................................................................... 17

**Statutes**

Los Angeles Administrative Code Chapter 1, Division 10 No. 186000,
    Article 26 ............................................................................................ 3

Timothy Zick, *Rights Dynamism*, 19:4 J. Constit. Law, 791-860 (May
    2017) .................................................................................................. 21

**Other Authorities**

Ashutosh Bhagwat, *The Democratic First Amendment*, 110 NW. U. L.
    REV. 1097, 1099 (2016) ..................................................................... 21

Erwin Chemerinsky, *Constitutional Law: Principles and Policies* 1202
    (4th ed. 2011) ................................................................................... 11

v

TABLE OF AUTHORITIES

Fed. R. Civ. Proc. 8 ..................................................................................... 5

Fed. R. Civ. Proc. 12 ................................................................................... 5

U.S. Const. amend. I .................................................................................. 14

U.S. Const., amend. I ........................................................................... *passim*

U.S. Const., amend. II .................................................................................. 3

U.S. Const., amend. XIV .............................................................................. 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

1

**INTRODUCTION**

2      The City moves to dismiss Plaintiffs' complaint for failure to state a claim that

3  the City's ordinance, requiring everyone who contracts with the City[1] to disclose any

4  contract with or sponsorship of Plaintiff the National Rifle Association of America,

5  violates either the First or Fourteenth Amendment. But the City's arguments fail.

6  They draw artificial contours for the rights Plaintiffs seek to vindicate, resulting in an

7  erroneous constitutional analysis. Specifically, the City argues that its ordinance only

8  affects contracting with or providing business discounts to the NRA or its members,

9  which, according to the City, is neither speech nor expressive conduct and thus does

10  not even trigger First Amendment scrutiny.

11      But the City's description ignores the true scope of its ordinance, as well as the

12  inherently protected nature of NRA's advocacy that the ordinance intentionally

13  targets for the purpose of diminishing it. Compl., Ex. 9, 1. While it is true that there is

14  no First Amendment right to enter into contracts per se, this is not a situation where

15  two businesses are entering into contracts for purely economic reasons. Rather, this

16  involves *all* contracts and sponsors with a membership organization, a main purpose

17  of which is political advocacy, the core of the First Amendment. The ordinance's

18  definition of "sponsorship" includes political contributors, and its undefined term

19  "contracts" sweeps up all sorts of relationships, including memberships. It is well

20  settled that the First Amendment protects against disclosure of organization's

21  members and contributors, particularly disfavored ones, unless the government has a

22  compelling interest in disclosure. Here, the City has no such interest. To the contrary,

23  it is obvious that the City is searching for a technical loophole to the First

24  Amendment for the sole purpose of attacking NRA's speech.

25      Once it is established that the City's ordinance impacts First Amendment

26  protected activity, the City's motion to dismiss must be denied. The City makes no

27  serious effort to defend its ordinance under heightened scrutiny, but instead hangs its

28

---

[1] Except those included in an extensive, vague litany. (Compl., Ex. 9, pp. 3-5.)

1

1   hat on the position that it can intentionally target speech and expressive activity, as

2   long as it does so under the moniker of regulating mere contracts.

3        Even if the Ordinance does not implicate First Amendment protected activity,

4   as the City argues, it nevertheless violates the Equal Protection Clause because it is

5   treating contractors, like Plaintiff Doe, differently than others with no rational basis

6   for doing so that does not involve improperly targeting NRA's speech for negative

7   treatment. The Court should thus deny the City's motion to dismiss in its entirety. At

8   minimum, the Court should deny it as to Plaintiffs' equal protection claim.

9                          **FACTUAL BACKGROUND**

10  **I.    NATIONAL RIFLE ASSOCIATION'S HISTORY, MISSION, AND WORK**

11        NRA is a membership organization with a rich history of promoting firearm

12  safety, preserving the shooting sports, and advocating for the rights its members and

13  all Americans. Compl. ¶ 3. The organization provides firearm safety training,

14  recreational and competitive shooting matches, programs for women and youth, and

15  school safety programs. *Id*. To keep these programs viable, as well as to continue its

16  mission to protect the individual right to keep and bear arms, NRA relies on member

17  dues, sponsorships, and other contributions from businesses and individuals. *Id*. at ¶

18  5, 28. It also relies on dues and donations to compete with well-funded groups that

19  advocate opposing messages. *Id*.

20        NRA has a stable of sponsors that range from large corporations offering

21  discounts to members to smaller, local retailers who donate their employees' time to

22  build the membership base of NRA and share information about programs, safety,

23  and political issues. *Id*. 3 at 27. Many of these members and sponsors also contract or

24  could contract with the City. *Id*. at 4.

25        NRA also has millions of members residing throughout the United States. *Id*.

26  at ¶ 3. People join the organization for many reasons. Many do enjoy the benefits

27  from corporate sponsors that membership in such a large and prestigious organization

28  provides. Compl. ¶¶ 27-28. But most, if not all, support NRA every year because of

the power that comes from a common voice working to protect their constitutional rights. *Id.* This voice speaks out against government over-reach and policies that would seek to infringe on lawful firearm possession. *Id.*

Plaintiff John Doe operates a lawful business in California and, over the years, has maintained contracts with the City. *Id.* at ¶ 6.  Doe wishes to continue bidding for and obtaining such contracts in the future, but Doe is fearful of the retribution that disclosure will expose the business to. *Id.* Doe is a member and supporter of NRA and its mission to protect against infringement of Second Amendment rights. *Id.* The NRA brings this claim on Doe's behalf and on behalf of all other NRA members who contract with or wish to contract with the City.

## II.   THE CITY'S ANTI-NRA CRUSADE AND THE CHALLENGED ORDINANCE

The City unanimously passed Ordinance No. 186000, Article 26 of Chapter 1, Division 10 of the Los Angeles Administrative Code ("the Ordinance"). The Ordinance requires any "Person" to disclose via a signed affidavit: "(1) any contracts it or any of its subsidiaries has with the National Rifle Association; and (2) any sponsorship it or any of its subsidiaries provides to the National Rifle Association." Compl., Ex. 9 at 3.  The ordinance defines "Person" as "any individual, proprietorship, partnership, joint venture, corporation, limited liability company, trust, association, or other entity that may enter into a Contract." *Id.* The Ordinance defines "sponsorship" as any "agreement between a Person and the NRA to provide a discount to the NRA or an NRA member of the customary costs, fees or service charges for goods or services." Compl., Ex. 9 at 3. The Ordinance does not, however, define "contracts."[2]

The preamble to the Ordinance speaks of the perceived advantage the NRA has in promoting its beliefs because of the financial support of members and donors

---

[2]   The Ordinance does define "Contract" for purpose of explaining which relationships a contractor has with the City trigger the NRA disclosure requirement, but it cannot be applied to "contracts" that a contractor has with NRA that must be disclosed, as it expressly refers to the City. Compl., Ex. 9 at 3.

3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

stating,

> WHEREAS, the benefits and discounts the NRA arranges for its membership entices new members to join and existing members to renew their NRA membership. The millions of dollars generated from the new and renewed membership dues fund the NRA agenda of opposing legislative efforts. . .The membership dues also finance the RA's nationwide effort to repeal existing gun control measures and to diminish local and state government's ability to adopt sensible gun legislation.

*Id.*, Ex. 9 at 1-2.

The Ordinance raises no public safety issues or concerns about the ability of NRA-affiliated contractors to perform competently. *See Id.*, Ex. 9. Nor does it raise concerns about affiliations with NRA causing corruption concerns or ethical conflicts. *See Id.* Plaintiffs allege the only purpose of the Ordinance's mandatory disclosure is to target NRA and its supporters and diminish their speech and expressive activity. *Id.* at 5. Plaintiffs point to the Ordinance itself as evidence. It provides:

> The City's residents deserve to know is the City's public funds are spent on contractors that have contractual or sponsorship ties with the NRA. Public funds provided to such contractors undermines the City's efforts to legislate and promote gun safety.

*Id.*, Ex. 9 at 2.

Plaintiffs allege the Ordinance is intended to silence NRA's voice, as well as the voices of all those who support it. Compl. ¶ 31. Plaintiffs have further alleged that the Ordinance is intended to deny NRA supporters contracts with the City, or at least to expose them for the purpose of causing public pressure on them to lose the contract or end support for NRA. *Id.* ¶ 32.  In support, Plaintiffs have provided various comments from councilmembers disparaging the NRA and explaining that the purpose of the Ordinance is to harm NRA and deprive it of money and influence. *Id.* ¶¶ 34, 47. Plaintiffs Doe has also alleged that the Ordinance has had the effect of chilling their activity with NRA; hence their need to bring the lawsuit anonymously. *Id.* ¶¶ 80-81.

Mayor Eric Garcetti signed the Ordinance on February 18, 2019. Compl., Ex.

8. It took effect on April 1, 2019. Compl., Ex. 9, p.6.  And Plaintiffs promptly sued, seeking declaratory and injunctive relief and damages. Compl., ECF No. 1. The City has moved to dismiss the Complaint.

## LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). That is, Plaintiffs need provide only a short and plain statement showing that they are entitled to relief. Fed. R. Civ. P. 8(a)(2). At this stage, the Court must view the complaint "in the light most favorable to the plaintiff, taking all allegations as true, and drawing all reasonable inferences from the complaint in [plaintiffs'] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

## ARGUMENT

**I.    PLAINTIFFS ASSERT BOTH FACIAL AND AS APPLIED CLAIMS TO THE ORDINANCE**

The City argues that Plaintiffs assert only facial challenges here. Defs.' Mot. 5-6. It contends that to assert an as applied challenge, Plaintiffs must allege that the Ordinance "may be capable of valid application to others." *Id*. at 6, fn. 6 (citing *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)). But *Foti* does not say that is the pleading standard for an as applied challenge. Rather, it was merely describing the difference between as applied and facial challenges. *See Foti*, 146 F.3d at 635. In fact, *Foti* itself says "[a]s-applied challenges are the most common type of challenges to restrictions on speech activity and may be coupled with facial challenges." *Id*. at 635. That is precisely what Plaintiffs have done here.

Plaintiffs repeatedly make clear in their complaint that they challenge the Ordinance's impact as applied to specific contractors, including Plaintiff Doe. Compl. ¶¶ 4, 5, 6, 7, 56, 60-61, 65, 69-70, 83, 85-87, 92, 95, 101, 103, 105, 106, 110. But Plaintiffs also assert facial challenges to the Ordinance because, as explained below, the Ordinance intentionally targets Plaintiffs' speech for negative treatment in

a way that could cause NRA affiliated contractors to refrain from First Amendment protected activity for fear of losing a contract with the City or being boycotted by members of the public. The very case the City relies on condones such facial challenges. *See Id*. at 640 (holding that the law challenged there was "facially unconstitutional because it targets those persons engaged in the core of First Amendment activity and is not supported by any valid government interest.")

In sum, Plaintiffs have sufficiently and properly pled both facial and as applied challenges to the Ordinance. That said, in the event the Court finds that Plaintiffs cannot assert a facial challenge and that they have failed to sufficiently plead an as applied challenge, they respectfully request leave to amend the complaint.

## II. PLAINTIFFS HAVE STATED VALID CLAIMS UNDER THE FIRST AND FOURTEENTH AMENDMENTS

The Ordinance violates the rights to free association, free speech, and equal protection. The City simply cannot condition the award of its government contracts on the forfeiture of these rights. The Ordinance violates this fundamental principle in several respects. First, it infringes on the rights of NRA members and supporters to associate freely without government-endorsed retribution. Second, it imposes an ideological litmus test designed to penalize City contractors because of their protected political beliefs and associations. Third, it compels City contractors' speech, requiring that they disclose any formal support for NRA, with no legitimate justification. Fourth, it seeks to retaliate against public contractors for engaging in protected speech and association. Finally, it violates the Equal Protection Clause by treating those contractors having certain NRA relationships differently than those not having such relationships with no rational basis for doing so that does not involve attacking NRA's viewpoint. And, the City does all of this with the express purpose of diminishing NRA's ability to use its speech to influence policy.

The City argues that the Ordinance impacts neither speech nor expressive conduct and thus does not even trigger First Amendment scrutiny, let alone fail it.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defs.' Mot. 1-2. The City is wrong. The Ordinance not only impacts speech and expressive conduct, it intentionally targets Plaintiffs' viewpoint for negative treatment. Because the City makes no serious attempt to defend the Ordinance under heightened scrutiny, finding that First Amendment protected activity is implicated here is dispositive. The City's motion to dismiss should thus be denied and Plaintiffs' motion for preliminary injunction should be granted.

### A.   The Ordinance Burdens First Amendment Protected Speech and Expression

According to the City, the Ordinance "does not require a potential City contractor to disclose whether they [sic] are a member of the NRA [or] a supporter of the NRA," but only applies to people "entering into contracts and providing business discounts." *Id*. at 7-8. The City argues that such is not speech, it is non-expressive conduct that does not implicate First Amendment concerns. *Id*. But the City's narrow view of what activities trigger compliance is not supported by the Ordinance's text. Compl., Ex. 9, at 3. And the City's limited view of the First Amendment's reach is contradicted by precedent.

It is well settled that both memberships in and contributions to political advocacy groups are expressive activities deserving of First Amendment protections. *See* e.g., *NAACP v. State of Alabama ex rel. Patterson* (*NAACP*), 357 U.S. 449 (1958); *Buckley v. Valeo,* 424 U.S. 1 (1976); *Citizens Against Rent Control/Coal. for Fair Housing v. City of Berkley,* 454 U.S. 290, 298 (1981). The Ordinance requires that any "Person"—which includes individuals—disclose *all* "contracts with or Sponsorships of the NRA." Compl., Ex. 9 at 3. Because the Ordinance does not define "contracts," the common understanding of that term applies. *See United States v. Fitzgerald*, 882 F.2d 397, 398 (9th Circuit 1989). That brings within the Ordinance's reach all kinds of support for NRA, *including paid memberships*. For a paid membership into an organization that provides services in return for the payment meets the criteria for a contract. *See Martin v. Town & Cty. Devel., Inc.*, 230 Cal.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

App. 2d 422 (1964). The City does not deny that membership in NRA is expressive activity.

Even if the Ordinance does not apply to NRA memberships, it certainly contemplates at least some types of contributions to NRA. For example, if a "Person" entered into a contract with NRA to donate funds on the condition that the funds be used toward a particular political issue or piece of litigation, there is no reasonable interpretation of the Ordinance that would not require the person to disclose such an expressive contribution as a "contract" with NRA. "Sponsorships" could likewise constitute expressive contributions. That term is defined as "an agreement [with] the NRA to provide a discount to the NRA or an NRA member of the customary costs, fees or service charges for goods of services provided by the Person to the NRA or an NRA member." Compl., Ex. 9 at 3.  As alleged in the Complaint, some businesses "donate their employees' time to build the NRA's membership base and share information about NRA's programs and advocacy work." Compl. ¶ 27. This contribution meets to meet the Ordinance's definition of "Sponsorship." One could also imagine a person giving NRA a discount on a product or service for the non-commercial purpose of saving NRA money to use for its advocacy. The City does not argue that contributions of this sort are not expressive conduct.

In any event, even if the State's description of the Ordinance as affecting only non-expressive conduct is accurate, the Supreme Court has applied First Amendment scrutiny to laws "directed at activity with no expressive component," if they "impose a disproportionate burden upon those engaged in protected First Amendment activities." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 704 (1986) (citing *Minneapolis Star & Trib. Co. v. Minn. Comm'r of Rev.*, 460 U.S. 575 (1983)) (explaining that the Court struck down a tax "imposed upon a nonexpressive activity" because it burdened the press). Plaintiffs allege that the Ordinance has the inevitable (and intended) effect of curtailing their expressive activity concerning NRA advocacy. Compl. ¶¶ 54, 56, 58. At minimum, it is reasonable to assume that because

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

of the definitional issues described above, individual contractors may fear that their membership or contributions require disclosure under the Ordinance—potentially resulting in widespread self-censorship to prevent retribution from the City or its residents. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 794 (1988) ("[T]he 'chill and uncertainty' of disclosure requirements . . . might well 'encourage them to cease engaging in certain types' of First Amendment Activity.")

But that is not all. "Just as the 'inevitable effect of a statute on its face may render it unconstitutional,' a statute's stated purposes may also be considered." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011), (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)) . The very case the City primarily relies on holds that "a facial freedom of speech attack must fail unless, at a minimum, the challenged statute is directed narrowly and specifically at expression or conduct commonly associated with expression." Defs.' Mot. 8 (citing *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996)) (quotation marks omitted). By its express terms, the Ordinance seeks to target Plaintiffs' speech and expressive conduct. Compl., Ex. 9. In fact, that appears to be its *sole* objective. *Id.* Specifically, in its preamble, the Ordinance identifies NRA's effectiveness in lobbying to further a specific viewpoint that the City opposes and draws the connection between the funding NRA members and "sponsors" provide NRA. Compl., Ex. 9 at 1-2. It then states City's residents, "deserve to know" those facts, undeniably implying that the City wishes to expose those people to public condemnation to dissuade them from continuing to support NRA or risk losing business. *Id.* If the Court finds that either this alleged purpose or effect is present here, the First Amendment is implicated. At minimum, Plaintiffs have sufficiently alleged facts that if assumed true would meet that standard and overcome the City's motion to dismiss.

## B.   The Ordinance Violates Both the First Amendment and Equal Protection Clause

In mandating the disclosure of NRA supporters like Plaintiff Doe's political

9

affiliations, the Ordinance violates constitutional rights under the doctrines of freedom of association, freedom of speech and from compelled speech, and equal protection under the law. "Freedoms such as these are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." *Bates v. Little Rock*, 361 U.S. 516, 523 (1960) (a challenge to convictions under an ordinance that required disclosure of "names of organizations' members and contributors" that engaged in unpopular political advocacy). The City paints the Ordinance as merely regulating commercial contracts and sponsorships that do not enjoy First Amendment protections. As explained above, this is not an accurate description of the Ordinance. Instead, it is one of those subtle, but insidious, ploys governments develop to discriminate against speech and expression that the Supreme Court has warned about and disapproved of. *See Id.*

Not only is the Ordinance therefore subject to First Amendment review, but because it discriminates against a particular viewpoint, it is "presumptively unconstitutional and may be justified only if the [City] proves [it is] narrowly tailored to serve compelling state interests;" in other words, that it satisfies strict scrutiny. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015). The Ordinance comes no where near surviving even intermediate scrutiny, let alone strict.

The City argues that the government interests being furthered by the Ordinance are informing the public and transparency. Defs.' Mot. 15. While those certainly are legitimate, even admirable, government interests in certain contexts, in others, they are an insidious weapon to target disfavored speech. *See, e.g.*, *NAACP v. State of Alabama ex rel. Patterson* (*NAACP*), 357 U.S. 449 (1958). The Ordinance is the latter. The City freely admits that its goal is to expose city contractors as having an affiliation with NRA, presumably—and as Plaintiffs allege based on evidence—so that people will engage in a secondary boycott of those contractors. Exposing potential contractors' NRA affiliations in the hopes of alienating them from supporting NRA is not a valid government interest. And, the City provides no other

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    basis whatsoever for the Ordinance. Accordingly, once the Court find that the First

2    Amendment is implicated here, the City has no valid argument to defend the

3    Ordinance and its motion to dismiss must be denied.

4         Additionally, the singling out of NRA affiliated contractors for negative

5    treatment likewise violates their rights under equal protection. This is so even if the

6    Court were to reject Plaintiffs' First Amendment claims. For the City has no rational

7    basis for treating sued contractors differently than other contractors that is not related

8    to their viewpoint.

9                    **1.    The Ordinance Violates the Right to Free Association**

10        The First Amendment protects the right to associate freely with others to

11   advance one's beliefs. *NAACP*, 357 U.S. at 460. This necessarily "encompasses

12   protection of privacy of association in organizations." *Gibson v. Fla. Legis. Investig.*

13   *Comm.*, 372 U.S. 539, 544 (1963). For "[i]nviolability of privacy in group association

14   may in many circumstances be indispensable to preservation of freedom of

15   association, particularly where a group espouses dissident beliefs." *NAACP*, 357 U.S.

16   at 462. Thus, laws mandating disclosure of group associations "which may have the

17   effect of curtailing the freedom to associate [are] subject to the closest scrutiny." *Id.*

18   at 460-61, *see also* Erwin Chemerinsky, *Constitutional Law: Principles and Policies*

19   1202 (4th ed. 2011) ("[T]he government may require disclosure of membership,

20   where disclosure will chill association, only if it meets strict scrutiny."). The Ninth

21   Circuit has held that this requires the government to prove (1) it has a compelling

22   interest in imposing a "hardship on associational rights"; and (2) that the disclosure

23   has a "substantial connection" to that interest. *United States v. Mayer*, 503 F.3d 740,

24   748 (9th Cir. 2007) (citing *NAACP*, 357 U.S. at 462; *Gibson*, 372 U.S. at 557). Here,

25   the City cannot meet its burden to justify the Challenged Ordinance's compelled

26   disclosure requirement at either step.

27        The City argues that it has no burden because there is no associational right to

28   contract or offer discounts. Defs.' Mot. at 11. While it is true that such relationships

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

do not *necessarily* enjoy First Amendment protections, that does not mean they never can. Indeed as explained above, the sorts of "contracts" and "sponsors" contemplated by the Ordinance include the undeniably expressive activities of membership in and contributions to an advocacy group.  Every one of the cases the City relies on is thus inapposite because they involve purely commercial activity. Defs.' Mot. at 11. The First Amendment applies here and does not permit the intentional exposure of public contractors' affiliations because of their views without an extremely good reason to do so. The City has no such reason.

In *NAACP v. State of Alabama ex rel. Patterson*, the Supreme Court held that the government could not compel the NAACP to disclose its list of members. 357 U.S. at 466. The Court held that "[c]ompelled disclosure of membership in an organization engaged in advocacy of particular beliefs is of the same order as [requiring members of particular religions to wear identifying arm-bands]." *Id.* at 462. And it stressed the vital importance, in many cases, of protecting the privacy of group association to preserve the freedom of association. *Id.* In the NAACP's case, the Court recognized that disclosure of the organization's member list would expose its members "to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Id.* at 462. Under these circumstances, the Court held, the compelled disclosure amounted to a "substantial restraint" on the right to freedom of association. *Id.* For it would likely adversely affect

> the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate, *in that it may induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs* . . ..

*Id.* at 462-63 (emphasis added). For that reason, the Court held that the disclosure requirement must be justified by a compelling government interest. *Id.* at 463. Assuming the state's interests were compelling, the Court held that the requirement was not justified because the state had not shown that the disclosure had a "substantial bearing" on either of the state's asserted interests. *Id.* at 464-65.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Similarly, in *Shelton v. Tucker*, 364 U.S. 479, 490 (1960), the Supreme Court invalidated a law requiring teachers to disclose all their group associations. The Court recognized that, even if the disclosure were not made public, such a mandate would impose a "constant and heavy" pressure on "teacher[s] to avoid any ties which might displease those who control [their] professional destin[ies]." *Id.* at 486. Even though the Court recognized that the state had a compelling interest in weighing the fitness of its public-school teachers, the Court held that "the state cannot pursue the goal by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Id.* at 488. And demanding the disclosure of associational ties that do not affect a teacher's competence or fitness "goes far beyond what might be justified in the exercise of the State's legitimate inquiry." *Id.* at 490.

Here, Plaintiffs have effectively alleged that compelling NRA members and sponsors to disclose their relationship with NRA is designed to and likely will expose them to retribution. Compl. ¶¶ 55, 74, 80-81. Like the *NAACP* plaintiffs, it could "expose[] these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." 357 U.S. at 462. Indeed, Plaintiffs allege that was the City's goal. So, like the forced disclosure in *Shelton*, the Ordinance imposes a "constant and heavy" pressure on potential contractors "to avoid any ties [with NRA] which might displease those who control [their] professional destin[ies]." 364 U.S. at 486.

Just like the disclosure requirement in *NAACP*, the clear result (if not the very purpose) of the Ordinance is to "induce members to withdraw from the [NRA] and dissuade others from joining it because of fear of exposure of their beliefs." 357 U.S. at 464. And, just like *NAACP*, under these circumstances, the disclosure requirement amounts to a "substantial restraint" on the right to freedom of association. *Id.* at 462.

The Ordinance declares that this restraint on First Amendment rights is necessary because Angelenos "deserve to know if the City's public funds are spent on contractors that have contractual or sponsorship ties with the NRA" and because

13

"[p]ublic funds provided to such contractors undermines the City's efforts to legislate and promote gun safety." Compl., Ex. 9 at 2.  Essentially, Plaintiffs allege that the City seeks to justify its infringement on Plaintiffs' associational rights because NRA engages in pro-gun speech, including successful political lobbying, with which the City disagrees. Through the Ordinance, the City hopes to pressure NRA supporters and members to end their relationships with NRA, reducing NRA's funding and support and, ultimately, its pro-Second Amendment speech. This is hardly the sort of interest that can justify curtailing the fundamental rights of untold numbers of NRA members and supporters. For a vital purpose of the right of free association is to protect *dissidents* from government attempts to silence their voices. *See NAACP*, 357 U.S. at 462. Protecting the *government* from dissidents' attempts to have their voices heard grossly inverts the interests at stake and simply is not a legitimate justification to withhold the right.

### 2. The Ordinance Violates the First Amendment Right to Free Speech

The First Amendment provides that "Congress shall make no law . . .abridging the freedom of speech, or of the press, or the right of the people to peaceably assemble and to petition the government for a redress of grievances." U.S. Const. amend. I. The Supreme Court has recognized that speaking out about public issues, like NRA and its members often do, "has always rested on the highest rung of the hierarchy of First Amendment values." *Carey v. Brown*, 447 U.S. 455, 467 (1980). Indeed, "[i]t is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).

There's simply no justification for the Ordinance that escapes the might of these rules. The City may not condition the benefits at issue on a demonstration of ideological purity. Such a litmus test fundamentally abridges core First Amendment activity. And the City may not compel a response to its litmus test under the

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  circumstances present here. It serves no compelling interest and is far too blunt.

2  ### a. Through the Ordinance, the City Imposes an Ideological Litmus Test for Independent Contractors in Violation of the First Amendment

3

4  The Ordinance violates the fundamental right to be free from government

5  inquisition into one's protected beliefs and associations. As the Supreme Court

6  recognized in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 642

7  (1943), "no official, high or petty, can prescribe what shall be orthodox in politics,

8  nationalism, religion, or other matters of opinion or force citizens to confess by word

9  or act their faith therein." Since *Barnette*, the Supreme Court has consistently held

10  that the right to hold one's personal "beliefs and to associate with others of [like-

11  minded] political persuasion" lies at the heart of the First Amendment. *Elrod v.

12  Burns*, 427 U.S. 347, 356 (1976). To protect these rights, the First Amendment

13  prohibits the government from imposing an ideological litmus test as a condition of

14  receiving government benefits.

15  The City argues it can do so, as long as it only does so to those who contract

16  with or sponsor an entity because the First Amendment does not apply. Defs.' Mot.

17  12-13. But, the City is wrong. The Supreme Court's decision in *Baird v. State Bar of

18  Arizona*, 401 U.S. 1 (1971), is instructive. There, the Court held that the First

19  Amendment prohibited the state bar from requiring an applicant "to state whether she

20  had ever been a member of the Communist Party or any organization 'that advocates

21  overthrow of the United States Government by force or violence.'" *Id.* at 4-5. A

22  plurality of the Court held that "when a State attempts to make inquiries about a

23  person's beliefs or associations, its power is limited by the First Amendment." *Id.* at

24  6. Indeed, when the government demands the disclosure of this protected

25  information, "a heavy burden lies upon it to show that the inquiry is necessary to

26  protect a legitimate state interest." *Id.* at 6-7. But "whatever justification may be

27  offered, [the government] may not inquire about a man's views or associations solely

28  for the purpose of withholding a right or benefit because of what he believes." *Id.* at 7

15

1    (emphasis added).

2         The same principle applies to conditions on government contracts. *See, e.g.*,

3    *Agency for Int'l Dev. v. All. for Open Society Int'l, Inc.*, 570 U.S. 205, 218-219

4    (2013) (holding that the government cannot require organizations to adopt a policy

5    opposing prostitution as a condition of receiving government funds). Indeed, any

6    attempt to penalize a government contractor for its beliefs or associations violates the

7    First Amendment, unless the goods or services provided "require[] political

8    allegiance." *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999) (applying this

9    test to employees); *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 726

10   (1996) (applying same test to government contractors).

11        What's more, as the Ordinance's own text shows, the disclosure requirement

12   does little, if anything, more than target for punishment disfavored political beliefs

13   and associations. The ultimate goal of which is necessarily to attack NRA's speech

14   by diminishing its ability to engage in it; cutting off the funds it needs to continue its

15   advocacy. Plaintiffs have alleged that City councilmembers have also made anti-

16   NRA statements, indicating that is their intent. Compl. fn.2.

17        On the other hand, Plaintiffs have alleged that neither the Ordinance nor a

18   single councilmember claim that the Ordinance would serve any compelling

19   government interest. Nor could they have, for there is no plausible justification for

20   the disclosure requirement, except a bare desire to ferret out those who harbor

21   disfavored political beliefs and associations (with NRA) and to punish them by

22   denying them City contracts. That "justification" simply cannot survive First

23   Amendment scrutiny. *See Baird*, 401 U.S. at 7.

### b. The Ordinance Impermissibly Compels Disclosure of Political Beliefs and Associations by NRA Members and Supporters in Violation of the First Amendment

26        The First Amendment has long been understood to protect not only the right *to*

27   speak, but also the right *not* to. *Riley*, 487 U.S. at 796-97 (1988). For both rights are

28   "complementary components of the broader concept of individual freedom of mind."

16

*Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The Supreme Court has thus held that government coercion of speech is presumptively unconstitutional when it burdens speech by compelling speakers to disclose what they would be reluctant to disclose, including their identities, deterring them from engaging in speech. *See, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995); *Buckley v. Am. Constit. Law Found., Inc.*, 525 U.S. 182, 201-05 (1999); *Talley v. California*, 362 U.S. 60, 65-66 (1960).

Indeed, the Court has long held "that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest." *Buckley*, 424 U.S. at 64. No, such laws must survive "exacting scrutiny." *Id.* (citing *NAACP*, 357 U.S. at 463). There must be " 'relevant correlation' or 'substantial relation' between the government interest and information required to be disclosed." *Id.* (citing *Bates*, 361 U.S. at 525; *Gibson*, 372 U.S. at 546)). The same applies even when the First Amendment rights are deterred "not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct in requiring disclosure." *Id.* at 65 (citing *NAACP*, 357 U.S. at 461). Again, because the City can prove no "substantial relation" between any legitimate interest and the information sought, the Ordinance unconstitutionally compels speech by NRA members and supporters.

In *McIntyre v. Ohio Election Commission*, the Supreme Court held that a speaker's "decision to remain anonymous is protected by the First Amendment. 514 U.S. at 341-42. Recognizing that government compulsion of a speaker's identity can be a significant deterrent to engaging in speech because of the risk of "economic or official retaliation" or "social ostracism," the Court had little trouble striking a state law requiring speakers to identify themselves when arguing for or against a ballot measure. *Id.* at 341-42, 357.

Here, the Ordinance requires that anyone who contracts or seeks to contract

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

with the City "fully disclose, prior to entering into a Contract, all of its and its Subsidiaries' contracts with or sponsorship of the NRA." Compl., Ex. 9 at 3. The City, again, argues that the Ordinance only compels speech about non-expressive conduct, i.e., contracting, and is thus not a First Amendment issue. Defs.' Mot. at 13-14. The City would be correct, if the relationships subject to disclosure under the Ordinance were not of an expressive nature. Because they are, however, the Ordinance cannot compel Plaintiffs to disclose them. And, because the Ordinance does just that, it violates the First Amendment's restriction on compelling speech.

Plaintiffs have alleged that NRA and its supporters are often the target of backlash for their views. In this day and age, it is beyond dispute that disclosure of one's affiliation with NRA and opposition to gun control might lead one to social ostracism, job loss, unlawful government retaliation, or even violence. What's more, the Ordinance's particular brand of compelled speech does not merely have the unintended consequence of chilling contractors' support of and affiliation with NRA—that is the Ordinance's objective. Indeed, the Ordinance is *intended* to stigmatize those that would support the political speech of NRA in order to eliminate NRA's voice from public life. Certainly, the fear of losing a contract with the City for either having connections to NRA or for failing to disclose them may cause one to stop supporting NRA altogether. The chilling of this speech would ultimately cause NRA to lose necessary funding and possibly members. The loss of funding, sponsors, and members affects the amount of political speech NRA can make on its members' behalf—a fact not lost on the City:

> WHEREAS, the benefits and discounts the NRA arranges for its membership entices new members to join and existing members to renew their NRA membership. The millions of dollars generated from the new and renewed membership dues fund the NRA agenda of opposing legislative efforts throughout the country to adopt sensible gun regulations. The membership dues also finance the NRA's nationwide effort to repeal existing gun control measures and to diminish local and state government's ability to adopt sensible gun legislation.

Compl., Ex. 9 at 1.

At first glance, the Ordinance might appear narrowly drawn, targeting only a specific type of NRA "sponsor." But the requirement that potential contractors disclose any type of "contract" with NRA, Compl., Ex. 9 at 3, broadens the reach of the law to any agreement a potential contractor might have with NRA.

And because the City fails to define which NRA "contracts" must be disclosed, there's no telling what sorts of agreements individual contractors may fear require disclosure under the law—resulting in widespread self-censorship to prevent potential retribution from the City. *See Riley*, 487 U.S. at 794 ("[T]he 'chill and uncertainty' of disclosure requirements . . . might well 'encourage them to cease engaging in certain types' of First Amendment Activity.") Far from being narrowly tailored, the Ordinance regulates in the broadest terms. And, again, the City has no legitimate interest in such a pervasive compulsion of speech. *See supra* pp. 13-14.

Because the Ordinance imposes an ideological litmus test on contractors and unjustifiably compels their speech about political beliefs and associations, the Ordinance violates the fundamental right to free speech.

### 3. The Ordinance Violates the First Amendment Because It Retaliates Against Plaintiffs for Exercising Their Rights to Free Speech and Association

The government " 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit." *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). To state a claim for First Amendment retaliation, "the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct— i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (quoting *O'Brien v. Welty*, 818 F.3d 920, 933-34 (9th Cir. 2016)).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

One of NRA's important activities is to influence politics to the benefit of its members. The organization stands in the gap for its members who consistently find anti-gun advocacy groups placing pressure on those making political decisions for the communities in which they live and work. Every day, NRA represents the views of its members in the activities that it undertakes. And it relies on its members and supporters to do this work effectively. Threatening the livelihood of NRA's supporters by denying them government contracts as retribution for their associational ties to NRA is to threaten the livelihood of NRA as retaliation for engaging in political speech and expression with which the City disagrees. It is a textbook violation of the First Amendment.

Indeed, requiring the disclosure of any sponsorship of or contract with NRA as a precondition for being awarded a City contract can be expected to "chill a person of ordinary firmness" from continuing to associate with NRA through sponsorships or contracts, including paid membership in the organization. *O'Brien*, 818 F.3d at 933-34. On its face, the Ordinance makes clear that its intention is to harm NRA by diminishing access to funding from members, sponsors, and supporters that fuels NRA's political agenda. *See* Compl., Ex. 9 at 1-2.  Plaintiffs have alleged that the legislative history of the Ordinance proves that the City intends to boycott NRA-affiliated businesses. Compl. ¶¶ 34, 39. And Plaintiffs have alleged that the City, through motions, social media, and on-the-record comments, have disparaged NRA and its supporters and have expressed their disdain for the organization simply because it disagrees with the organization's pro-Second Amendment viewpoint. Compl. ¶¶ 35-35, 37. Plaintiffs have thus alleged a clear nexus between the Ordinance and the City's intent to chill Plaintiffs' speech and have asserted a valid claim.

The City does not dispute Plaintiffs' allegations of retaliation. Rather, it argues, again, only that the conduct the Ordinance targets is not constitutionally protected. Defs.' Mot. 15-16. For the same reasons explained above, the City is

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1    wrong. Thus, it cannot meet its burden to dismiss this claim.

2              **4.     The Ordinance Violates the Equal Protection Clause**

3            The Ordinance also violates the Equal Protection Clause by penalizing a

4    specific class of potential contractors based on their protected beliefs, expression, and

5    association without sufficient justification. "The Equal Protection Clause requires

6    that statutes affecting First Amendment interests be narrowly tailored to their

7    legitimate objectives." *Police Dep't of City of Chic. v. Mosley*, 408 U.S. 92, 101

8    (1972) (citing *Williams v. Rhodes*, 393 U.S. 23, 89 (1968)). Indeed, "[b]ecause the

9    right to engage in political expression is fundamental to our constitutional system,

10   statutory classifications impinging upon that right must be narrowly tailored to serve

11   a compelling governmental interest." *Austin v. Mich. Chamber of Commerce*, 494

12   U.S. 652, 666 (1990), *rev'd on other grounds*, *Citzs. United v. Fed. Elec. Comm'n*,

13   588 U.S. 310, 340 (2010). Because the Ordinance at issue intentionally discriminates

14   against NRA-affiliated contractors, forcing them alone to disclose their political

15   associations and because it is not narrowly tailored to any compelling governmental

16   interest, it violates equal protection.

17           The City argues that Plaintiff's Equal Protection claim should be treated as

18   "co-extensive" with the First Amendment claims and not as separate causes of action

19   because it is redundant of them. Defs.' Mot. 16-20. But "[c]onstitutional rights do not

20   exist in splendid isolation, hermetically sealed off from one another. To the contrary,

21   many constitutional rights are actively relational." Ashutosh Bhagwat, *The*

22   *Democratic First Amendment*, 110 NW. U. L. REV. 1097, 1099 (2016).

23           Freedom of speech and equal protection provide overlapping but distinctive

24   coverage for expressive activities. Timothy Zick, *Rights Dynamism*, 19:4 J. Constit.

25   Law, 791-860 (May 2017). Indeed, the Supreme Court has opted to review certain

26   speech related cases under an equal protection analysis. *Mosley*, 408 U.S. at 94.

27           Here, the Ordinance singles out potential contractors who are affiliated with

28   NRA—an organization for which the City has expressed its utter disdain—and

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

compels them to disclose that affiliation or lose contracts with the City. And, when they do disclose, they risk losing contracts *because* of that affiliation. In fact, the City's claims that there should be no fear by contractors that the disclosure would subject them to possible retribution because all contracts must go through the "lowest bidder" system outlines in the City Charter. The City fails to note that if contractors fail to submit to the disclosure required by the Ordinance, they may never get to that statutory process in the first place. Other contractors need not disclose their private affiliations to the City where those affiliations are political and have no connection to their contracts. Indeed, City contractors are allowed to participate in all kinds of political expression without having to disclose it, but those wishing to support NRA are branded with a scarlet letter. Plaintiffs allege that the City does not ask for this information from other contractors because they are targeting NRA to stop its influence in advocating for gun rights. Compl. ¶ 58. As described above, the City has no legitimate interest—let alone a compelling one—in the information it seeks or in discriminating against NRA-affiliated contractors in this way. *See supra* pp. 13-14. Because the City cannot prove that the Ordinance is narrowly tailored to serve a compelling government interest, its disclosure requirement violates equal protection and should be enjoined.

In any event, and perhaps most importantly, Plaintiffs' equal protection claim is not redundant of their First Amendment claims should the Court accept the City's argument that the Ordinance does not implicate First Amendment protected conduct. This is because the City has no rational basis for treating NRA affiliated contractors differently than any other City contractor that is not based on discriminating against NRA's viewpoint. The City does not suggest that NRA affiliated contractors pose a special threat to public safety or that they are incompetent at providing the services contracted for. Nor does the City suggest that its hiring a contractor with a relationship with NRA would cause the appearance of impropriety. To the contrary, the City has made clear it would be less inclined to do business with someone with

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

connections to NRA. Accordingly, regardless of all the above, the City simply cannot justify the Ordinance's singling out NRA-linked contractors for compliance with its disclosure mandate, even under the rational basis standard.

## CONCLUSION

For the reasons explained above, Plaintiffs have asserted valid claims against the Ordinance, under both the First and Fourteenth Amendments. Indeed, Plaintiffs are highly likely to prevail on each of these claims. Accordingly, the Court should deny the City's Motion to Dismiss and grant Plaintiffs' Motion for Preliminary Injunction. In the event the Court believes that Plaintiffs have failed to sufficiently plead any of their claims, Plaintiffs respectfully request leave to amend their complaint to address those deficiencies.

Dated: June 26, 2019                    **MICHEL & ASSOCIATES, P.C.**

                                        */s/ Anna M. Barvir*
                                        Anna M. Barvir
                                        Counsel for Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name:   *National Rifle Association, et al., v. City of Los Angeles, et al.*
Case No:         2:19-cv-03212 SVW (GJSx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Benjamin F. Chapman
Los Angeles City Attorney
200 N. Main St., Suite 675
Los Angeles, CA 90012
benjamin.chapman@lacity.org
  *Attorneys for Defendants*

I declare under penalty of perjury that the foregoing is true and correct.

Executed June 26, 2019.

*/s/ Laura Palmerin*
Laura Palmerin