C. D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Tiffany D. Cheuvront – SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Facsimile: 562-216-4445
cmichel@michellawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA; JOHN DOE,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, ERIC GARCETTI, in his official capacity as Mayor of City of Los Angeles; HOLLY L. WOLCOTT, in her official capacity as City Clerk of City of Los Angeles; and DOES 1-10,<br><br>Defendants. | Case No.: 2:19-cv-03212 SVW (GJSx)<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: July 22, 2019<br>Hearing Time: 1:30 p.m.<br>Courtroom: 10A<br>Judge: Hon. Stephen V. Wilson |

## INTRODUCTION

The City does not try to argue that the Ordinance survives heightened scrutiny. Instead, it asserts that the Ordinance does not implicate First Amendment activity because the law affects only *businesses* that contract with or provide business discounts to NRA or its members. But that description ignores the Ordinance's true scope, as well as the inherently expressive nature of NRA's advocacy that the Ordinance intentionally targets to diminish it.

The Ordinance does not only reach *businesses* interacting with NRA for economic purposes. It reaches *all* contracts with and sponsors of NRA, a membership organization whose main purpose is core First Amendment conduct: political advocacy. The Ordinance's definition of "sponsorship" includes political contributors, and its undefined term "contracts" sweeps up various relationships, including memberships. The First Amendment protects against disclosure of organizations' members and contributors, especially disfavored ones.

Even if the Ordinance were as narrow as the City contends, because it intentionally targets speech and expressive activity, not only does it implicate the First Amendment, but is subject to a facial challenge. Once it is established that the Ordinance affects First Amendment activity, the City has no defense—Plaintiffs necessarily prevail. And even if the City were correct that the Ordinance does not implicate First Amendment activity, it still violates the Equal Protection Clause because it is treating contractors, like Plaintiff Doe, differently than others with no rational basis for doing so that does not involve improperly targeting NRA's speech for negative treatment. Plaintiffs are thus likely to succeed on the merits.

Issuance of a preliminary injunction would stop the ongoing irreparable harm Plaintiffs suffer by having their constitutional rights violated, which vindication of constitutional rights will also benefit the public, while placing virtually no burden on the City. One should thus immediately issue precluding the City from enforcing the Ordinance pending final resolution of this matter.

# ARGUMENT

## I. Plaintiffs Assert Both Facial and As Applied Challenges

The City argues that Plaintiffs assert only facial challenges here. Defs.' Opp'n Mot. Prelim. Inj., ("Defs.' Opp'n") 5-6. It also argues that of the two types of facial challenges—unconstitutional in all applications or overbroad—Plaintiffs assert only the former. *Id*. at 6. The City is wrong on both scores.

**First**, while Plaintiffs do assert facial challenges, they repeatedly make clear in their complaint that they also challenge the Ordinance's impact as applied to specific contractors, including Plaintiff Doe. Compl. ¶¶ 4, 5, 6, 7, 56, 60-61, 65, 69-70, 83, 85-87, 92, 95, 101, 103, 105, 106, 110. Plaintiffs simply argue, as is common practice, that the Ordinance is facially unconstitutional but, in the case the Court disagrees, it is at least unconstitutional as applied to Plaintiff Doe. *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)).

**Second**, Plaintiffs assert both types of facial challenges. "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent* (1984) 466 U.S. 789, 801. As the complaint makes clear, Plaintiff NRA brings this lawsuit in defense of its countless supporters affected by the Ordinance. *See, e.g.*, Compl. ¶¶ 3-4, 30, 67. The Ordinance is also subject to facial challenge because, as explained, it intentionally targets Plaintiffs' speech for negative treatment in a way that chills association and speech. *See Foti*, 146 F.3d at 640.

## II. Plaintiffs Are Likely to Succeed on the Merits on All Claims

### A. The Ordinance Burdens Protected Speech and Expression

The City says that the "Ordinance does not require a potential City contractor to disclose whether it is a member or supporter of the NRA," but applies only to people "entering into contracts and providing business discounts." Defs.' Opp'n 7. The City argues that such is not speech, it is non-expressive conduct that does not

implicate First Amendment concerns. *Id*. But the City's narrow view of what activities trigger compliance is unsupported by the Ordinance's text. Compl., Ex. 9, at 3. And precedent contradicts the City's limited view of the First Amendment's reach.

It is well settled that both memberships in and contributions to political advocacy groups are expressive activities deserving of First Amendment protection. *See, e.g.*, *NAACP v. State of Alabama ex rel. Patterson* (*NAACP*), 357 U.S. 449 (1958); *Buckley v. Valeo,* 424 U.S. 1 (1976). The Ordinance requires any "Person"—which includes individuals—to disclose *all* "contracts with or Sponsorships of the NRA." Compl., Ex. 9 at 3. Because it does not define "contracts," the common meaning of that term applies. *United States v. Fitzgerald*, 882 F.2d 397, 398 (9th Circuit 1989). That brings within its reach all kinds of support for NRA, including memberships. *See Martin v. Town & Cty. Devel., Inc.*, 230 Cal. App. 2d 422 (1964).

Even if the Ordinance does not apply to NRA memberships, it contemplates at least some types of contributions to NRA. For example, if a "Person" entered into a contract with NRA to donate funds as long as the funds are used for a particular political issue or litigation, there is no reasonable interpretation of the Ordinance that would not require the person to disclose such an expressive contribution as a "contract" with NRA. "Sponsorships" could likewise constitute expressive contributions. That term is defined as "an agreement [with] the NRA to provide a discount to the NRA or an NRA member of the customary costs, fees or service charges for goods of services provided by the Person to the NRA or an NRA member." Compl., Ex. 9 at 3.  As alleged in the Complaint, some businesses "donate their employees' time to build the NRA's membership base and share information about NRA's programs and advocacy work." Compl. ¶ 27. This contribution meets the Ordinance's definition of "Sponsorship." One could also imagine a person giving NRA a discount on a product or service for the non-commercial purpose of saving NRA money to use for its advocacy. This is undeniably protected activity.

In any event, even if the State's description of the Ordinance as affecting only

non-expressive conduct is accurate, the Supreme Court has applied First Amendment scrutiny to laws "directed at activity with no expressive component," if they "impose a disproportionate burden upon those engaged in protected First Amendment activities." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 704 (1986) (citing *Minneapolis Star & Trib. Co. v. Minn. Comm'r of Rev.*, 460 U.S. 575 (1983)) (explaining that the Court struck down a tax "imposed upon a nonexpressive activity" because it burdened the press). The Ordinance has the inevitable (and intended) effect of curtailing their expressive activity about NRA advocacy. *See* Compl., Ex. 9. At minimum, it is reasonable to assume that because of the definitional issues described above, individual contractors may fear that their membership or contributions require disclosure under the Ordinance—potentially resulting in widespread self-censorship to prevent retribution from the City or its residents. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 794 (1988) ("[T]he 'chill and uncertainty' of disclosure requirements . . . might well 'encourage them to cease engaging in certain types' of First Amendment Activity.")

But that is not all. "Just as the 'inevitable effect of a statute on its face may render it unconstitutional,' a statute's stated purposes may also be considered." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011), (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)). The very case the City mainly relies on holds that "a facial freedom of speech attack must fail unless, at a minimum, the challenged statute is directed narrowly and specifically at expression or conduct commonly associated with expression." Defs.' Opp'n 7:18-8:3 (citing *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996)) (quotation marks omitted). By its express terms, the Ordinance seeks to target Plaintiffs' speech and expressive conduct. *See* Compl., Ex. 9. In fact, that appears to be its *sole* objective. *Id.* Specifically, in its preamble, the Ordinance identifies NRA's effectiveness in lobbying to further a specific viewpoint that the City opposes and draws the connection between the funding NRA members and "sponsors" provide NRA. *Id.* It then states City's residents, "deserve to know"

those facts, undeniably implying that the City wishes to expose those people to public condemnation to dissuade them from continuing to support NRA or risk losing business. *Id*. If the Court finds that either this purpose or effect is present here, the First Amendment is implicated.

### B. The Ordinance Violates Both the First Amendment and Equal Protection Clause

In mandating the disclosure of NRA supporters like Plaintiff Doe's political affiliations, the Ordinance violates constitutional rights under the doctrines of freedom of association, freedom of speech and from compelled speech, and equal protection under the law. "Freedoms such as these are protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." *Bates v. Little Rock*, 361 U.S. 516, 523 (1960) (challenging convictions under an ordinance that required disclosure of "names of organizations' members and contributors" that engaged in unpopular political advocacy). The City paints the Ordinance as merely regulating commercial contracts and sponsorships that do not enjoy First Amendment protections. As explained above, this is not an accurate description of the Ordinance. Instead, it is one of those subtle, but insidious, ploys governments develop to discriminate against speech and expression that the Supreme Court has warned about and disapproved of. *See Id*.

Not only is the Ordinance therefore subject to First Amendment review, but because it discriminates against a particular viewpoint, it is "presumptively unconstitutional and may be justified only if the [City] proves [it is] narrowly tailored to serve compelling state interests;" in other words, that it satisfies strict scrutiny. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015). The City does not even attempt to justify the Ordinance under even intermediate scrutiny, let alone strict. And the singling out of NRA affiliated contractors for negative treatment likewise violates their rights under equal protection. This is so even if the Court were to reject Plaintiffs' First Amendment claims. For the City has no rational basis for treating

NRA-affiliated contractors differently than other contractors that is unrelated to their viewpoint.

### 1. The Ordinance Violates the Right to Free Association

The City argues that there is no associational right to contract or offer business discounts. Defs.' Opp'n 9-12. While such relationships need not enjoy First Amendment protection, that does not mean they never can. Indeed, as explained above, the sorts of "contracts" and "sponsors" contemplated by the Ordinance include the undeniably expressive activities of membership in and contributions to an advocacy group. The City focuses on businesses, even going so far as to say that the Ordinance does not require Plaintiff Doe—as owner of a business contracting with the City that also supports NRA—to disclose his NRA membership. *Id*. at 11, n. 8. But the City sees only what it wants in the Ordinance, not what is there. For the Ordinance's term "Subsidiary" expressly includes any "individual," as being among those subject to its requirements. Compl., Ex. 9.

The City's attempt to distinguish the cases Plaintiffs rely on likewise fails. While they involve different facts—individuals forced to disclose all affiliations or organizations forced to disclose membership lists—their reasoning fits naturally here. As the City explains, compelled disclosure was problematic in those cases because it was "likely to affect adversely" peoples' ability to "pursue their collected effort to foster beliefs." Defs' Opp'n 12:1-3 (citing *NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958). Just like the disclosure requirement in *NAACP*, the clear result (if not the very purpose) of the Ordinance is to "induce members to withdraw from the [NRA] and dissuade others from joining it because of fear of exposure of their beliefs." 357 U.S. at 464. And, just like *NAACP*, under these circumstances, the disclosure requirement amounts to a "substantial restraint" on the right to freedom of association. *Id.* at 462.

The First Amendment thus applies here, and it does not permit the intentional exposure of public contractors' affiliations because of their views without an extremely good reason to do so. The City has no such reason.

### 2. The Ordinance Violates the Right to Free Speech

The City again argues that the First Amendment is not implicated here because the First Amendment does not protect entering into contracts and discounts. *See* Defs.' Opp'n 12-14. But as explained above, the First Amendment is implicated because, at minimum, the stated purpose and the inevitable effect of the Ordinance is to harm NRA's ability to engage in expressive activity because of its viewpoint. *See Sorrell*, 564 U.S. at 565. Because the City has no justification for the Ordinance that would satisfy even intermediate scrutiny, if the Court finds that the First Amendment applies, the Ordinance necessarily fails.

### 3. The Ordinance Unlawfully Compels Speech

The City does not dispute that *McIntyre v. Ohio Election Commission* 514 U.S. 334 (1995) holds that a speaker's right to anonymity is protected. Instead, it argues that is only the case when the First Amendment protects the speech being compelled. *See* Defs.' Opp'n 14-17. While the City is correct on that score, it errs when arguing that the Ordinance does not compel First Amendment protected speech. Indeed, as explained above, the Ordinance undeniably reaches at least some contributions made to NRA to support its political advocacy efforts. And, as the City itself concedes, not only are contributions to organizations for political purposes protected from disclosure under the First Amendment, but such disclosures are subject to the most exacting scrutiny. *Id.* at 16-17 (citing *Buckley,* 424 U.S. at 60-72; *Doe v. Reed*, 561 U.S. 186, 194-95 (2010); *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 234 (1977)). The City does not even attempt to justify the Ordinance under that standard.

### 4. The Ordinance Unlawfully Retaliates Against People for Exercising Their First Amendment Rights

The City argues that the Ordinance does not retaliate against a potential contractor or NRA because of pro-gun speech, or any speech. Defs.' Opp'n 17-18. It claims that the Ordinance merely requires a potential contractor to disclose any contract it has with or discount it provides to NRA and that the Ordinance causes no

boycott of NRA. Defs.' Opp'n at 17 & n.11. But that raises the question, then, what is the purpose of the Ordinance, if not to harm contractors affiliated with NRA and thus NRA itself? Of course, the City provides no alternative explanation for its purpose, because there is none. The Ordinance, on its face, targets NRA and its supporters because of their viewpoint and related speech. That the First Amendment does not tolerate. *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

### 5. The Ordinance Violates the Equal Protection Clause

The City contends that Plaintiffs' equal protection claim is duplicative of their First Amendment claims. Defs.' Opp'n 4:3-4, 5:25-7:2. But the City simultaneously argues that the Ordinance does not even implicate the First Amendment. Defs.' Opp'n 7:3-18:2, The City cannot have it both ways. Either the City is wrong, and the Ordinance implicates First Amendment protected activity—in which case Plaintiffs necessarily prevail for the reasons explained above. Or the City is correct—in which case Plaintiffs' equal protection claim is not duplicative. If the latter, Plaintiffs should prevail because the City has no rational basis for treating NRA-affiliated contractors differently than any other City contractor that is not based on discriminating against NRA's viewpoint. The City does not suggest that NRA-affiliated contractors pose a special threat to public safety or that they are incompetent at providing the services contracted for.

## III. The Remaining Factors Weigh Heavily in Favor of Preliminary Relief

### A. If Plaintiffs Are Likely to Prevail on Their Constitutional Claims, They Have Necessarily Proven Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005). So if the Court agrees that Plaintiffs have shown a likelihood of success on the merits here, Plaintiffs have necessarily met

this factor. The City presents nothing to rebut that presumption.

First, the City's argument that Plaintiffs have alleged only some "speculative injury" related to the "terminat[ion of] a contract with NRA, in order to secure a contract with the City," Defs.' Opp'n 22: 7-9, entirely misses point. Plaintiffs need not prove that people have already " 'end[ed] their relationships with NRA, reducing NRA's funding and support.' " Defs.' Opp'n 22:4-7 (quoting Pls.' Mot. Prelim. Inj. 10:13-15). The irreparable harm is *not* the draining of NRA's financial resources. And the loss of supporters is not the relevant harm either. Instead, the harm is the very violation of Plaintiffs' (and all contractors') rights to be free from the insidious (and discriminatory) compelled membership disclosure that the City requires. That alone "unquestionably constitutes irreparable injury." *Melendres*, 695 F.3d at 1002.

Second, the City claims that Plaintiffs' "lengthy delay" in bringing this motion undercuts their claim of irreparable harm—apparently to the point of negating the ongoing and irreparable harm to Plaintiffs' constitutional rights. Opp'n 23:12-13.[1] The City relies on just two cases denying *TROs* and neither affirms the denial of a motion to enjoin an *unconstitutional* law. Defs.' Opp'n 23:14-17. Here, the harm is the ongoing violation of Plaintiffs' rights. And because "delay" in bringing a motion for preliminary injunction is but "a factor to be considered," *Lydo Enterps., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984), the brief time it took to get a motion on file is not cause to deny Plaintiffs the relief they seek, *see id.* (holding that a *five-year delay* weakened claim of irreparable harm and observing that, even then, the court is "loath to withhold relief solely on that ground").

Finally, the City attempts (unsuccessfully) to distance this case from the many binding authorities that hold that a violation of the First Amendment necessarily constitutes irreparable harm. Defs.' Opp'n 24:11-22. Its only argument is that the observation in *Klein v. City of San Clemente*, 584 F.3d at 1208, that "[w]hen the

---

[1] Plaintiffs did *not* wait "more than **three months**" to bring this motion. Defs.' Opp'n 23:20. The Ordinance, though it was signed on February 18, 2019, did not go into effect until April 1. Plaintiffs filed this motion less than two months later.

9
REPLY TO OPP'N TO PLAINTIFFS' MOTION FOR PRELIM INJUNCTION

burdened expression is political, 'the harm is particularly irreparable' " does not apply because "the Ordinance does not address political speech." Defs.' Opp'n 24:11-12, 24:20-22. But even if none of the speech at issue were political, that would only mean that the harm is not "*particularly* irreparable," *Klein*, 584 F.3d at 1208, not that it does not constitute irreparable harm at all.

### B. The Balance of Harms and the Public Interest Factors Tip Heavily in Plaintiffs' Favor

The City would have this Court believe that because "Plaintiffs seek to enjoin a duly enacted law passed by the representatives of the City's residents," Plaintiffs cannot establish that the remaining preliminary injunction factors weigh in their favor. Defs.' Opp'n 24:5-17. Not so. Though the Court should not exercise its authority to enjoin a "duly enacted" law lightly, when the law at issue violates the constitutional rights of the People, the Court properly enjoins it. Such is the well-established law of this circuit. *Ashcroft v. ACLU*, 542 U.S. 656, 664-65 (2004); *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014); *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002). What's more, the City has presented no evidence that it would be harmed by an injunction. In fact, the City has effectively conceded that it has no legitimate interest in the enforcement of the Ordinance at all—let alone one that would outweigh the constitutional rights of Plaintiffs and all those like them.

### CONCLUSION

For these reasons, and those examined in Plaintiffs' motion for preliminary injunction and opposition to the City's motion to dismiss, the Court should grant Plaintiff's request for preliminary relief and deny the City's motion to dismiss.

Dated: July 8, 2019                               **MICHEL & ASSOCIATES, P.C.**

*s/ Anna M. Barvir*
Anna M. Barvir
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *National Rifle Association, et al., v. City of Los Angeles, et al.*
Case No:      2:19-cv-03212 SVW (GJSx)

IT IS HEREBY CERTIFIED THAT:

   I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

   I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Benjamin F. Chapman
Los Angeles City Attorney
200 N. Main St., Suite 675
Los Angeles, CA 90012
benjamin.chapman@lacity.org
   *Attorneys for Defendants*

   I declare under penalty of perjury that the foregoing is true and correct.

Executed July 8, 2019.

                                                              *s/ Laura Palmerin*
                                                              Laura Palmerin