## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**     IN CHAMBERS ORDER GRANTING PRELIMINARY INJUNCTION [19] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [15]

The National Rifle Association ("NRA") and John Doe (together "Plaintiffs") bring this action for declaratory relief and a preliminary injunction against the City of Los Angles ("City"), Eric Garcetti ("Garcetti") in his official capacity as Mayor of Los Angeles, and Holly L. Wolcott ("Wolcott") in her official capacity as City Clerk (together "Defendants"). Defendants have moved to dismiss the complaint and have opposed the preliminary injunction.

This Court heard oral argument on Defendants' motion to dismiss on August 12, 2019. Dkt. 29. At the hearing, the Court orally denied the motion to dismiss. Dkt. 33. This Order supersedes that denial. Defendants' motion to dismiss is DENIED in part and GRANTED in part. Oral argument on Plaintiffs' motion for preliminary injunction was noticed by this Court for September 9, 2019, but the Court vacated the hearing and took the matter under submission. Dkt. 32. For the reasons stated below, the preliminary injunction is GRANTED.

## I.     Factual Background

The NRA is a "membership organization" which "provides firearm safety training, recreational and competitive shooting matches . . . and school safety programs." Dkt. 19-1 at 1–2. The NRA also engages in extensive political advocacy to promote "its mission to protect the individual right to keep and bear arms . . . ." *Id.* The NRA is a national organization with "millions of members residing throughout the United States," and it "relies on member dues, sponsorships, and other contributions from businesses

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

and individuals" to continue its operations. *Id.* To incentivize and reward membership, the "NRA has a stable of sponsors that range from large corporations offering discounts to members to smaller, local retailers who donate their employees' time . . . ." *Id.* Plaintiff John Doe is a business owner in California who has allegedly "maintained contracts with the city of Los Angeles" in the past. Plaintiff Doe is also a "member and supporter of the NRA," and he alleges that he "wishes to continue bidding for and obtaining" City contracts in the future. *Id.*

On February 12, 2019, the City passed City Ordinance No. 186000 ("Ordinance"), which took effect on April 1, 2019. Dkt. 15 at 2–3. The Ordinance requires "a prospective contractor of the City to disclose all contracts with or sponsorship of the National Rifle Association." Dkt. 1-9 at 1. The Ordinance begins with a preamble discussing the history of the NRA's pro-firearm advocacy and "the increasing number of mass shootings throughout the country . . . ." *See* Dkt. 1-9 at 1–2. The Ordinance then continues:

[T]he City of Los Angeles has enacted ordinances and adopted positions that promote gun safety and sensible gun ownership. The City's residents deserve to know if the City's public funds are spent on contractors that have contractual or sponsorship ties with the NRA. Public funds provided to such contractors undermines the City's efforts to legislate and promote gun safety. . . .

*Id.* at 2. Finally, the Ordinance concludes its preamble by requiring "those seeking to do business with the City to fully and accurately disclose any and all contracts with or sponsorship of the NRA." *Id.*

Plaintiffs have challenged the Ordinance as an unconstitutional abridgement of their First and Fourteenth Amendment rights. *See* Dkt. 1. Plaintiff Doe alleges that he is "afraid to come forward to participate" in this action because he "fears retribution from the City and the potential loss of lucrative contracts . . . ." Dkt. 1 at 3. The NRA alleges that the Ordinance will unjustly cut off "revenue streams necessary for the NRA to continue engaging in protected speech and association" by discouraging membership and stigmatizing business relationships and sponsorships with the NRA. *Id.* Plaintiff Doe, on behalf of himself of other potential contractors, alleges that his "rights of free speech and association are being chilled, as the Ordinance forces [him] to choose between their political beliefs and placating the City to secure work with the City." *Id.* at 13. Plaintiff Doe has made this allegation anonymously through the sworn declaration of his attorney. *See* Dkt. 19-6. Defendants have never contested the sincerity or authenticity of Doe's declaration, and no evidentiary hearing was requested by either party. For the purposes of this motion, the Court accepts the Plaintiffs' factual assertions as true.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

**II.   Legal Standard**

    **a.   Preliminary Injunction**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008) ("*Winter*"). Under *Winter*, a plaintiff "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (applying *Winter*, 555 U.S. at 29) ("*Winter* factors").

In considering the likelihood of success on the merits, the district court is not strictly bound by the rules of evidence, as the "preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Because of the extraordinary nature of injunctive relief, including the potential for irreparable injury if not granted, a district court may consider evidence outside the normal rules of evidence, including: hearsay, exhibits, declarations, and pleadings. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). "The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed . . . at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115–16 (9th Cir. 2011).

    **b.   Motion to Dismiss**

Under Rule 12(b)(6), a motion to dismiss challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). The plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### c.  Constitutional Challenge

The parties contest whether the Plaintiffs have mounted a facial or as-applied challenge to the Ordinance: Defendants argue Plaintiffs are only capable of raising a facial challenge. Dkt. 15 at 5. Plaintiffs assert that they have raised both a facial and as-applied challenge. Dkt. 24 at 5.

To assert an as-applied challenge in the First Amendment context, the Plaintiffs must show "the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). The Ordinance applies exclusively to potential contractors who have contracts or sponsorship with the NRA, so it is not clear the Ordinance would or could constitutionally affect anyone except the NRA and its business partners. Establishing an as-applied challenge to this Ordinance requires a circular argument—because the Ordinance facially requires disclosure of "any and all contracts or sponsorship of the NRA," any application of the Ordinance necessarily only applies to potential contractors who have those connections. Dkt. 1-9 at 3. Plaintiffs cannot raise an as-applied challenge without challenging the facial validity of the Ordinance.

Plaintiffs must therefore mount a facial challenge. "An ordinance may be facially unconstitutional in one of two ways: either [ ] it is unconstitutional in every conceivable application, or [ ] it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1271 (9th Cir. 2017) (internal quotation marks omitted). Plaintiffs do not argue that the Ordinance is vague or overbroad; they argue it is incapable of constitutional application to any party. Dkt. 1 at 13. This is a facial challenge, and the protected activity is Plaintiffs' pro-firearm political speech. *See Foti*, 146 F.3d at 635 ("the ordinance could never be applied in a valid manner because it . . . impermissibly restricts a protected activity.").

Although facial attacks are generally disfavored because they "threaten to short circuit the democratic process," *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

(2008), facial attacks under the First Amendment are given more permissive consideration. "It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma*, 413 U.S. 601, 612–13 (1973); *see Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir. 1997). "In the First Amendment context, a party bringing a facial challenge need show only that 'a substantial number of [a law's] applications are unconstitutional . . . .'" *Knox v. Brnovich*, 907 F.3d 1167, 1180 (9th Cir. 2018) (citing *U.S. v. Stevens*, 559 U.S. 460, 473 (2010)).

### III.    Discussion of Preliminary Injunction

Plaintiffs seek a preliminary injunction of the Ordinance because it violates their First and Fourteenth Amendment rights. "A party can obtain a preliminary injunction by showing that (1) it is 'likely to succeed on the merits,' (2) it is 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [its] favor,' and (4) 'an injunction is in the public interest.'" *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("*VidAngel*") (quoting *Winter*, 555 U.S. at 20). In analyzing the Plaintiffs' First Amendment claims for the protection of free speech and association, the *Winter* factors weigh in favor of granting a preliminary injunction. Because the preliminary injunction is granted on the basis of the Plaintiffs' First Amendment speech and association claims, the Court does not fully analyze the likelihood of success for the remaining claims.

#### a.    Likelihood of Success of the Merits

The Ninth Circuit considers the "likelihood of success on the merits" as "the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors." *VidAngel, Inc.*, 869 F.3d at 856 (internal quotation marks omitted). However, even if likelihood of success is not established, "[a] preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Id.* (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)).

##### i.    First Amendment Speech Claims

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

speech, or of the press; or the right of the people peaceably to assemble . . . ." U.S. Const. amend. I.
"The First Amendment, applied to states through the Fourteenth Amendment, prohibits laws abridging
the freedom of speech." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1193 (9th Cir. 2018)
(internal quotation omitted). In effect, "the First Amendment means that government has no power to
restrict expression because of its message, its ideas, its subject matter, or its content." *United States v.
Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)).

 The first task is to determine whether the Ordinance implicates the First Amendment at all. "If
the government's actions do not implicate speech protected by the First Amendment, we need go no
further." *Animal Legal Def. Fund*, 878 F.3d at 1194 (internal quotation mark omitted). A restriction on
"nonspeech, nonexpressive conduct . . . does not implicate the First Amendment" and receives rational
basis scrutiny. *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019). In
contrast to nonexpressive conduct, "expressive conduct is considered speech and implicates the First
Amendment." *Vivid Entm't, LLC v. Fielding*, 965 F. Supp. 2d 1113, 1124 (C.D. Cal. 2013), *aff'd*, 774
F.3d 566 (9th Cir. 2014). Conduct "sufficiently imbued with the elements of communication" is
expressive—sometimes called "symbolic speech"—and is analyzed under intermediate scrutiny.
*Roulette v. City of Seattle*, 97 F.3d 300, 302–03 (9th Cir. 1996); *see Wilson v. Lynch*, 835 F.3d 1083,
1095–96 (9th Cir. 2016) ("intermediate scrutiny applies when a law is directed at the non-
communicative portion of conduct that contains both communicative and non-communicative
elements."). Finally, a law that is intended to regulate speech based on its content or the viewpoint of
the speaker is "presumptively unconstitutional and may be justified only if the government proves that
they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct.
2218, 2226 (2015) ("*Reed*").

 The question before this Court is whether a disclosure requirement is a content-based regulation
of speech when the government imposes the requirement with the intent to restrict the political speech of
an activist organization and its supporters. Based on the binding precedent of the Supreme Court and the
Ninth Circuit, for the reasons explained below, the Court holds the Ordinance is content-based and
therefore subject to strict scrutiny.

**1. Nonexpressive Conduct**

 The City's primary contention is that the Ordinance only regulates nonexpressive conduct— "the
right to enter into a contract with the NRA or to provide a business discount to the NRA of its
members." Dkt. 15 at 7 (emphasis removed). Generally, regulations on nonexpressive conduct do not

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

implicate the First Amendment. *See Arcara v. Cloud Books*, 478 U.S. 697 (1986) (closing a book store to enforce anti-prostitution laws did not implicate the First Amendment); [1] *Roulette*, 97 F.3d at 300 (ordinance banning sleeping on sidewalks regulated nonexpressive conduct and did not implicate the First Amendment); *Diamond S.J. Enter., Inc. v. City of San Jose*, No. 18-CV-01353-LHK, 2019 WL 2744700 (N.D. Cal. July 1, 2019) (First Amendment was not implicated when the city suspended the license of a nightclub following a shooting).

By claiming the Ordinance is a regulation of nonexpressive conduct, the City misframes the Ordinance in two key ways. First, it might be true that "contracts or sponsorship" are nonexpressive conduct, but that is not the pertinent question in this case. Dkt. 1-9 at 3. The City is not regulating "contracts or sponsorships"—it is compelling *disclosure* of "contracts or sponsorship" with the NRA. *Id.* A disclosure requirement is not a regulation of nonexpressive conduct, even if the underlying conduct is assumed to be nonexpressive.[2]

Second, even if the City is regulating conduct or speech unprotected by the First Amendment, the Ordinance will still be subject to strict scrutiny if it discriminates on the viewpoint of the messenger. *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 384 (1992) ("the government may proscribe libel; but it may not make the further content discrimination of proscribing only libel critical of the government."); *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1277 (9th Cir. 2017) ("A regulation engages in viewpoint discrimination when it regulates speech based on the specific motivating ideology or perspective of the speaker."); *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 823 (9th Cir. 2013) ("a content-based law to target individuals for lighter or harsher punishment because of the message they convey while they violate an unrelated traffic law . . . implicates the First Amendment."). Because the Ordinance is already subject to strict scrutiny as a content-based regulation of speech, there is no need to determine if the Ordinance also engages in viewpoint discrimination.[3]

---

[1] Significantly, *Arcara* holds "[l]aws aimed only at conduct not traditionally associated with speech, *without the intent to effect speech*, are given rational basis scrutiny even if they have an incidental impact on speech." *Arcara*, 478 U.S. at 706 (emphasis added). The City's intent in passing the Ordinance is discussed *infra* Part III.a.i.4.

[2] As discussed *infra* Part III.a.ii, disclosure requirements that burden First Amendment rights are analyzed under "exacting scrutiny." *Americans for Prosperity Found. v. Becerra*, 903 F.3d 1000, 1008 (9th Cir. 2018). Because this law is a content-based regulation of speech, discussion of the disclosure requirement under exacting scrutiny is a separate and independent ground for granting the preliminary injunction.

[3] Viewpoint discrimination is a particularly "blatant" and "egregious" subset of "content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). Although conceptually similar to the analysis for viewpoint discrimination, this Order examines the City's "intent" or "purpose" in passing the Ordinance to determine if the Ordinance

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

Although the City maintains that "contracts or sponsorship" implicated by the Ordinance are nonexpressive conduct, Dkt. 33 at 7–9, 23–25; Dkt. 15 at 1–2, 6–10, that characterization is not determinative of the constitutionality the Ordinance. The Ordinance does not *regulate* contracts or sponsorship—the Ordinance forces *disclosure* of contracts or sponsorship with the NRA. The Ordinance is therefore not a restriction on nonexpressive conduct.

## 2. Symbolic Speech and Expressive Conduct

Although the parties cite to cases applying intermediate scrutiny, neither party argues for the application of intermediate scrutiny here. The Court has found no authority to indicate that a disclosure requirement should be subject the same intermediate scrutiny used to analyze regulations of expressive conduct. The Court does not apply intermediate scrutiny at this time.

## 3. Content Based Regulations of Speech

Plaintiffs claim the Ordinance "regulate[s] speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995); *see* Dkt. 19 at 11. According to Plaintiffs, the Ordinance was enacted with the primary (if not solitary) purpose of punishing the disfavored speech of the NRA. Dkt. 19 at 13. Laws that regulate speech based on the message it conveys are considered "content-based," and are "presumptively invalid." *Hoye v. City of Oakland*, 653 F.3d 835, 853 (9th Cir. 2011) (citing *R.A.V.*, 505 U.S. at 382). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226.

A law can be content-based in several ways. First, a law may make "facial distinctions based on a message . . . defining regulated speech by particular subject matter." *Id.* at 2227. Second, a law may be "more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on

---

is content-based—if it was "adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Reed*, 135 S. Ct. at 2227 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Viewpoint discrimination is typically only invoked when the government is permitted to regulate content but not permitted to favor or disfavor a "specific motivating ideology or . . . opinion or perspective" within the regulated content. *Rosenberger*, 515 U.S. at 829. Here, the City is not necessarily discriminating within unprotected speech—it is collaterally attacking disfavored speech via a disclosure requirement.

| Initials of Preparer | : |
|---|---|
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Id.* at 2227. Finally, there is "a separate and additional category of laws . . . that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys . . .'." *Reed*, 135 S. Ct. at 2227 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

The Ordinance does not facially restrict speech based on its content or message; however, it requires disclosure from a select group of people who have "contracts or sponsorship" agreements with the NRA. Dkt. 1-9. Although the Ordinance is facially content-neutral, it will still be subject to strict scrutiny if it was adopted because of the City's disagreement with the message of the NRA's speech. *See also Ward*, 491 U.S. at 791 ("The government's purpose is the controlling consideration."); *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 819 (9th Cir. 2013) ("A regulation is content-based if either the underlying purpose of the regulation is to suppress particular ideas"); *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 778 (9th Cir. 2011) ("The Supreme Court has said that the principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of agreement or disagreement with the message it conveys.") (internal quotation marks omitted). Because the Ordinance is not facially content-based, we must examine why the City adopted the Ordinance to determine if it is subject to strict scrutiny.

### 4.  **Intent to Suppress Speech**

In this case, the text of the Ordinance, the Ordinance's legislative history, and the concurrent public statements made by the Ordinance's primary legislative sponsor evince a strong intent to suppress the speech of the NRA. Even though the Ordinance only forces disclosure of activity that may not be expressive, the clear purpose of the disclosure is to undermine the NRA's explicitly political speech. We agree with the City that the Ordinance does not appear to regulate speech directly, but a collateral attack on speech is an attack nonetheless. The City adopted the Ordinance "because of disagreement with the message" of the NRA and with the explicit intent to suppress that message—the Ordinance should therefore be considered a content-based regulation of speech. *Reed*, 135 S. Ct. at 2227.

#### a.  **Text of the Ordinance**

To discover the City's intent, the Court need look no further than the text of the Ordinance. The Ordinance's preamble displays a clear animus both towards the NRA and its message. The Ordinance

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

begins by recounting several mass-shootings that have occurred in the past decade, including: "the Sandy Hook Elementary School shooting," the shooting at the "outdoor concert in Las Vegas," the "shooting inside a synagogue in Pittsburg, Pennsylvania," and finally, "[t]he most recent local mass shooting . . . inside a Thousand Oaks' restaurant . . . ." Dkt. 1-9 at 1. The Ordinance then continues to explain that "the National Rifle Association (NRA) has sought to block sensible gun safety reform at every level of government across the nation. The NRA's influence is so pervasive in Congress that no national gun safety legislation has been enacted since the 1994 assault weapons ban, a ban that expired in 2004 . . . ." Dkt. 1-9 at 1. The clear implication from the preamble of the Ordinance is that the NRA is at least partially responsible for the mass shootings because of its continued advocacy for lax gun-safety laws. The City has provided no explanation for this text outside of its stated interest in transparency.

The Ordinance then states precisely how the City intends to undermine the NRA's ability to engage in pro-firearm advocacy, noting that "in 2015, the NRA collected $163 million in membership dues." *Id.* These "membership dues fund the NRA agenda of opposing legislative efforts throughout the country to adopt sensible gun regulations." *Id.* In essence, the Ordinance implies a causal connection between NRA membership dues and mass shootings. Continued membership in the NRA provides funding to the NRA; this funding creates more pro-gun advocacy which in turn creates laxer gun regulations which in turn leads to more mass-shootings. The Ordinance then further connects this causal chain to its disclosure requirement. "The City's residents deserve to know if the City's public funds are spent on contractors that have contractual or sponsorship ties with the NRA" because "funds provided to such contractors undermines the City's efforts to legislate and promote gun safety[.]" *Id.* The City asserts that granting City contracts to contractors with business ties to the NRA invariably creates more NRA membership, which leads to more pro-gun advocacy, laxer gun laws, and inevitably more mass shootings. Even if this chain of logic was supported by fact,[4] the City is not permitted to restrict political speech as a means of achieving its goal of safer cities.

To justify the required disclosure, the Ordinance states an interest in "promot[ing] gun safety and sensible gun ownership."[5] It is undisputed that the City has a strong interest in protecting its citizens, but this Ordinance has no relationship to achieving that interest. Assuming stricter guns laws would increase the safety of the citizens of Los Angeles, the Ordinance demonstrates an intent to restrict the NRA's ability to *advocate* against those laws. Because the Ordinance's clear purpose is to stifle the message of

---

[4] The City has provided nothing to demonstrate the causal connection between pro-firearm speech and mass shootings.

[5] The City did not make a "public safety" argument at the hearing. *See* Dkt 33. In its briefs, the City only addressed public safety once in passing. *See* Dkt. 15 at 15.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

the NRA, it is a content-based regulation of speech and subject to strict scrutiny.

### b.  **Legislative History**

The admissibility of the legislative history of the Ordinance as presented is uncontested. Dkt. 33 at 19–20. Review of the legislative record further confirms the Ordinance was adopted because of a disagreement with the NRA's message. When considering the constitutionality of an otherwise-valid statute, courts will not typically look to statements of individual legislators to invalidate the law. *See O'Brien*, 391 U.S. at 384 ("[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.").

In determining whether a law is content-based, however, the district court must consider if the law is *intended* to stifle a particular form of speech. *See Ward*, 491 U.S. at 791 ("The principal inquiry in determining content neutrality, in speech cases generally . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."); *Recycle for Change v. City of Oakland*, 856 F.3d 666, 673 (9th Cir. 2017) ("we must also ask whether there is evidence that [the City] passed the Ordinance with an intent to burden [Plaintiff's] message."). In that context, it is appropriate for the Court to consider the legislative record of the Ordinance to determine the City's purpose in enacting it. *See Recycle for Change*, 856 F.3d at 674 (examining the City Council's motive for enacting an unattended-donations ordinance and emphasizing that there was no "evidence in the record that anyone in the Oakland City Council disagreed with RFC's message"); *Doe v. Harris*, 772 F.3d 563, 576 (9th Cir. 2014) (finding the law content-neutral, in part because "nothing in the Act suggests that the Act's purpose was to disfavor any particular viewpoint or subject matter"). In considering a preliminary injunction, a district court may look beyond the typical pleadings of a motion to dismiss. *Johnson*, 572 F.3d at 1083. In this case, statements on the legislative record are probative of the City's purpose in adopting the Ordinance.

The legislative record of the Ordinance reveals a clear attempt to cut off revenue to the NRA because of its pro-firearm advocacy. On March 28, 2018, City Councilmember Mitch O'Farrell ("O'Farrell") motioned the City to "rid itself of its relationships with any organization that supports the NRA." Dkt. 1-2 at 2. He further moved that the Chief Legislative Analyst "report back with options for the City to immediately boycott those businesses and organizations" that do business with the NRA "until their formal relationship with the NRA ceases to exist." *Id.* In September of 2018, as a means of achieving the goals stated in his previous motion, O'Farrell moved the City "to prepare and present an

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

ordinance directing any prospective contractor with the City of Los Angeles to disclose, under affidavit: (1) any contracts it or any of its subsidiaries has with the National Rifle Association; and (2) any sponsorship it or any of its subsidiaries provides to the National Rifle Association." Dkt. 1-1 at 2. This motion formed the foundation of the present Ordinance. O'Farrell's motion for the City to "rid itself" of the NRA is a direct precursor to the present disclosure requirement in the Ordinance. Dkt. 1-2.

In this context, O'Farrell's off-the-record statements further confirm an overwhelming intent to suppress the message of the NRA.[6] Through his verified Twitter account, O'Farrell wrote:

"The @NRA "assault weapons everywhere" agenda can and will be challenged in the City of Los Angeles. It's time for action. @WAGV @MomsDemand @Bradybuzz @eqca @shannonrwatts" Mitch O'Farrell (@MitchOFarrell), Twitter (Mar. 28, 2018, 2:20 PM), https://twitter.com/MitchOFarrell/status/979105947632123904.

"My #NRA disclosure motion passed unanimously in Budget & Finance committee today. TY Chair @PaulKrekorian for your partnership. Next up; full City Council to draft the Ordinance. @WAGV @Bradybuzz @Everytown @MomsDemand @sandyhook." Mitch O'Farrell (@MitchOFarrell), Twitter (Oct. 1, 2018, 6:27 PM), https://twitter.com/MitchOFarrell/status/1046934711761850368.

"And by the way, @amazonprimenow @AppleTV @Google -isn't it time to end your relationship with @NRATV & stop aiding and abetting their violent, extremist rhetoric?" Mitch O'Farrell (@MitchOFarrell), Twitter (Oct. 24, 2018, 11:19 AM), https://twitter.com/MitchOFarrell/status/1055161837224783872.

"I told @FedEx executives earlier this year, 'there is no high road in doing business with the @NRA." Mitch O'Farrell (@MitchOFarrell), Twitter (Oct. 31, 2018, 11:35 AM), https://twitter.com/MitchOFarrell/status/1057702716045058048.

---

[6] At oral argument, the parties agreed O'Farrell's statements were accurately represented in the record. Dkt. 33 at 20–21. Per Federal Rule of Evidence 201(b)(2), a "court may take judicial notice of a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be questioned." The Court therefore takes judicial notice of O'Farrell's statements via his verified Twitter account. *See Hawaii v. Trump*, 859 F.3d 741, 773 n.14 (9th Cir. 2017) (taking judicial notice of President Trump's tweets regarding the Travel Ban), *vacated on other grounds*, 138 S. Ct. 377 (2017).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

*See also* Dkt. 1-3 at 2–32. O'Farrell's statements reinforce an already robust record of anti-NRA animus. The face of the Ordinance, the legislative history of its passage, and the statements of its primary legislative advocate all demonstrate an intent to suppress the political speech of the NRA.

### c.   City's Interest

In response to this record, the City contends it has a valid interest in disclosure for disclosure's sake—the Ordinance is a so-called "sunshine law." Dkt. 33 at 9. In support of its contention, the City directs the Court to the Los Angeles City Charter ("Charter") § 371, *Competitive Bidding: Competitive Sealed Proposals*, Dkt. 17-1. By the City's characterization, the Charter binds the City to "accept the lowest bid for a contract, subject to a few exceptions that are not relevant here." Dkt. 23 at 4. Our review of the Charter confirms the City's contention, at least facially, as the Charter provides: "[c]ontracts shall be let to the lowest responsive and responsible bidder furnishing satisfactory security for performance." Dkt. 17-1 at 1. The gravamen of the City's contention is that it is incapable of discrimination against the NRA because it is bound to accept the lowest conforming bid for City contracts. The fact that the Charter requires the City to accept compliant bids does not immunize subsequent regulations from First Amendment challenges: the question is whether the Ordinance is intended to chill the bidding of NRA-affiliated contractors. Plaintiff Doe maintains he and other potential contractors are chilled from engaging in the bidding process because they are reluctant to reveal business ties with the NRA for fear of the stigma the City may attach to their bids and future business ventures. Dkt. 1 at 3. The legislative record establishes Doe's fear of hostility is well-founded. It is well-established that the danger of content-based laws is not only in their legal consequences but also in the preemptive self-censoring of disfavored speech for fear of retaliation. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988); *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984); *Doe v. Harris*, 772 F.3d at 577–78.

The City's intent, as established by the overwhelming evidence on this record, is to suppress the message of the NRA. Such motivation is impermissible under the First Amendment and provides no justification for the Ordinance. We therefore conclude the Ordinance is a content-based regulation of speech, and it must survive strict scrutiny.

### 5.   Applying Strict Scrutiny

The City makes no attempt to justify the Ordinance under strict scrutiny. Given the Ordinance's text and legislative history, it is apparent to the Court the City cannot make a reasonable argument that

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

the Ordinance is narrowly tailored to serve a compelling government interest. The City has no interest in the suppression of political advocacy—regardless of how distasteful it finds the content. The Ordinance is therefore incompatible with the Constitution, and Plaintiffs are likely to be successful on the merits of their First Amendment speech claims.

### ii. Freedom of Association Claims

Plaintiffs argue their First Amendment rights of expressive association are burdened because the Ordinance requires "disclosure of group associations . . . ", Dkt. 19 at 7, and the chilling effect would "ultimately cause [the] NRA to lose necessary funding and possibly members." *Id.* at 15. The Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. Jaycees,* 468 U.S. 609, 622 (1984). Defendants respond that the Ordinance only requires "disclosure of whether a potential contractor has a contract with the NRA or provides discounts to the NRA or its members." Dkt. 23 at 10. Because "contract[s] and business discounts" are not expressive, the City again argues the First Amendment is not implicated by the Ordinance at all. *Id.*

### 1. Disclosure of Membership Lists

Plaintiffs argue the Ordinances effectively requires potential contractors to disclosure their membership in the NRA because the "contracts or sponsorship" described in the Ordinance necessarily encompass membership. Compelled disclosure of a membership list in a political organization faces a form of heightened scrutiny. *See N.A.A.C.P. v. Alabama*, 357 U.S. 449, 460–62 (1958); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 546 (1963); *United States v. Mayer*, 503 F.3d 740, 748 (9th Cir. 2007). The City maintains that the Ordinance does not require disclosure of the NRA's membership list or for potential contractors to disclose their membership in the NRA. *See* Dkt. 23 at 9–10; Dkt. 33 at 6. For the purposes of the motion for preliminary injunction, the Court accepts the City's contention that disclosure of membership is not required. *See Foti*, 146 F.3d at 639 ("Although we must consider the City's limiting construction of the ordinance, we are not required to insert missing terms into the statute or adopt an interpretation precluded by the plain language of the ordinance."). As such, the Ordinance does not face strict scrutiny as a disclosure of a membership list. However, compelled disclosure can still face heightened scrutiny when it relates to protected First Amendment activity.

|  | : |  |
|---|---|---|
| Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

## 2.  Compelled Disclosures in the Interest of Transparency

Even aside from disclosure of membership lists, the Supreme Court has "repeatedly found that compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley v. Valeo*, 424 U.S. 1, 64, 96 (1976). These disclosures have primarily occurred in the electoral context. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010) ("*Doe v. Reed*") ("We have a series of precedents considering First Amendment challenges to disclosure requirements in the electoral context."). Election law disclosures are not subject to the same strict scrutiny as restrictive speech laws because, even though they "may burden the ability to speak . . . they . . . 'do not prevent anyone from speaking.'" *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366, (2010) ("*Citizens United*") (citing *Buckley*, 424 U.S. at 64, 96). These compelled disclosures are therefore subject to "'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important governmental interest.'" *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1312 (9th Cir. 2015) ("*Competitive Politics*") (citing *Buckley*, 424 U.S. at 96 ). "To withstand this scrutiny, 'the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights.'" *Americans for Prosperity Foundation v. Becerra*, 903 F.3d 1000, 1008 (9th Cir. 2018) ("*Americans for Prosperity*") (quoting *Davis v. FEC*, 554 U.S. 724, 744 (2008)).

In the electoral context, the Ninth Circuit used exacting scrutiny to find that "[c]ampaign finance disclosure requirements . . . advance the important and well-recognized governmental interest of providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas." *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1008 (9th Cir. 2010). Outside of the electoral context, the Ninth Circuit upheld California's law compelling the disclosure of IRS Schedule B disclosures to the state Attorney General because it served the state's "important government interests in preventing fraud and self-dealing in charities . . . by making it easier to police such fraud." *Americans for Prosperity*, 903 F.3d at 1011 (internal quotation marks omitted).[7] In *Americans for Prosperity*, the court found that in light of the state's legitimate interest in preventing fraud, the "plaintiffs have not demonstrated that compliance with the state's disclosure requirement will meaningfully deter contributions. Nor, in light of the low risk of public disclosure, have the plaintiffs shown a reasonable probability of threats, harassment or reprisals." *Id.* at 1019.

---

[7] *Americans for Prosperity* has a currently-docketed petition for certiorari before the Supreme Court of the United States. Petition for Writ of Certiorari, *Thomas More Law Center v. Becerra*, 903 F.3d 1000 (No. 19-255).

| Initials of Preparer | : |
|---|---|
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|----------|----------------------|------|-------------------|

| Title | *National Rifle Association of America et al v. City of Los Angeles et al* |
|-------|---------------------------------------------------------------------------|

In contrast, the Supreme Court previously concluded that the government has no legitimate interest in "levelling electoral opportunities" by imposing asymmetrical contribution limits on self-funded and donor-funded Congressional candidates. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 742 (2008) ("*Davis*"). Applying the logic from *Davis*, the Ninth Circuit recently used exacting scrutiny to find part of Montana's political committee registration regulation unconstitutional. *Nat'l Ass'n for Gun Rights, Inc. v. Mangan*, 933 F.3d 1102, 1121 (9th Cir. 2019) ("*NAGR*"). In *NAGR*, the Ninth Circuit upheld the majority of Montana's disclosure requirement but found that requiring political committee treasurers to be registered Montana voters was not a lawful "shorthand" for otherwise-valid competency requirements. *Id.* The court concluded the registered voter requirement "does not significantly forward the interests it is said to advance and so violates the First Amendment." The Ninth Circuit concluded "Montana identifies no interest served by excluding potential treasurers who are not registered voters but could be if they chose." *Id.* Because there was no connection between the voter requirement and the state's valid interest, "the state burden[ed] the speech rights of such organizations without any justification," and the requirement was found unconstitutional. *Id.*

### 3. Government Interest in Transparency

Although the government has a legitimate interest in transparency in certain contexts—such as the public elections or tax-exempt charities discussed above—the First Amendment is burdened when the disclosure requirement bears no relationship to the stated interest. Disclosure requirements are impermissible where they "become[] a means of facilitating harassment that impermissibly chills the exercise of First Amendment rights." *Doe v. Reed*, 561 U.S. at 208. Although not every compelled disclosure is a constitutional injury, the Ninth Circuit recently held that a disclosure requirement intended to chill political speech or harass a certain speaker does create an actual burden on the First Amendment right of association.[8] *Competitive Politics*, 784 F.3d at 1313 ("compelled disclosure can also infringe First Amendment rights when the disclosure requirement is itself a form of harassment intended to chill protected expression."). Relying on *Acorn Investments, Inc. v. City of Seattle*, 887 F.2d 219 (9th Cir. 1989) ("*Acorn*"), the *Competitive Politics* court reasoned that a disclosure requirement intended to chill expression and unsupported by a reasonable justification is itself a First Amendment burden. *Competitive Politics*, 784 F.3d at 1313 (describing the holding in *Acorn*: "the disclosure requirement was intended to chill its protected expression, and, given the absence of any reasonable justification for the ordinance, we held that it violated the First Amendment.").

---

[8] This compelled-*disclosure* is distinct from the government-compelled *speech* analyzed in *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47 (2006). Compelled speech under *Rumsfeld* is addressed *infra* Part IV.e.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|

| Title | *National Rifle Association of America et al v. City of Los Angeles et al* |
|---|---|

The court in *Acorn* had reached a similar conclusion regarding the City of Seattle's "panoram ordinance" that required "peepshow" companies to "disclose the names and addresses of their shareholders" and pay several additional licensing fees. *Acorn*, 887 F.2d 225–26. To justify the shareholder disclosure requirement, Seattle asserted a compelling interest in accountability of enforcement of the panoram ordinance. *Id.* The court found there was "no logical connection between the City's legitimate interest in compliance with the panoram ordinance and the rule requiring disclosure of the names of shareholders." *Id.* The *Acorn* court analogized its situation to a similar Seventh Circuit case, *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980), where the Seventh Circuit focused not on the nature of the information disclosed, but "whether there was any relevant correlation between the asserted governmental interest in obtaining the information and the information required to be disclosed." *Acorn*, 877 F.2d at 226. Without a legitimate government interest, the *Acorn* court concluded that the city could not compel disclosure of shareholder information. *Id.* Together, *Americans for Prosperity*, *Competitive Politics*, and *Acorn*, hold that the First Amendment right of association can be burdened either through an actual chilling effect unsupported by a legitimate government interest or by a governmental intent to harass a certain speaker.

Here, Plaintiff Doe maintains the Ordinance will burden him and other potential contractors by chilling them from either from submitting bids to the City or entering into "contracts or sponsorship" agreements with the NRA. Dkt. 24 at 8–9. The NRA claims the Ordinance will cause them to lose sponsors. The City addresses this argument by asserting that "the court must first determine whether the challenged disclosure requirement actually compels disclosure of ***information protected by the First Amendment***" before proceeding to apply exacting scrutiny. Dkt. 23 at 14 (emphasis in original). As discussed above, the pertinent question is whether the disclosure places a burden on associational rights—not whether the underlying material is independently protected by the First Amendment. *See Americans for Prosperity*, 903 F.3d at 1006 ("[t]o assess 'the possibility that disclosure will impinge upon protected associational activity'. . . we consider 'any deterrent effect on the exercise of First Amendment rights'") (quoting *Buckley*, 424 U.S. at 65) (internal citation omitted); *Acorn*, 887 F.2d at 226 (approving the Seventh Circuit's analysis which "did not focus on the nature of the information to be disclosed," but "questioned whether there was any relevant correlation between the asserted governmental interest in obtaining the information and the information required to be disclosed. The burden on association rights alleged in *Americans for Prosperity* was similar to the burden alleged here—deterrence of funding to an advocacy organization. The government motive in *Acorn* is similar to the government motive here—a pretext for harassment. As such, the Ordinance triggers exacting scrutiny.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

#### 4. Applying Exacting Scrutiny

This Ordinance is not an election law—it applies to potential City contractors not political candidates—but the City's stated interest is still government transparency. In applying exacting scrutiny, the Ordinance's justification is more akin to *Davis, NAGR,* and *Acorn* than *Americans for Prosperity* and *Competitive Politics*. Much like in *NAGR*, the Ordinance "does not significantly forward the interests it is said to advance . . . ." *NAGR*, 933 F.3d at 1121. Like the city in *Acorn*, the record here supports Plaintiffs' contention that the purpose of the Ordinance is to deter association with the NRA. Because the City has no legitimate interest in the Ordinance, Plaintiffs will likely be successful on their freedom of association claims. To succeed at trial, Plaintiffs will need to demonstrate that the Ordinance "places an actual burden on First Amendment" rights (either through harassment or chilled association), and that burden is not justified by a "compelling government interest." *Americans for Prosperity*, 903 F.3d at 1006.

#### b. Likelihood of Irreparable Harm

Although the Court has already concluded Plaintiffs are likely to be successful on their speech and association claims, we must still analyze the remaining *Winter* factor to determine if a preliminary injunction is appropriate. "Even where a plaintiff has demonstrated a likelihood of success on the merits of a First Amendment claim, it 'must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction, and that the balance of equities and the public interest tip in his favor.'" *Doe v. Harris*, 772 F.3d at 582.

Plaintiff Doe has alleged that he and other potential City contractors will be forced to choose between forgoing the City's bidding process or revealing their contracts with the NRA. The NRA itself claims it will suffer a burden on its associational rights because businesses will be less likely to engage in "contracts or sponsorship" with the NRA for fear of eventual disclosure under the Ordinance. In considering a preliminary injunction, the deprivation of First Amendment rights "even for minimal periods of time, unquestionably constitute[s] irreparable injury." *Elrod v. Burns*, 427 U.S. 373 (1976); *see also Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (adopting the proposition). The Ninth Circuit concluded "a First Amendment claim certainly raises the specter of irreparable harm and public interest considerations . . . ." *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011) (internal quotation marks omitted). "The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech . . . ." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
| --- | --- | --- | --- |
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

In this case, Plaintiffs have sufficiently demonstrated that they are likely to be deprived of their First Amendment rights—the deprivation of which is "well established" to constitute irreparable harm. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod*, 427 U.S. at 373). Defendants' primary argument to the contrary is that Plaintiffs have not provided admissible evidence of irreparable harm. Dkt. 23 at 22–23. But Plaintiffs have provided ample evidence of a likely First Amendment violation, which is enough to satisfy the *Winter* standard. "A 'colorable First Amendment claim' is 'irreparable injury sufficient to merit the grant of relief.'" *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir.2005)). Plaintiffs have therefore met their burden in establishing a likelihood of irreparable harm.

Doe further alleges that if he complies with the Ordinance, the City will deny him fair consideration of his bids—potentially creating a long-term stigma against Doe and his business. The NRA maintains that the Ordinance will also cause them to lose sponsors: if companies are forced to disclose their sponsorship of the NRA to the City, those companies will be less likely to provide sponsorship for fear of suffering the same stigma as Doe. Again, the record indicates both fears are well-founded. Stigmatization and loss of sponsorship appear to be exactly the types of irreparable First Amendment harm anticipated by *Elrod*, where county employees were fired (or threatened to be fired) for their political affiliations. *Elrod*, 427 U.S. at 374. It is therefore likely that Plaintiffs will suffer irreparable harm by the continued enforcement of the Ordinance. Conversely, the only harm the City will suffer is a lack of knowledge about who contracts with or sponsors the NRA. Under First Amendment precedent, the likelihood of irreparable harm is high in this instance.

### c. Balance of the Equities

The City correctly states that the burden is on the Plaintiff to demonstrate the need for extraordinary relief. Proving likelihood of success alone does not tip the balance of equities. *Gresham v. Picker*, 705 Fed. App'x. 554 (9th Cir. 2017). In issuing a preliminary injunction, "the district court must balance the harms to both sides . . . ." *VidAngel, Inc.*, 869 F.3d at 867. Plaintiffs allege they are currently unable to bid on City contracts without suffering a potential stigma from the City. Dkt. 19-1 at 1–2. Further, the NRA claims it is losing the benefit of potential sponsorship because contractors do not want to make the disclosures required by the Ordinance. *Id.* As discussed above, these are both cognizable First Amendment harms which weigh in favor of enjoining the Ordinance.

The City has failed to demonstrate it will be harmed by an injunction of the Ordinance. The City

| | : |
| --- | --- |
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|----------|------------------------|------|-------------------|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

has presented no evidence or argument that non-enforcement of the Ordinance will have an effect of the City's ability to keep its citizens safe. As we have already established, the connection between the Ordinance and public safety is unsupported. The only harm the City may suffer is not knowing if its contractors have "contracts or sponsorship" with the NRA. Dkt. 1-9 at 1. The City has no legitimate interest in this information, and "harm caused by illegal conduct does not merit significant equitable protection." *VidAngel*, 869 F.3d at 867. We therefore find the City will suffer no injury by injunction of the Ordinance. The balance of the equities tips strongly in Plaintiffs' favor.

**d.  Public Interest**

"Finally, the court must 'pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *VidAngel, Inc.*, 869 F.3d at 867 (citing *Winter*, 555 U.S. at 24). The NRA believes the public is served by protecting First Amendment rights. The City believes the Ordinance serves the public interest by creating stricter gun laws through reduced pro-gun advocacy. There is no doubt the City's general interests in public safety and transparent government are legitimate, but the City has only advanced the most attenuated relationship between the Ordinance and these goals. It is not within the public interest to subject potential City contractors to a disclosure requirement motivated by political animus and completely unrelated to their ability to perform the job. If the Ordinance were to continue in effect, the only tangible benefit to the City would be the collection of information it has no legitimate interest in collecting.

Conversely, the citizens of Los Angeles would suffer an abridgement of their First Amendment rights by continued enforcement of the Ordinance. There is a "significant public interest in upholding free speech principles," *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (internal quotation marks omitted). Generally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted). Weighing the strong interest in protecting Plaintiffs' First Amendment rights against the City's stated interest, we conclude the public interest is better served by enjoining the Ordinance than letting it be enforced.

**e.  Balancing the *Winter* factors**

All four *Winter* factors tip in favor of Plaintiffs. Based on the analysis above, we conclude Plaintiffs have met their burden in demonstrating a need for a preliminary injunction of the Ordinance. Plaintiffs' motion for preliminary injunction is therefore GRANTED.

|  | : |
|--|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

### IV.   Discussion of Motion to Dismiss

Defendants have moved to dismiss the complaint. Dkt. 15. The motion is denied with regards to Plaintiffs' First Amendment speech, association, and retaliation claims, but granted with regard to Plaintiffs' Fourteenth Amendment claims and First Amendment compelled speech claims. Defendants' motion to dismiss Garcetti and Wolcott as duplicative defendants is also granted.

#### a.   First Amendment Speech Claims

As explained above, Plaintiffs are likely to be successful on their First Amendment speech claims. The Court has concluded the Ordinance is content-based and therefore subject to strict scrutiny. *See supra* Part III.a.i.4.c. They have consequently sufficiently stated a claim upon which relief can be granted.

#### b.   First Amendment Association Claims

As discussed, Plaintiffs are likely to be successful on their First Amendment association claims. The Court has concluded the Ordinance is subject to exacting scrutiny. *See supra* Part III.a.ii.4. Plaintiffs have therefore stated a claim upon which relief can be granted.

#### c.   First Amendment Retaliation

A successful First Amendment Retaliation claim must allege that the "(1) [Plaintiffs] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) ("*Arizona Students*") (citing *O'Brien v. Welty*, 818 F.3d 920, 933–34 (9th Cir. 2016)). The defendant must cause the injury through retaliation; "a plaintiff must show that the defendant's retaliatory animus was 'a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'" *Capp v. Cty. of San Diego*, 940 F.3d 1046 (9th Cir. 2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). "At the pleading stage, the complaint must simply allege plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct[,] and motive may be shown with direct or circumstantial evidence." *Koala v.*

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|

| Title | *National Rifle Association of America et al v. City of Los Angeles et al* |
|---|---|

*Khosla*, 931 F.3d 887, 905 (9th Cir. 2019) (internal quotations omitted). There is no requirement for a showing of actual suppression of protected speech, just that the defendant's intentional hinderance of plaintiff's First Amendment activity resulted in some injury. *Arizona Students*, 824 F.3d at 867.

The Ordinance was officially passed by the City on February 2, 2019 and signed by Garcetti on February 18, 2019. Dkt. 1-9 at 5. "A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." *Arizona Students*, 824 F.3d at 867. Defendants have not alleged any facts to indicate that Garcetti or Wolcott acted with retaliatory intent, so Plaintiffs are unable to sustain a retaliation claim against either Garcetti or Wolcott based on this pleading.[9] However, unlike individual states, organizations such as the City are capable of retaliatory intent under the First Amendment. *See Orin v. Barclay*, 272 F.3d 1207, 1217 (9th Cir. 2001) ("A plaintiff properly alleges a § 1983 action against a local government entity only if 'the action that is alleged to be unconstitutional implement[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers'") (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)); *see, e.g.*, *Capp v. Cty. of San Diego*, 940 F.3d 1046 (9th Cir. 2019) (plaintiff properly alleged a retaliation claim against the County of San Diego); *Koala*, 931 F.3d at 905 (upholding a retaliation claim against an unincorporated student association).

Applying the *Arizona Students* test, the Court first conclude Plaintiffs are unquestionably involved in the expressive activity of pro-firearm speech. Core political speech, including issue-based advocacy, is well-established as a constitutionally protected activity that triggers "the First Amendment's highest level of protection." *Arizona Students*, 824 F.3d at 868; *see McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346-347 (1995) (handing out leaflets in the advocacy of a politically controversial viewpoint was "the essence of First Amendment expression").

In response, Defendants rehash their speech and association defenses, arguing that "there is simply no First Amendment associational right attached to contracting or providing discounts, nor is either activity protected speech." Dkt. 23 at 17. However, "to prevail on such a claim, a plaintiff need only show that the defendant 'intended to interfere' with the plaintiff's First Amendment rights, " not that the method of interference was expressive. *Arizona Students*, 824 F.3d at 867 (citing *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)). Plaintiffs are undisputedly

---

[9] As discussed *infra* Part IV.f, Garcetti and Wolcott are only named in their official capacities and therefore dismissed as duplicative.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

engaged in the protected First Amendment activity of pro-firearm speech. This activity is also undisputedly the reason the City enacted the Ordinance. The City does not need to attack the protected activity directly to implicate the First Amendment—the *means* of retaliation is less important than the *impetus* for retaliation. *See O'Brien v. Welty*, 818 F.3d at 932 ("Otherwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment."); *See also Arizona Students*, 824 F.3d at 868 ("the Supreme Court and [the Ninth Circuit] have recognized a wide variety of conduct that impermissibly interferes with speech. For example, the government may chill speech by threatening or causing pecuniary harm . . . withholding a license, right, or benefit . . . prohibiting the solicitation of charitable donations . . . prohibiting the solicitation of charitable donations . . . or conducting covert surveillance of church services . . . .") (internal citations omitted). Plaintiffs have demonstrated satisfied the first prong of the *Arizona Students* test.

Second, the Court must determine "if a person of ordinary firmness" would be deterred by the City's actions from continuing in the protected activity. *Arizona Students*, 824 F.3d at 867 (internal quotation marks omitted). "Importantly, the test for determining whether the alleged retaliatory conduct chills free speech is objective; it asks whether the retaliatory acts 'would lead ordinary [persons]... in the plaintiffs' position' to refrain from protected speech.'" *Id.* (citing *O'Brien v. Welty*, 818 F.3d at 933). Plaintiffs allege that the Ordinance has the effect of dissuading support (through sponsorships and paid membership) of the NRA. The City has asserted multiple times there are no additional consequences to disclosure and has noted that several City contractors have already complied with the Ordinance without facing negative consequences from the City. Dkt. 33 at 8–9. "Our inquiry, however, is not whether Defendants' actions actually chilled" Plaintiffs or other contractors, "but rather whether the alleged retaliation 'would chill *a person of ordinary firmness* from continuing to engage in the protected activity.'" *Capp*, 940 F.3d at 1046 (citing *O'Brien v. Welty*, 818 F.3d at 933). Plaintiffs maintain that the Ordinance "[threatens] the livelihood of NRA as retaliation for engaging in political speech and expression with which the City disagrees." Dkt. 19-1 at 17. Plaintiffs claim complying contractors will either be spurned from City contracts and/or face social and financial harm as a result of their disclosure. Dkt. 19-1 at 15. Given the overwhelming animus against the NRA displayed by the City alone, it is plausible that the Ordinance would chill a person of ordinary firmness from either submitting bids to the City or engaging in contracts or sponsorship with NRA. *See supra* Part. III.a.4. Even if the City is barred from rejecting a bid explicitly because of the contractor's ties to the NRA, Plaintiffs have presented enough evidence to show they will plausibly be dissuaded from participating in the bidding process for fear of ostracization from the City. Plaintiffs have satisfied the second prong of the *Arizona Students* test.

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

Finally, Plaintiffs satisfy the third prong of the *Arizona Students* test because there is a strong "nexus between defendant[s] actions and the intent to chill speech." *Arizona Students*, 824 F.3d at 867 (internal quotation marks omitted). The City adopted the Ordinance in direct response to the NRA's speech and with the overt intent to silence it. *See supra* Part III.a.ii.4.b. The factual record establishes that the City's only non-pretextual interest in the Ordinance is the suppression of the NRA's political activity. It is impossible to separate the Ordinance from the City's intent to suppress the NRA's speech. Plaintiffs have satisfied all three prongs of the *Arizona Students* test, and the Defendants' motion to dismiss Plaintiffs' retaliation claim is DENIED.

### d. First Amendment Compelled Speech

Plaintiffs claim the Ordinance violates their right to be free from government-compelled speech. Dkt. 19-1 at 14. The Supreme Court has "established the principle that freedom of speech prohibits the government from telling people what they must say." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006) ("*Rumsfeld*"). "This Court has found compelled-speech violations where the complaining speaker's own message was affected by the speech it was forced to accommodate." *Rumsfeld*, 547 U.S. at 49 (citing *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557 (1995)). Compelled-speech is implicated only when "the complaining speaker's own message [is] affected by the speech it [is] forced to accommodate." *Id.* at 63. Plaintiffs have alleged no facts to indicate they are forced to speak or accommodate any message except their own. Plaintiffs are required to disclose the contracts or sponsorship which they have freely undertaken with the NRA; they are not required to incorporate anyone else's message into their own. This regulation is better analyzed as a disclosure requirement than a traditional compelled-speech claim. *See supra* Part III.a.ii. Plaintiffs have therefore failed to state a compelled speech claim, and Defendants' motion is GRANTED in part.

### e. Fourteenth Amendment Claims

Plaintiffs claim the City has violated their Fourteenth Amendment rights by "penalizing a class of potential contractors based on their protected beliefs, expression, and associations . . . ." Dkt. 19-1 at 18. But Plaintiffs cannot claim they are members of a "suspect classification" so as to require heightened scrutiny under the Fourteenth Amendment's Equal Protection clause. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) ("When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim.").

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

In this circumstance, pro-firearm advocates cannot be recognized as protected class under the Fourteenth Amendment. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) (explaining that a "class" under Equal Protection "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the . . . defendant disfavors."). Without a suspect classification, "the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification." *Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, 917 F.3d 1081, 1095 (9th Cir. 2019). Although this record would likely support a finding that the City has offered no rational basis for the Ordinance, the Court has already concluded that strict scrutiny applies, and there is no need to apply rational basis scrutiny at this time.

Further, Plaintiffs cannot plead an Equal Protection claim without reference to their First Amendment rights. Such definitively First Amendment claims are not well suited to Equal Protection analysis and are usually dismissed as duplicative. *See Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001) ("we treat [plaintiff's] equal protection claim as subsumed by, and co-extensive with, his First Amendment claim."). There is non-binding authority to support dismissal of Equal Protection claims when they are entirely duplicative of alleged First Amendment Claims. *See Vukadinovich v. Bartels*, 853 F.2d 1387, 1391–92 (7th Cir. 1988) ("we think of the Equal Protection Clause as forbidding the making of invidious classifications—classifications on the basis of such characteristics as race, religion, or gender. Here, plaintiff is not claiming that he was classified on the basis of some forbidden characteristic, only that he was treated differently because he exercised his right to free speech."); *AIDS Healthcare Found. v. Los Angeles Cty.*, No. CV1210400PAAGRX, 2013 WL 12134048, at *8 (C.D. Cal. Mar. 18, 2013) ("Plaintiffs cannot simply recharacterize their First Amendment retaliation claim as a violation of the Equal Protection Clause."); *Webber v. First Student, Inc.*, No. CIV. 11-3032-CL, 2011 WL 3489882, at *3 (D. Or. July 12, 2011) ("Although the Ninth Circuit has not dealt directly with whether instances of retaliation for the exercise of free speech may implicate equal protection, a number of other Circuit Courts of Appeals have found that such a claim implicates the First Amendment, not the Equal Protection Clause.").

Outside of the First Amendment context, an Equal Protection claim to vindicate another enumerated right "is subsumed by, and coextensive with the [latter], and therefore not cognizable under the Equal Protection Clause." *Rhode v. Becerra*, 342 F. Supp. 3d 1010, 1016 (S.D. Cal. 2018) (quoting *Teixeira v. County of Alameda*, 822 F.3d 1047, 1052 (9th Cir. 2016) *vacated in part by*, 854 F.3d 1046 (9th Cir. 2016)) (dismissing plaintiffs' Equal Protection challenge as entirely duplicative of their Second Amendment claim). In this case, Plaintiffs' Equal Protection claims are entirely duplicative of the First

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-03212-SVW-GJS | Date | December 11, 2019 |
|---|---|---|---|
| Title | *National Rifle Association of America et al v. City of Los Angeles et al* | | |

Amendment claims Defendants' motion to dismiss Plaintiffs' Equal Protection claims is therefore GRANTED.

### f. Dismiss City Official Defendants

In addition to the City, Plaintiffs have named Mayor Garcetti and City Clerk Wolcott as defendants in their official capacities. Dkt. 1. "The Court follows other District Courts in holding that if individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed." *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996); *see Chavez v. City of Petaluma*, No. 14-CV-05038-MEJ, 2015 WL 6152479, at *4 (N.D. Cal. Oct. 20, 2015), *aff'd*, 690 F. App'x 481 (9th Cir. 2017) (directly adopting the proposition). There are no allegations against either Garcetti or Wolcott that cannot be attributed to the City as a whole.[10] Defendants' motion to dismiss Garcetti and Wolcott as defendants is therefore GRANTED.

### V.    Conclusion

For the reasons provided above, Plaintiffs' motion for preliminary injunction is GRANTED. Defendants' motion to dismiss is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

---

[10] As discussed *supra* Part IV.c, Plaintiffs have not alleged any facts which indicate Garcetti or Wolcott took any action outside of their official capacities or took any official action with retaliatory intent.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |