C. D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
Sean A. Brady – SBN 262007
Tiffany D. Cheuvront – SBN 317144
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Facsimile: 562-216-4445
cmichel@michellawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA; JOHN DOE,<br><br>                              Plaintiffs,<br><br>          vs.<br><br>CITY OF LOS ANGELES; ERIC GARCETTI, in his official capacity as Mayor of City of Los Angeles; HOLLY L. WOLCOTT, in her official capacity as City Clerk of City of Los Angeles; and DOES 1-10,<br><br>                              Defendants. | Case No.: 2:19-cv-03212 SVW (GJSx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AWARD PURSUANT TO 42 U.S.C. § 1988**<br><br>Hearing Date:      June 15, 2020<br>Hearing Time:      1:30 p.m.<br>Judge:               Stephen V. Wilson<br>Courtroom:         10A |

MEMORANDUM OF POINTS AND AUTHORITIES ISO §1988 FEE AWARD

# TABLE OF CONTENTS

**Page**

Table of Contents...........................................................................................i

Table of Authorities .....................................................................................ii

Introduction ..................................................................................................1

Statement of Facts.........................................................................................2

I. The Challenged Ordinance and the Dispute .................................................2

II. Procedural History .......................................................................................4

III. Plaintiffs' Work on This Case......................................................................7

Argument.......................................................................................................9

I. Plaintiffs Are Entitled to Reasonable Attorneys' Fees................................9

II. Plaintiffs' Attorneys' Fees Claim Represents a Reasonable
   Valuation of the Time Spent by Plaintiffs' Counsel ...................................10

    A. Plaintiffs' Schedule of Hourly Rates Are Reasonable ......................11

        1. Prevailing Market Rates in the Relevant Legal Community .....11

        2. Plaintiffs' Counsel's Experience ............................................13

    B. Plaintiffs' Hours Spent Litigating This Case Are Reasonable and
       They Are Entitled to Full Compensation for Their Efforts ................17

    C. The Court Should Apply a 1.25 Lodestar Adjustment......................18

        1. The Results Obtained Justify an Upward Adjustment .............18

        2. This Desirability of the Case Justifies an Upward
           Adjustment ...........................................................................19

        3. Time Limitations Imposed by the Circumstances Justify an
           Upward Adjustment................................................................20

Conclusion...................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antuna v. Cnty. of Los Angeles*,
  No. 14-cv-5600, 2016 U.S. Dist. LEXIS 189152 (C.D. Cal. Mar. 8, 2016) ..................................................................................................13

*B&L Productions, Inc. v. 22nd District Agricultural Association*,
  S.D. Cal. Case No. 19-cv-00134 (S.D. Cal. June 25, 2019)..........................14

*Barjon v. Dalton*,
  132 F.3d 496 (9th Cir. 1997)........................................................................11

*Benham v. Sequoia Equities, Inc.*,
  No. 13-cv-00205, 2013 U.S. Dist. LEXIS 108015 (C.D. Cal. May 29, 2013) ..................................................................................................20

*Blum v. Stevenson*,
  465 U.S. 886 (1994)......................................................................................11

*Cervantes v. Cnty. of Los Angeles*,
  No. 12-cv-09889, 2016 U.S. Dist. LEXIS 23378 (C.D. Cal. Feb. 24, 2016) ..................................................................................................16

*Chambers v. Whirlpool Corp.*,
  214 F. Supp. 3d 877 (C.D. Cal. 2016) ..........................................................12

*Charlebois v. Angels Baseball LP*,
  993 F. Supp. 2d 1109 (C.D. Cal. 2012) ........................................................15

*Christensen v. Stevedoring Servs. of Am.*,
  557 F.3d 1049. (9th Cir. 2009)......................................................................11

*City of Burlington v. Dague*,
  505 U.S. 557 (1992)......................................................................................18

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
  No. 04-cv-9396, 2006 U.S. Dist. LEXIS 95610 (C.D. Cal. Dec. 12, 2006) ..................................................................................................16

*Counts v. Meriwether*,
  No. 14-cv-00396, 2016 U.S. Dist. LEXIS 40651 (C.D. Cal. 2016) .................12

ii

*Curtin v. County of Orange*,
   No. 16-cv-00591, (C.D. Cal. Apr. 13, 2018), ECF. No. 331...........................12

*Curtin v. County of Orange*,
   No. 16-cv-00591, 2018 U.S. Dist. LEXIS 233110 (C.D. Cal. Jan. 31,
   2018), ECF. No. 323 ...................................................................................12

*Curtin v. County of Orange*,
   No. 16-cv-00591, (C.D. Cal. Aug. 22, 2017), ECF. Nos. 290, 290-2 ..............12

*Dennis v. Chang*,
   611 F.2d 1302 (9th Cir. 1980)........................................................................17

*Duncan v. Becerra*,
   366 F. Supp. 3d 1131 (S.D. Cal. 2019) ..........................................................14

*Farrar v. Hobby*,
   506 U.S. 103 (1992)........................................................................................10

*Ferland v. Conrad Credit Corp.*,
   244 F.3d 1145 (9th Cir. 2001)........................................................................10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)........................................................................10, 17, 18

*Higher Taste, Inc. v. City of Tacoma*,
   717 F.3d 712 (9th Cir. 2013)..........................................................................10

*Hoffman v. Cnty. of L.A.*,
   No. 15-cv-3724, 2018 U.S. Dist. LEXIS 1162
   (C.D. Cal. Jan. 3, 2018) .................................................................................15

*Indep. Living Ctr. of S. Cal. v. Kent*,
   No. 08-cv-03315, 2020 U.S. Dist. LEXIS 13019 (C.D. Cal. Jan. 24,
   2020) ...............................................................................................................15

*J.N. v. Hendrickson*,
   No. 14-cv-02428, 2017 U.S. Dist. LEXIS 129927 (C.D. Cal. Aug. 15,
   2017) ...............................................................................................................13

*Kearney v. Hyundai Motor Am.*,
   No. 09-cv-1298, 2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28,
   2013) ...............................................................................................................13

iii

TABLE OF AUTHORITIES

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ................................................................14

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ...........................................17

*Perdue v. Kenny A.*,
   559 U.S. 542 (2010) ................................................................18

*Rhode v. Becerra*,
   No. 18-cv-802, 2020 U.S. Dist. LEXIS 71893 (S.D. Cal. April 23,
   2020) ................................................................................15

*Rodriguez v. Cnty. of Los Angeles*,
   96 F. Supp. 3d 1012 (C.D. Cal. 2014) ....................................12, 15

*Sanchez v. Cnty. of San Bernardino*,
   No. 10-cv-09384, 2014 U.S. Dist. LEXIS 199466 (C.D. Cal. Mar. 10,
   2014) ................................................................................16

*United States v. $28,000 in Currency*,
   802 F.3d 1100 (9th Cir. 2015) ...........................................11

*Williams v. Alioto*,
   625 F.2d 845 (9th Cir. 1980) ...........................................17

*Williams v. Hanover Hous. Auth.*,
   113 F.3d 1294 (1st Cir. 1997) ...........................................10

**Statutes**

42 U.S.C. § 1988 ...................................................................*passim*

**Rules**

Fed. R. Civ. P. 54 ....................................................................6

**Other Authorities**

*28% of Democrats Say it Should Be Illegal to Join the NRA*, Rasmussen
   Reports (Sept. 9, 2019), available at
   https://www.rasmussenreports.com/public_content/politics/current_e
   vents/gun_control/28_of_democrats_say_it_should_be_illegal_to_joi
   n_the_nra (last accessed Apr. 29, 2020) ...............................19

*A Lawyer's Ethical Duty to Represent the Unpopular Client*, 1 Chap. L.
   Rev. 105 (1998) ................................................................19

Mariel Padilla, *San Francisco Declares the N.R.A. a "Domestic
   Terrorist Organization*," N.Y. Times (Sept. 4., 2019), available at
   https://www.nytimes.com/ 2019/09/04/us/san-francisco-nra-
   terrorist.html (last accessed Apr. 29, 2020) ......................................19

*Readers Sound Off: "The NRA Is an Evil Organization"*, USA Today
   (Feb. 22, 2018), available at
   https://www.usatoday.com/story/opinion/2018/02/22/readers-gun-
   laws-nra-evil-organization/362983002/ (last accessed Apr. 29, 2020) ..............19

Thomas A. Eaton & Michael Wells, *Attorney's Fees, Nominal Damages,
   and Section 1983 Litigation*, 24 Wm. & Mary Bill Rts. J. 89 (2016) ................1

U.S. Const., amend. I .....................................................*passim*

U.S. Const., amend. II ........................................ 13, 14, 15, 20

v

TABLE OF AUTHORITIES

## INTRODUCTION

The civil rights fee-shifting provision, 42 U.S.C. § 1988, seeks to ensure that civil rights claimants can adequately attract qualified representation. These lawsuits are essential to the vindication of civil rights abuses but, absent a fee award, they are often infeasible. Indeed, "[t]he attorney's fee award has systemic value in encouraging litigation that enforces constitutional norms . . . shared by everyone. Thomas A. Eaton & Michael Wells, *Attorney's Fees, Nominal Damages, and Section 1983 Litigation*, 24 Wm. & Mary Bill Rts. J. 89 (2016).

This litigation challenged Defendant City of Los Angeles' enactment and enforcement of Ordinance No. 186000, a controversial local law mandating that all current and prospective city contractors disclose any "sponsorship of" or "contract with" Plaintiff National Rifle Association. Seeking declaratory and injunctive relief, Plaintiffs NRA and John Doe sued the City because the ordinance violated their fundamental rights of free speech, free association, and equal protection under the law. Plaintiffs secured an important vindication of their rights when the Court entered an order largely rejecting the City's motion to dismiss and preliminarily enjoining the City from enforcing its disclosure mandate.

Not long after, the City fully repealed its ordinance, the parties settled their dispute, and the Court entered a judgment incorporating the preliminary injunction order--cementing Plaintiffs' prevailing party status. In successfully suing the City, Plaintiffs have ensured that no person must fear the compelled disclosure of their viewpoints and associations in order to do business with the City. Plaintiffs are thus entitled to an award of reasonable attorneys' fees under section 1988.

Plaintiffs' fee motion is supported by the detailed declarations and billing records of their counsel, showing that all the time for which Plaintiffs seek recovery was reasonably spent. It is also supported by case law from this district and evidence that the hourly rates Plaintiffs' counsel charge are well within the range of rates found reasonable for attorneys practicing in the Los Angeles area. Ultimately, the amount

1

1  Plaintiffs request, adjusted upward by a 1.25 multiplier, reflects the rates of

2  comparable attorneys in the community and the risk of taking on this case, the

3  limitations imposed under the circumstances, and the exceptional results achieved for

4  Plaintiffs and the public. The Court should grant Plaintiffs' motion.

5  **STATEMENT OF FACTS**

6  **I.    THE CHALLENGED ORDINANCE AND THE DISPUTE**

7          The state of California has one of the most rigorous regulatory schemes for gun

8  policy and the commerce in firearms of any state in the nation. Many California cities

9  still compete to be "leaders" in gun control, passing ever-expanding restrictions on

10  the lawful acquisition, ownership, and possession of firearms and ammunition,

11  regardless of the laws' impact on public safety and welfare. Los Angeles is a leader

12  among these cities. It is often the target of gun-control groups whose goal is to limit

13  the rights of gun owners. And City officials often oblige, championing a broad gun-

14  control agenda. For instance, the City has passed laws prohibiting the possession of

15  so-called "large capacity magazines" and requiring locked storage of firearms in the

16  home. Req. Jud. Notice Supp. Pls.' Mot. Attys.' Fees ("Req. Jud. Ntc.") Exs. J-K.

17  Many NRA members and supporters disagree with the sweeping gun-control policies

18  the City seeks to implement, so NRA stands in the gap for its members who see no

19  other group with comparable ability to promote their pro-Second Amendment beliefs,

20  including belief in the right to self-defense.

21          City councilmembers have made disparaging, false, and hyperbolic statements

22  about NRA and its supporters, suggesting that the organization engages in unlawful

23  conduct. Councilmember Mitchell O'Farrell, the Ordinance's sponsor, has repeatedly

24  called on the City to "rid itself" of those associated with NRA and labelled the NRA

25  an "extremist" and "white supreme [sic] peddling" group. Req. Jud. Ntc. Exs. M, O.[1]

26  The City itself has a shameful history of pressuring businesses that seek to do

---

27  [1]  *See also* Councilmember Mitchell O'Farrell, Remarks at Meeting of Los

28  Angeles City Council ("O'Farrell Remarks") at 1:33:39-1:35:24 (Feb. 12, 2019), http://lacity.granicus.com/MediaPlayer.php?view_id=129&clip_id=18753.

2

1    business in the City to end relationships with NRA. For example, in early 2018, the

2    City held up a contract with FedEx to operate a warehouse and office space in the

3    City based solely on FedEx's affinity discount program for NRA members. See Decl.

4    of Anna M. Barvir Supp. Pls.' Mot. Prelim. Inj. Ex. 23, ECF No. 19-2.

5         Around the same time, O'Farrell introduced a motion before the Budget &

6    Finance Committee, expressing the urgent need to act against NRA and its

7    supporters. Req. Jud. Ntc. Ex. M. The motion called on city staff to draft a report

8    listing all organizations with formal ties to NRA and "options for the City to

9    immediately boycott those businesses and organizations until their formal

10   relationship with the NRA ceases to exist." *Id.* The committee approved the motion to

11   "rid itself of its relationships with any organization that supports the NRA." *Id.* at

12   Exs. M-N. The City Council ultimately abandoned the March 2018 resolution.

13        Still bent on silencing NRA's voice, as well as the voices of all those who

14   oppose the City's broad gun-control agenda, O'Farrell brought another motion to the

15   Budget & Finance committee, seeking to force companies doing business with the

16   City to disclose any formal relationships with NRA. *Id.* at Ex. O. The September

17   2018 motion called on the City Attorney to draft an ordinance requiring contractors to

18   disclose "(1) any contracts [the contractor] or any of its subsidiaries has with the

19   National Rifle Association; and (2) any sponsorship it or any of its subsidiaries

20   provides to the National Rifle Association." *Id.* The motion spoke of the perceived

21   advantage the NRA has in promoting its beliefs because of the financial support of

22   members and donors. *Id.* The motion passed committee, *id.* at Ex. 5, before moving to

23   the full City Council, which unanimously voted to adopt the motion, *id.* at Ex. 7.

24        In January 2019, the City Attorney presented the draft ordinance, requiring all

25   prospective City contractors to disclose in an affidavit any "sponsorship" of or

26   "contract" with NRA. *Id.* at Ex. 8. The City unanimously passed the proposal with

27   little discussion. *Id.* at Ex. 9. Mayor Eric Garcetti signed the Ordinance, *id.*, and the

28   law took effect, *id.* at Ex. 3, at 7.

3

## II.   PROCEDURAL HISTORY

Plaintiffs sued the City seeking declaratory and injunctive relief because the Ordinance violated their First Amendment rights to free speech, expression, and association, and offended the Equal Protection Clause of the United States Constitution. Compl. ¶¶ 12-26. (April 24, 2019), ECF No. 1.

Plaintiffs soon moved to enjoin the City from enforcing the Ordinance while the parties litigated the case, arguing that Plaintiffs' fundamental rights were being irreparably harmed every minute the City enforced the law. Pls.' Mot. Prelim. Inj. at 20. (May 24, 2019), ECF No. 19. Plaintiffs' briefing detailed the many reasons Plaintiffs were likely to succeed on the merits, raising important constitutional questions implicating the First Amendment and equal protection. Pls.' Mem. Supp. Mot. Prelim. Inj. at 7-19. (May 24, 2019), ECF No. 19-1. The City opposed Plaintiffs' motion, and Plaintiffs replied. Defs.' Opp'n Pls.' Mot. Prelim. Inj. (June 26, 2019), ECF No. 23; Pls.' Reply Defs.' Opp'n Mot. Prelim. Inj. (July 8, 2019), ECF No. 25.

While the parties were briefing Plaintiffs' injunction motion, the City also moved to dismiss Plaintiffs' complaint, arguing that Plaintiffs' claims each "fail as a matter of law." Defs.' Mem. Supp. Mot. Dismiss 4-16 (May 24, 2019), ECF No. 15. The City also argued that Plaintiffs had not brought "as-applied" challenges to the Ordinance and that the individual defendants should be dismissed as unnecessary parties. *Id.* at 5-6, 20-21. Plaintiffs opposed the City's motion, and the City replied. Pls.' Opp'n Defs.' Mot. Dismiss (June 26, 2019), ECF No. 24; Defs.' Reply Pls.' Opp'n Mot. Dismiss (July 8, 2019), ECF No. 26.

The Court heard oral argument on both motions. Civil Minutes (Aug. 12, 2019), ECF No. 29. The Court tentatively denied the City's motion to dismiss. *Id.* But instead of ruling on Plaintiffs' preliminary injunction motion or taking it under submission, the Court continued the hearing and invited the parties to file supplemental evidence, if they found it necessary. *Id.*; Rptr.'s Tr. 18:12-21:24 (Aug.

4

1   12, 2019). Persuaded that Plaintiffs had met their burden to prove they were likely to

2   succeed on the merits of their constitutional claims and that the City had failed to

3   meet its burden on reply, Plaintiffs elected not to file supplemental material. Decl.

4   Barvir Decl. ¶ 104. To be safe, however, they prepared a motion to file a sur-reply if

5   the City's filing exceeded the scope of what the Court authorized the parties to

6   submit. *Id.* The City ultimately opted not to file anything at all, so Plaintiffs

7   abandoned the filing. *Id.* The Court then took the continued hearing off calendar. In

8   Chambers Order Re: Pls.' Mot. Prelim. Inj. (Sept 9, 2019).

9   In mid-December, the Court granted Plaintiffs' motion for preliminary

10  injunction and denied in part and granted in part the City' motion to dismiss. Order

11  ("MPI Order") (Dec. 11, 2019), ECF No. 34.[2] Over the City's strident objection, the

12  Court expressed no doubt that the Ordinance was a content-based speech restriction

13  subject to strict scrutiny. *Id.* at 6. In accord with Supreme Court directives to assess

14  whether disagreement with speech is the reason behind a regulation, the Court found

15  that the record clearly "evince[d] a strong intent to suppress the speech of the NRA."

16  *Id.* at 9. The Court also noted that "the City cannot make a reasonable argument that

17  the Ordinance is narrowly tailored to serve a compelling government interest, before

18  holding that "Plaintiffs are likely to be successful on the merits of their First

19  Amendment speech claims." *Id.* at 13-14. As for Plaintiffs' freedom of association

20  claim, the Court held that "the record here supports Plaintiffs' contention that the

21  purpose of the Ordinance is to deter association with the NRA [and] [b]ecause the

22  City has no legitimate interest in the Ordinance, Plaintiffs will likely be successful on

23  their freedom of association claims." *Id.* at 18.

24  The Court also denied the City's motion to dismiss as to the City's challenge to

25  Plaintiffs' retaliation theory, but dismissed Plaintiffs' compelled speech and equal

26  protection theories, finding the latter "duplicative" of Plaintiffs' First Amendment

27

28  _____

    [2] The Court later corrected its order granting Plaintiffs' motion for preliminary injunction, making several clerical corrections. Order (Dec. 16, 2019), ECF No. 36.

5

1  claims. *Id.* at 25. It also dismissed Mayor Garcetti and Clerk Wolcott, finding their

2  inclusion unnecessary because the presence of the municipal entity was enough to

3  achieve Plaintiffs' desired relief. *Id.* at 26.

4  About a week later, the Court issued a Civil Trial Preparation Order, setting

5  trial for February 25, 2020, the pretrial conference for February 10, 2020, and a

6  January 21, 2020 deadline for pretrial filings. Order (Dec. 17, 2019), ECF No. 37.

7  The City would not answer the complaint until December 24, 2019. Answer (Dec. 24,

8  2019), ECF No. 38. Plaintiffs then immediately served written discovery on the City

9  and various third parties to comply with the Court's tight trial schedule and to weigh

10  whether settlement of the parties' dispute would be possible. Barvir Decl. ¶ 107.

11  On January 21, 2020, the City repealed the Ordinance, prompting parties to

12  negotiate a timely end to the litigation. *Id.* ¶ 108; *see also* Stip. & Prop. Stip.

13  Judgment ("Stip.") 2 (Jan. 31, 2020), ECF No. 45. But because this was the day the

14  parties' pretrial filings were due and settlement was not yet final, Plaintiffs had to

15  prepare and file their Exhibit List, Witness List, and Memorandum of Contentions of

16  Fact and Law. Barvir Decl. ¶ 108. And because settlement was still not final a week

17  later, they also had to prepare to file the Joint Pre-trial Conference Order due on

18  January 30, 2020. *Id.*[3]

19  The parties' settlement efforts eventually led to a stipulation and proposed

20  stipulated judgment. Among other things, the parties agreed that "in the event [an

21  attorneys' fee motion] is filed, Defendant will not dispute Plaintiffs' entitlement to

22  fees and costs, but expressly reserves the right to contest the amount of attorney's

23  fees and costs that should be awarded." Stip. 3. The Court entered an order adopting

24  the stipulation and stipulated judgment. Order (Feb. 5, 2020), ECF No. 48.

25  The parties engaged in negotiations over attorneys' fees and litigation costs but

26  could not reach an agreement. Barvir Decl. ¶ 108. So, under FRCP 54 and the

27

28  [3] That document was ultimately not filed because the parties had come to terms over settlement in principle.

MEMORANDUM OF POINTS AND AUTHORITIES ISO §1988 FEE AWARD

1  Stipulation, Plaintiffs bring this timely motion for 42 U.S.C. § 1988 attorneys' fees.

2  **III.    PLAINTIFFS' WORK ON THIS CASE**

3  To bring this case to its extraordinarily successful conclusion, Plaintiffs'

4  counsel performed the reasonably necessary work set forth below:[4]

5  <u>Complaint & Building the Case</u>: In bringing this case, Plaintiffs' counsel

6  logged about 136.0 hours tracking and opposing the Ordinance, compiling

7  background information, facts, and evidence to support their claims, corresponding

8  with clients, conducting legal research, analyzing the many theories under which they

9  could bring this challenge, and drafting, editing, and revising the complaint. Barvir

10 Decl. ¶¶ 46-54, Ex. C; Brady Decl. ¶ 12; Cheuvront Decl. ¶ 12; Frank Decl. ¶ 12;

11 Michel Decl. ¶ 25; Palmerin Decl. ¶ 8; Villegas Decl. Ex. A.

12 <u>Motion Practice</u>: Plaintiffs also billed 479.2 hours on motion practice,

13 including successfully litigating Plaintiffs' preliminary injunction motion and

14 opposing Defendants' motion to dismiss. Barvir Decl. ¶ 55, Ex. C; Villegas Decl. Ex.

15 A. This critical phase of the litigation involved extensive drafting, review, and

16 revision of Plaintiffs' moving, opposition, and reply papers, as well as all supporting

17 documents. *Id.* ¶¶ 56-65; Brady Decl. ¶ 13; Cheuvront Decl. ¶ 13; Frank Decl. ¶ 13;

18 Palmerin ¶ 9; Villegas Decl. Ex. A. It also involved follow-up legal and factual

19 research and analysis, begun during the complaint-preparation phase, to flesh out

20 Plaintiffs' legal arguments and theories. Barvir Decl. ¶¶ 55-65; Cheuvront Decl. ¶ 13;

21 Frank Decl. ¶ 13; Villegas Decl. Ex. A. Plaintiffs' counsel also devoted time to

22 preparing for and appearing for oral argument. Barvir Decl. ¶¶ 60-61; Brady Decl. ¶

23 13; Cheuvront Decl. ¶ 13; Villegas Decl. Ex. A.

24 The significant expenditure of attorney attention here was required because of

25 the importance of mounting as strong a case as possible during the motions phase.

26 Plaintiffs' attorneys correctly predicted that a decisive victory at the preliminary

27
28
---

[4] A table of all the hours for which Plaintiffs seek compensation is Exhibit C to
the declaration of Anna M. Barvir. The declaration of each professional also provides
descriptions of their qualifications, rates, and activities.

injunction stage would likely eliminate having to prosecute the case further to reach the desired outcome—repeal of the ordinance.

Discovery: Plaintiffs seek recovery for just 17.9 hours devoted to the discovery phase of litigation. Barvir Decl. ¶ 66, Ex. C; Villegas Decl. Ex. A. This includes several hours preparing requests to government actors for case-relevant public records under the California Public Records Act, as well as receiving, reviewing, and analyzing the responses for potential use in litigation. Barvir Decl. ¶¶ 66-72; Brady Decl. ¶ 14; Cheuvront Decl. ¶ 14; Michel Decl. ¶ 27; Villegas Decl. Ex. A. Plaintiffs also billed some time for preparing initial disclosures, the FRCP 26 report, and written discovery requests to the City and various third-party government actors. Barvir Decl. ¶¶ 68-71; Cheuvront Decl. ¶ 14; Palmerin Decl. ¶ 10; Villegas Decl. Ex. A.

Settlement: Plaintiffs' counsel billed about 111.7 hours during the settlement phase of litigation. Barvir Decl. ¶ 73, Ex. C; Villegas Decl. Ex. A. The settlement phase involved regular communication, through email, telephone, and other written correspondence, with opposing counsel and the clients. Barvir Decl. ¶¶ 74-77; Brady Decl. ¶ 15; Dale Decl. ¶ 19; Michel Decl. ¶ 28; Villegas Decl. Ex. A. It also involved considerable legal research and writing, as well as regular team meetings to explore strategies for, and assess the viability of, settlement and to develop a plan for advising the clients. Barvir Decl. ¶¶ 74-82; Brady Decl. ¶ 15; Dale Decl. ¶ 19; Frank Decl. ¶ 14; Michel Decl. ¶ 28; Moros Decl. ¶ 10; Villegas Decl. Ex. A.

The significant investment of attorney time here was, in large part, because of the clients' need to fully understand the details, from both short- and long-term perspectives, of the different pathways to resolution. Barvir Decl. ¶ 109. Given the broader First Amendment significance of the case, as well as the number of ambiguous legal issues demanding in-depth research and analysis, Plaintiffs' counsel was called to invest considerable time to fully understand and advise their clients on the broader impact of settlement and the best course to realizing their goals. *Id.*

<u>Pre-trial Work & Trial Preparation</u>: This phase of the case involved the necessary drafting and revision of Plaintiffs' key trial documents, including the Exhibit List, Witness List, Memorandum of Contentions of Fact and Law, as well as meetings, telephone conferences, and strategy and analysis. *Id.* ¶¶ 83-91; Brady Decl. ¶ 16; Cheuvront Decl. ¶ 16; Dale Decl. ¶ 20; Frank Decl. ¶ 15; Michel Decl. ¶ 29; Moros Decl. ¶ 11; Palmerin Decl. ¶ 12; Villegas Decl. Ex. A.

<u>Attorneys' Fees Motion</u>: As of April 30, 2020, Plaintiffs' attorneys had spent 110.8 hours on activities necessary to this fee motion. Barvir Decl. ¶¶ 93-102, Ex. C; Villegas Decl. Ex. A. This includes time spent: conducting legal research; drafting, reviewing, and revising Plaintiffs' motion and supporting papers; corresponding with clients; preparing and securing signed declarations; preparing documentary evidence; and meeting to discuss arguments, strategy, and division of tasks. Barvir Decl. ¶ 94; Brady Decl. ¶ 17; Cheuvront Decl. ¶ 17; Dale Decl. ¶ 21; Frank Decl. ¶ 16; Michel Decl. ¶ 20; Moros Decl. ¶ 12; Palmerin Decl. ¶ 13; Villegas Decl. Ex. A.

<u>Case Management</u>: Besides the above, Plaintiffs' counsel spent 44.5 hours performing myriad other tasks necessary to the successful management of any case. Barvir Decl. ¶¶ 36-37, Ex. C; Villegas Decl. Ex. A. Counsel met regularly to discuss strategy and arguments, deadlines, and division of tasks. Barvir Decl. ¶ 37; Brady Decl. ¶ 11; Cheuvront Decl. ¶ 11; Dale Decl. ¶ 17; Michel Decl. ¶ 24; Villegas Decl. Ex. A. They also corresponded by phone and email to strategize and brainstorm case theories and arguments; communicated with Plaintiffs as needed to inform them of case status and discuss case goals and strategies; and prepared motions affecting the briefing schedule. Barvir Decl. ¶ 36; Villegas Decl. Ex. A.

## ARGUMENT

### I.   PLAINTIFFS ARE ENTITLED TO REASONABLE ATTORNEYS' FEES

Section 1988 gives the Court some discretion to award "a reasonable attorneys' fee [to the prevailing party] as part of the costs." 42 U.S.C. § 1988(b). But there is a statutory presumption that courts should award successful plaintiffs a fee award in all

1  but the most unusual circumstances. *Williams v. Hanover Hous. Auth.*, 113 F.3d

2  1294, 1300 (1st Cir. 1997). So under the Supreme Court's "generous formulation" of

3  the term "prevailing party," "plaintiffs may be considered 'prevailing parties' for

4  attorney's fees purposes if they succeed on *any* significant issue in litigation which

5  achieves some of the benefit the parties sought in bringing suit.' " *Farrar v. Hobby*,

6  506 U.S. 103, 111-12 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433

7  (1983)) (emphasis added). Indeed, when "actual relief on the merits of [plaintiffs']

8  claim materially alters the legal relationship between the parties by modifying the

9  defendant's behavior in a way that directly benefits the plaintiff," the plaintiff

10 prevails. *Id.*

11     Here, the parties have stipulated that "Defendant will not dispute Plaintiffs'

12 entitlement to fees and costs." Stip. & Prop. Stip. Judgment at 3. But even so,

13 Plaintiffs are the prevailing party under section 1988. They successfully challenged

14 the constitutionality of the City's controversial disclosure mandate, obtaining an

15 overwhelmingly favorable order granting temporary relief that prompted the City to

16 repeal the challenged law and the parties to settle the dispute. *See Higher Taste, Inc.*

17 *v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013).

18

19 **II.   PLAINTIFFS' ATTORNEYS' FEES CLAIM REPRESENTS A REASONABLE**
        **VALUATION OF THE TIME SPENT BY PLAINTIFFS' COUNSEL**

20     When a party is entitled to attorneys' fees under section 1988, courts calculate

21 the amount of the award per the "lodestar/multiplier" method, by which the base fee

22 or "lodestar" is determined by multiplying a reasonable hourly rate by the number of

23 hours reasonably expended. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.

24 4 (9th Cir. 2001); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This figure

25 "provides an objective basis on which to make an *initial estimate* of the value of a

26 lawyer's services." *Hensley*, 461 U.S. at 433 (emphasis added). To fix the fee at the

27 fair market value of the specific legal services provided, courts may then enhance the

28 lodestar by a multiplier after analyzing other factors. *Id.* at 448-49.

10

1    Plaintiffs seek compensation for 865.8 hours of work on the merits by several

2  attorneys with varying levels of experience, three law clerks working at different

3  points throughout the case, and one paralegal. Plaintiffs also seek a 1.25 multiplier for

4  work on the merits and $44,983.00 for work on this fee motion, for an award totaling

5  $472,760.50. Considering the experience and reputation of Plaintiffs' attorneys and

6  the extraordinary outcome of this case, these numbers represent a reasonable award.

7       **A.    Plaintiffs' Schedule of Hourly Rates Are Reasonable**

8    Plaintiffs request the following hourly rates for each billing professional

9  assigned to work on this case:

| Billing Professional | Title | Rate |
|---|---|---|
| C.D. Michel | Senior Partner | $ 650.00 |
| Joshua R. Dale | Managing Partner | $ 550.00 |
| Anna M. Barvir | Associate 6/Special Counsel/Partner | $ 475.00 |
| Sean A. Brady | Associate 6/Special Counsel/Partner | $ 475.00 |
| Konstadinos T. Moros | Associate 4 | $ 375.00 |
| Alexander A Frank | Associate 3/Associate 4 | $ 350.00 |
| Tiffany D. Cheuvront | Associate 2 | $ 325.00 |
| Imran H. Khundkar | Staff Attorney | $ 300.00 |
| Laura Palmerin | Paralegal | $ 170.00 |
| Law Clerks | Law Clerks | $ 170.00 |

16    For the reasons described below, these rates are appropriate, and the Court

17 should use them with assessing the appropriate lodestar for this case.

18       **1.    Prevailing Market Rates in the Relevant Legal Community**

19    To determine the reasonability of counsel's hourly rates, courts look to the

20 "prevailing market rates in the relevant community, regardless of whether plaintiff is

21 represented by private or nonprofit counsel." *Blum v. Stevenson*, 465 U.S. 886, 895

22 (1994). This requires courts to decide what the "relevant community" is and what the

23 "prevailing market rates" are for that community. *Christensen v. Stevedoring Servs.*

24 *of Am.*, 557 F.3d 1049, 1053. (9th Cir. 2009). Plaintiffs' attorneys bill rates

25 comfortably within the many rates the Central District has found to be reasonable for

26 attorneys practicing in the Los Angeles area. *See United States v. $28,000 in*

27 *Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) ("[R]ate determinations in other cases

28 are satisfactory evidence of the prevailing market rate."); *Barjon v. Dalton*, 132 F.3d

496, 500 (9th Cir. 1997) ("relevant community" is generally where the district court in the matter sits).

For instance, as this Court recognized in *Curtin v. County of Orange*, C.D. Case No. 16-cv-00591, the median hourly rate for Los Angeles area attorneys involved in 1983 civil litigation is $563.00 for attorneys with under 21 years' experience and $656.02 for attorneys with over 21 years' experience. In Chambers Order Re Renewed Motion for Attorneys' Fees at 4-5, *Curtin v. County of Orange*, No. 16-cv-00591 (C.D. Cal. April 13, 2018), ECF. No. 331; In Chambers Order Re Renewed Motion for Judgment as a Matter of Law and Motion for Attorneys' Fees at 23-24, *Curtin v. County of Orange*, No. 16-cv-00591, 2018 U.S. Dist. LEXIS 233110 (C.D. Cal. Jan. 31, 2018), ECF No. 323; Declaration of Gerald G. Knapton in Support of Plaintiff's Motion for Attorneys' Fees at 9-11 & Ex. 2 at 89, 97, 102, *Curtin v. County of Orange*, No. 16-cv-00591 (C.D. Cal. Aug. 22, 2017), ECF Nos. 290, 290-2 (attached to Barvir Decl. at Exhibit D).

Comparably, in *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 899 (C.D. Cal. 2016), the Court held that hourly rates between $485 and $750 are "reasonable and consistent with those charged by comparable attorneys in the Central District." The Court considered awards in other Central District cases and cited regional billing rates from the 2014 National Law Journal survey: "standard partner rates among top Los Angeles firms rang[e] from $490 to $975." *Id.* (citing *Counts v. Meriwether*, No. 14-cv-00396, 2016 U.S. Dist. LEXIS 40651, *3-4 (C.D. Cal. 2016) (approving rates of $701.25, $552.50, and $446.25); *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1023 (C.D. Cal. 2014) (approving rates from $500 to $975).

Plaintiffs' attorneys bill hourly rates at or significantly below these median rates. Indeed, Mr. Michel, a senior partner with over 30 years' experience, requests $650 an hour. Michel Decl. ¶ 16. Mr. Brady and Ms. Barvir, partners with 12- and 10-years' experience litigating 1983 claims respectively, request just $475 per hour each. Barvir Decl. ¶ 22; Brady Decl. ¶ 9. As explained below, counsel's experience

1   and niche expertise more than justify the hourly rates each attorney seeks.

2   ## 2.   Plaintiffs' Counsel's Experience

3   <u>Senior Partner Michel</u>: Mr. Michel, Senior Partner of Michel & Associates,

4   P.C. ("MAPC"), is a highly experienced constitutional and civil litigator, having

5   secured dozens of victories over a 30-year career. His reasonable hourly rate is

6   **$650.00**. Michel Decl. ¶ 16; *see also Antuna v. County of Los Angeles*, No. 14-cv-

7   5600, 2016 U.S. Dist. LEXIS 189152, *10 (C.D. Cal. Mar. 8, 2016) (awarding

8   between $600 and $700 to senior partners with over 30 years' experience); *J.N. v.*

9   *Hendrickson*, No. 14-cv-02428, 2017 U.S. Dist. LEXIS 129927, *5-7 (C.D. Cal. Aug.

10   15, 2017) (awarding $650 to 29-year attorney).

11   Mr. Michel received his J.D. from Loyola Law School and began to practice in

12   1989. *Id.* ¶ 4. He began practicing at O'Melveny & Meyers, LLP, and later served as

13   a criminal prosecutor, an advocate with the L.A. Federal Public Defender's office,

14   and special counsel to the Christopher Commission. *Id.* ¶ 5. Mr. Michel is one of the

15   nation's preeminent authorities on Second Amendment litigation as well as the

16   President of the California Rifle & Pistol Association, an active participant in pro

17   firearms litigation in state and federal courts. *Id.* ¶¶ 7, 12. His firm, MAPC, counsel

18   for Plaintiffs, has been at the forefront of many major firearm-related constitutional

19   legal challenges in California. *Id.* ¶¶ 7, 17.

20   <u>Managing Partner Dale</u>: The reasonable hourly rate for Mr. Dale, a civil

21   litigator with over 20 years of experience, is **$550.00**. Dale Decl. ¶ 13; *see also*

22   *Kearney v. Hyundai Motor Am.*, No. 09-cv-1298, 2013 U.S. Dist. LEXIS 91636 (C.D.

23   Cal. June 28, 2013) ($650 rate for attorney with over 20 years' experience). Mr. Dale

24   has a rich and diverse legal background. He has litigated many cases to trial verdict,

25   deposed nearly 150 witnesses, served as a panel neutral for the Los Angeles County

26   Superior Court's ADR panel, argued appeals in state and federal courts, has been

27   published in law reviews and trade journals, and often presents MCLE seminars. *Id.*

28   ¶¶ 3-7, 9, 11. Mr. Dale's vast experience and expertise in civil litigation was vital to

1  the successful outcome for Plaintiffs. Barvir Decl. ¶ 25.

2      Partners Barvir and Brady: The reasonable hourly rate for Ms. Barvir and Mr.

3  Brady is **$475.00**. Barvir Decl. ¶¶ 22, 24; Brady Decl. ¶ 9.

4      Ms. Barvir graduated magna cum laude in 2009 from Whitter Law School,

5  where she served as Executive Editor of the Whittier Law Review. Barvir Decl. ¶ 2.

6  She was admitted to practice in California and hired by MAPC in January 2010. *Id.*

7  ¶¶ 3-4. Since then, she has focused mostly on civil litigation and appeals involving

8  legal challenges to firearm laws. *Id.* ¶¶ 5-6. She is an experienced constitutional

9  litigator, having secured victories in state and federal courts at both the trial and

10  appellate levels. *Id.* ¶¶ 5-10.

11      Recently, she was lead trial counsel in *Duncan v. Becerra*, 366 F. Supp. 3d

12  1131 (S.D. Cal. 2018), a successful challenge to California's ban on ammunition

13  magazines holding more than 10 rounds and arguably one of the most consequential

14  Second Amendment decisions since *McDonald v. City of Chicago*, 561 U.S. 742

15  (2010). *Id.* ¶ 7. As a young attorney, she was essential to the team that successfully

16  litigated *Parker v. California*, a vagueness challenge to the state's handgun

17  ammunition sales restrictions. *Id.* ¶ 10. *Parker* went to the California Supreme Court

18  before the Legislature amended the law and mooted the appeal. *Id.* The court awarded

19  Ms. Barvir $225 per hour for work on the Fresno-based appeal as a second-year

20  attorney. *Id.* Ms. Barvir's experience litigating section 1983 matters also involves

21  First Amendment matters, often related to suppression of firearm-related speech.

22  Aside from this case, she is lead counsel in *B&L Productions, Inc. v. 22nd District*

23  *Agricultural Association*, S.D. Cal. Case No. 19-cv-00134 (S.D. Cal. June 25, 2019),

24  a successful First Amendment challenge to the DAA's ban on gun shows at the Del

25  Mar Fairgrounds. *Id.* ¶ 8.

26      Mr. Brady, also a Partner at MAPC, earned his J.D. from Western State

27  University College of Law and was admitted to practice in California in 2008. Decl.

28  Brady Decl. ¶ 2. He began practicing law at MAPC in 2009 and has practiced there

14

ever since. His focus is on civil litigation and appeals involving constitutional challenges to firearm laws. *Id.* ¶ 4. Like Ms. Barvir, he too is a highly experienced constitutional litigator, having secured victories in both state and federal court at both the trial court and appellate levels. *Id.* ¶¶ 4-8. Most recently, Mr. Brady secured an important win in a challenge to ammunition sales restrictions adopted by California voters in 2016. *Id.* ¶ 6. The court, in a 120-page decision, granted plaintiffs' request for preliminary relief, finding that the plaintiffs were likely to succeed on their claims that the state's ammunition background check system and ban on out-of-state purchases violated the Second Amendment and the Dormant Commerce Clause. *Rhode v. Becerra*, No. 18-cv-802, 2020 U.S. Dist. LEXIS 71893, *108 (S.D. Cal. April 23, 2020). That case is on appeal. *Id.*

Ultimately, Ms. Barvir and Mr. Brady are among just a handful of attorneys in the country able to claim experiential expertise in constitutional firearms law. Given their extensive and niche civil rights experience, their more than 10 years of relevant legal work, and their record of success in high-profile lawsuits, their $475.00 hourly rate is patently reasonable. Indeed, attorneys with less experience have received awards from this Court based on hourly rates much higher. *See, e.g.*, *Rodriguez*, 96 F. Supp. 3d at 1023 (awarding $600 per hour for a 10-year attorney and $500 per hour for a 6-year attorney in a section 1983 case); *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1118 (C.D. Cal. 2012) (awarding $500 per hour to a 6-year attorney).

Associates Cheuvront, Frank & Moros: The reasonable hourly rate for Ms. Cheuvront and Messrs. Frank and Moros, MAPC associates with between three-and five-years' experience, ranges from $325 to $375. Cheuvront Decl. ¶ 7; Frank Decl. ¶ 7; Moros Decl. ¶ 6.[5]

---

[5] *See Indep. Living Ctr. of S. Cal. v. Kent*, No. 08-cv-03315, 2020 U.S. Dist. LEXIS 13019 (C.D. Cal. Jan. 24, 2020) (awarding $400 per hour for a six-year associate and $300 per hour for a two-year associate in Los Angeles area); *Hoffman v. Cty. of L.A.*, No. 15-cv-3724, 2018 U.S. Dist. LEXIS 1162 (C.D. Cal. Jan. 3, 2018) (awarding $200 per hour for a three-year attorney and $325 per hour for a six-year

15

Ms. Cheuvront is a 2017 graduate of Trinity Law School, where she participated in law review and moot court. Cheuvront Decl. ¶ 2. She began her career as a practicing attorney at MAPC in 2017, where she focuses mainly on firearm-related civil rights litigation. *Id.* ¶ 5. She often appears at local legislative meetings and special events to represent the interests of her clients on firearms policy matters. *Id.* ¶ 6. Her $325 hourly rate is well within the hourly rates charged by attorneys of similar experience in Los Angeles.

Mr. Frank is a 2016 graduate of Loyola Law School Angeles. Frank Decl. ¶ 2. He began his legal career at Severson & Werson in Irvine, California in late 2016, where he litigated civil matters in the firm's financial services practice group. *Id.* ¶ 3. Mr. Frank joined MAPC as an associate attorney in early 2018, and his focus is mainly firearm-related civil rights litigation. *Id.* ¶¶ 4-5. Mr. Frank has contributed to appellate briefing and strategy in various constitutional matters and was named a "rising star" by Super Lawyers magazine for 2020. *Id.* ¶¶ 5-6. His $350 hourly rate is well within the hourly rates charged by attorneys of similar experience in Southern California.

Mr. Moros is a 2014 graduate of California Western School of Law. Moros Decl. ¶ 2. He practiced at a boutique immigration law firm before joining MAPC in late 2019, where he devotes his practice to civil employment litigation and firearm-related civil rights litigation. *Id.* ¶ 5. His $375 hourly rate is well within the hourly rates charged by attorneys of similar experience in Southern California.

Staff Attorney Khundkar: The reasonable hourly rate for Mr. Khundkar is **$300.00**. Barvir Decl. ¶ 30. Mr. Khundkar is a 2017 graduate of University of California, Irvine, School of Law. His $300 hourly rate is well within the hourly rates

---

attorney with no civil rights experience); *Cervantes v. County of Los Angeles*, No. 12-cv-09889, 2016 U.S. Dist. LEXIS 23378 (C.D. Cal. Feb. 24, 2016) (awarding $275 per hour for a two-year attorney); *Sanchez v. Cty. of San Bernardino,* No. 10-cv-09384, 2014 U.S. Dist. LEXIS 199466 (C.D. Cal. Mar. 10, 2014) (awarding $300 per hour for a four-year attorney); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, No. 04-cv-9396, 2006 U.S. Dist. LEXIS 95610 (C.D. Cal. Dec. 12, 2006) (awarding $360 per hour for a four-year associate).

charged by highly specialized firms for attorneys of similar skill, experience, and expertise in Southern California. *Id.*

### B.   Plaintiffs' Hours Spent Litigating This Case Are Reasonable and They Are Entitled to Full Compensation for Their Efforts

The exhaustive documentation submitted with this motion adequately proves that the hours expended by Plaintiffs' counsel are authentic, non-duplicative, and reasonably expended. In the Ninth Circuit, affidavits in support of a fee motion need only be enough to allow the Court to evaluate the relevant fee award factors. *See Williams v. Alioto*, 625 F.2d 845, 849 (9th Cir. 1980); *Dennis v. Chang*, 611 F.2d 1302, 1308-09 (9th Cir. 1980). In fact, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1112.

Plaintiffs have established that they are entitled to full compensation for the hours spent—for Plaintiffs' sworn testimony establishes that each hour was reasonably spent. Plaintiffs document their fee claim both by lead counsel's detailed declaration and by billing records prepared at or around the time counsel performed all work. Barvir Decl. ¶¶ 35-96; Villegas Decl. Ex. A. Ms. Barvir provides a step-by-step summary of the various tasks that required counsel's time. Barvir Decl. ¶¶ 35-96. And the declarations of Ms. Cheuvront and Messrs. Michel, Dale, Brady, Frank, and Moros show the time and effort required of each of them to bring this case to its successful conclusion. Brady Decl. ¶¶ 11-17; Cheuvront Decl. ¶¶ 11-16; Dale Decl. ¶¶ 17-21; Frank Decl. ¶¶ 11-16; Michel Decl. ¶¶ 23-29; Moros Decl. ¶¶ 10-12. What's more, Plaintiffs' counsel has exercised considerable "billing judgment," excluding from their claim time for entries that might be considered vague, excessive, or redundant. Barvir Decl. ¶ 21, Ex. C; *Hensley*, 461 U.S. at 434, 437. Plaintiffs have thus presented a fully documented fee claim, establishing the reasonableness of their request.

MEMORANDUM OF POINTS AND AUTHORITIES ISO §1988 FEE AWARD

**C.      The Court Should Apply a 1.25 Lodestar Adjustment**

"[T]here is a strong presumption that the lodestar is sufficient," but a party that can identify a factor that "the lodestar does not adequately take into account" may be entitled to an upward adjustment (or multiplier) of the lodestar. *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). In considering whether to adjust the lodestar, the courts generally evaluate 12 factors:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. 420 n. 3.

Ultimately, because this case demanded the skill of seasoned constitutional law attorneys working on behalf of a high-profile and much-maligned organization, because the circumstances required significant investment of attorney labor, and because counsel obtained exceptional results, the Court should apply, at least, a modest multiplier of 1.25.

**1.      The Results Obtained Justify an Upward Adjustment**

While a court may consider many factors in evaluating whether to adjust the lodestar, the "most critical factor" in determining what is a "reasonable fee" under section 1988 is the "results obtained." *Hensley*, 461 U.S. 436. As the Supreme Court clarified in *Purdue*, this question boils down to whether "superior attorney performance is not adequately taken into account in the lodestar calculation." 559 U.S. at 554. To be sure, this is a difficult inquiry to parse. But there are at least two grounds for applying an upward multiplier based on the exceptional results obtained here.

First, the lodestar does not adequately account for Plaintiffs' counsel's performance because counsel's skill and strategy, including the successful motion for

18

preliminary injunction which led the City to repeal the challenged ordinance, profoundly shortened the duration of this lawsuit and avoided costly summary judgment motions or trial, saving the parties potentially hundreds of thousands in attorney hours, costs, and fees. Second, the Court should view counsel's performance should, at least partially, by the quality of their opponents. Here, that includes the virtually unlimited legal resources of the Los Angeles City Attorney's office and its highly capable and seasoned team of civil rights litigators. The decisiveness of Plaintiffs' victory in the light of such a high-quality legal opponent justifies a modest upward adjustment to the lodestar.

### 2.       This Desirability of the Case Justifies an Upward Adjustment

Given the markedly controversial nature of the right to bear arms in this jurisdiction, as well as the broader significance of the First Amendment interests here, there is a unique need to reward members of the bar for their willingness to provide their professional services in this case. *See A Lawyer's Ethical Duty to Represent the Unpopular Client*, 1 Chap. L. Rev. 105 (1998).

Plaintiff NRA is the symbolic torch bearer for the right to bear arms in the United States. But it is undeniable there is widespread hostility to Plaintiff NRA's work in California.[6] While its admirers view it as the steadfast champion of cherished civil rights, its detractors view it as nothing less than a "white supremacist" organization with blood on its hands. *See* O'Farrell Remarks, *supra*, n. 1. Through the Ordinance, the City explicitly endorsed the latter view, seeking to pin scarlet letters on those who do business with the NRA. Req. Jud. Ntc. Exs. M, N, O. Such

---

[6] Mariel Padilla, *San Francisco Declares the N.R.A. a "Domestic Terrorist Organization*," N.Y. Times (Sept. 4., 2019), available at https://www.nytimes.com/2019/09/04/us/san-francisco-nra-terrorist.html (last accessed Apr. 29, 2020); *Readers Sound Off: "The NRA Is an Evil Organization"*, USA Today (Feb. 22, 2018), available at https://www.usatoday.com/story/opinion/2018/02/22/readers-gun-laws-nra-evil-organization/362983002/ (last accessed Apr. 29, 2020); *see also 28% of Democrats Say it Should Be Illegal to Join the NRA*, Rasmussen Reports (Sept. 9, 2019), available at https://www.rasmussenreports.com/public_content/politics/current_events/gun_control/28_of_democrats_say_it_should_be_illegal_to_join_the_nra (last accessed Apr. 29, 2020)

1   pronounced government animosity for these businesses and individuals reflects a

2   disquieting trend, both in the public fora and the halls of power, to suppress the First

3   Amendment rights of those who support the Second Amendment.

4        Again, the very purpose of the challenged ordinance was to expose NRA-

5   supportive businesses so that a City and public hostile to NRA's views could decide

6   whether they wanted to do business with them. Req. Jud. Ntc. Exs. M (proponents of

7   the measure quoted as claiming the City must "rid itself" of NRA supporters); *id* Ex.

8   O (councilmembers claimed the City "deserves" to know who supports the NRA); *see*

9   *also* O'Farrell Remarks, *supra*, n. 1 at 1:34:22; Councilmember Paul Krekorian,

10  Remarks at Meeting of Los Angeles City Council at 1:37:30 (Feb. 12, 2019),

11  *available at* http://lacity.granicus.com/MediaPlayer.php?view_id=129&

12  clip_id=18753. So, the City can hardly dispute that attorneys risk similar reputational

13  harm for (successfully) representing the NRA's interests in a high-profile legal

14  challenge to City law. It is nearly impossible to represent the organization without

15  making that representation a matter of public record and media attention, to be sure.

16  There is thus reason to believe that, even if generous fee recovery were guaranteed,

17  many attorneys competent to litigate complex constitutional law cases would decline

18  to represent the organization. An upward multiplier is necessary because the lodestar

19  alone may not be enough to attract adequate counsel to litigate cases like this one.

20
21              **3.    Time Limitations Imposed by the Circumstances Justify an
                        Upward Adjustment**

22       Ordinarily, the long trajectory of the litigation process permits even the busiest

23  of law firms time to handle case development one phase at a time. Extensions are

24  disfavored and cases should be prosecuted without unjustified delay. *See Benham v.*

25  *Sequoia Equities, Inc*., No. 13-cv-00205-VBF, 2013 U.S. Dist. LEXIS 108015 *35-

26  37 n.9 (C.D. Cal. May 29, 2013) But here Plaintiffs' counsel litigated under an

27  unusually accelerated timeframe. Recall, shortly after issuing its MPI Order, and

28  before the City had filed its answer, trial was set for February 25, 2020 and January

MEMORANDUM OF POINTS AND AUTHORITIES ISO §1988 FEE AWARD

21, 2020 became the deadline for pretrial filings. Order (Dec. 17, 2019), ECF No. 37. This gave the parties just over one month to conduct discovery, consider settlement, and prepare pretrial filings. Barvir Decl. ¶ 106. This timeframe drove counsel to simultaneously devote themselves almost singularly to the responsibilities of trial preparation *and* settlement negotiations throughout January 2020. *Id*. Though Plaintiffs, exercising reasonable "billing judgment," have excluded many hours billed to settlement and trial preparation for purposes of this fee motion, the circumstances of this case limited Plaintiffs' attorneys' ability to devote significant time to other fee-paying work for the entire month, making an upward adjustment appropriate. *Id.*

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' Motion for Attorneys' Fees, awarding Plaintiffs **$472,760.50** in attorneys' fees.

Dated: April 30, 2020                **MICHEL & ASSOCIATES, P.C.**

*s/ Anna M. Barvir*
Anna M. Barvir
Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES ISO §1988 FEE AWARD

## CERTIFICATE OF SERVICE
### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

Case Name: *National Rifle Association, et al., v. City of Los Angeles, et al.*
Case No.:    2:19-cv-03212 SVW (GJSx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AWARD PURSUANT TO 42 U.S.C. § 1988**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Benjamin F. Chapman
Los Angeles City Attorney
200 N. Main St., Suite 675
Los Angeles, CA 90012
benjamin.chapman@lacity.org
  *Attorneys for Defendants*

I declare under penalty of perjury that the foregoing is true and correct.

Executed April 30, 2020.

                                        *s/ Laura Palmerin*
                                        Laura Palmerin